UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA JOSÉ PINTO CLARO DA FONSECA MIRANDA, Individually, and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., BRUNO WU, SIMON WANG, BING YANG, JASON WU, and FEDERICO TOVAR,<br><br>                              Defendants | Case No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Maria José Pinto Claro da Fonseca Miranda ("Plaintiff"), individually and on behalf of all others similarly situated, through Plaintiff's undersigned attorneys, alleges the following based upon personal knowledge, as to Plaintiff and Plaintiff's own acts, and upon information and belief, as to all other matters, based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Ideanomics, Inc. f/k/a Seven Stars Cloud Group, Inc. f/k/a Wecast Network Inc. ("Ideanomics" or the "Company"), as well as media and analyst reports about the Company and Company press releases. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

**<u>NATURE OF THE ACTION AND OVERVIEW</u>**

1.     Plaintiff brings this securities class action on behalf of all persons or entities who purchased or otherwise acquired Ideanomics securities between May 15, 2017 and November 13, 2018, both dates inclusive (the "Class Period"). Plaintiff asserts claims against Ideanomics and

certain of Ideanomics' officers and directors (collectively, "Defendants") under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     Ideanomics purports to operate as a financial technology ("fintech") and asset digitization services company.  The Company asserts that its "business model is to become a next-generation [fintech] company, with the intention of offering both traditional financing solutions and digital financing solutions based on the emergence of trading systems that utilize blockchain and artificial intelligence ("AI") technologies."  Historically, however, Ideanomics' purported business activities have varied widely and changed with some frequency.

3.     Ideanomics is headquartered in New York and incorporated in Nevada. Ideanomics' common stock currently trades on the NASDAQ stock market (the "NASDAQ") under the ticker symbol "IDEX."  From June 2017 until August 2018, the Company was known as Seven Stars Cloud Group, Inc. and announced the adoption of Ideanomics as its new business name on August 27, 2018.  From October 2016 until June 2017, the Company was known as Wecast Network Inc.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding Ideanomics' business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that:  (i) costs associated with building out Ideanomics' U.S. infrastructure and hiring its new executive team were negatively impacting the Company's bottom line performance; (ii) as a result, Ideanomics was highly unlikely to meet its 2018 EBITDA guidance; (iii) Ideanomics' margins in its oil trading and consumer electronics businesses were too low for those businesses to remain viable; and (iv) as a result, Ideanomics' public statements were materially false and misleading at all relevant times.

2

5.     On November 14, 2018, the Company issued a press release, filed as an exhibit to a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating results for the third quarter of 2018 (the "Q3 2018 Press Release"). The Q3 2018 Press Release disclosed, in relevant part:

> Although to date, aside from our legacy video-on-demand business, only our commodities trading business has generated revenues, given that our oil trading and consumer electronics businesses have realized low margins in relation to top line sales, we decided to focus our efforts on the higher margins we believe may be achievable in our digital securitized asset business. As a result, ***we intend to phase out our oil trading and consumer electronics businesses, with the intention to fully divest these assets in the near future.***
>
> **Guidance Update**
> Revenue for the third quarter was $43.7 million, an increase of approximately $13.5 million, or approximately 45%, from the same period in 2017. Given our strong revenue results, we are on track to exceed our revenue guidance of $280 million for fiscal year 2018.
>
> During the third quarter, the Company continued to focus on right-sizing the staffing levels of our legacy business, in addition to hiring a best-in-class executive team capable of positioning the business to be competitive and successful in the continued evolution of our business in 2019. ***Costs associated with building out our U.S. infrastructure and hiring our new executive team have put a strain on our bottom line performance, resulting in our increased net loss for the third quarter of 2018 as compared to the third quarter of 2017. As a result of these factors, we do not anticipate meeting our EBITDA guidance of $35 million for fiscal year 2018.***

(Emphases added.)

6.     On this news, Ideanomics' stock price fell $1.59 per share, or 48.77%, to close at $1.67 per share on November 14, 2018, damaging investors.

## JURISDICTION AND VENUE

7.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).

10.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

11.    Plaintiff, as set forth in the attached Certification, acquired Ideanomics securities at artificially inflated prices and was damaged thereby.

12.    Defendant Ideanomics is incorporated under the laws of Nevada, with principal executive offices located at 55 Broadway, 19th Floor, New York, New York 10006.   The Company's common stock trades on the NASDAQ under the ticker symbol "IDEX" and previously traded under the ticker symbols "SSC" and "WCST."

13.    Defendant Bruno Wu has served at all relevant times as the Company's Chairman and as the Company's Chief Executive Officer ("CEO") since October 2017.

14.    Defendant Bing Yang ("Yang") served as a Director and CEO of the Company until October 2017.

15.    Defendant Federico Tovar ("Tovar") has served as the Company's Chief Financial Officer ("CFO") since June 2018.

16.    Defendant Jason Wu served as the Company's Interim CFO from April 2018 until June 2018.

17.     Defendant Simon Wang ("Wang") served as the Company's CFO from March 2017 until April 2018.

18.     The Defendants named in ¶¶ 13-17 above are sometimes collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Ideanomics purports to operate as a fintech and asset digitization services company.  The Company asserts that its "business model is to become a next-generation [fintech] company, with the intention of offering both traditional financing solutions and digital financing solutions based on the emergence of trading systems that utilize blockchain and AI technologies."  Historically, however, Ideanomics' purported business activities have varied widely and changed with some frequency.

20.     In January 2017, the Company entered into agreements to acquire two Hong Kong companies: Sun Video Group Hong Kong Limited, and Wide Angle Group Limited (collectively, the "January 2017 Acquisitions").

### False and Misleading Statements Issue During the Class Period

21.     The Class Period begins on May 15, 2017, when the Company filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2017 (the "Q1 2017 10-Q").  In the Q1 2017 10-Q, the Company informed investors that, as a result of the January 2017 Acquisitions, "we are also engaged with consumer electronics and smart hand held device design and supply chain management business."  The Company further advised investors that "[t]he holdings and businesses from [the January 2017 Acquisitions] now reside under "Wecast Services", our wholly-owned subsidiary

Wecast Services Limited" which "is currently primarily engaged with consumer electronics e-commerce and smart supply chain management operations."

22.     For the quarter, the Company reported revenue of approximately $27.7 million attributable to its Wecast Services segment.   With respect to its overall revenues, the Company advised investors that "[r]evenue for the three months ended March 31, 2017 was $33.2 million as compared to $1.3 million for the same period in 2016, an increase of approximately $31.9 million, or 2512%. The increase was mainly due to our new business line acquired in January 2017"—*i.e.*, its consumer electronics and other Wecast Services businesses.

23.     The Q1 2017 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Yang and Wang, attesting that the "[i]nformation contained in the [Q1 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operation of the Company."

24.     On May 15, 2017, the Company also issued a press release, filed as an exhibit to a Current Report on Form 8-K with the SEC, in which the Company's Chairman, Defendant Bruno Wu, stated in relevant part:

> Revenues in Q1 2017 were ***mostly attributable to the new business model or the Wecast Services Group***, a business vertical that resides under the Product Sales Cloud, and was formed with the recent acquisitions of M.Y. Products, Sun Video Group and Wide Angle Group announced in early January.   More specifically, ***revenues were generated from our first product vertical, consumer electronics***, as well as our supply chain management services.   We intend to add more product verticals beyond consumer electronic and as these categories grow and scale, and new product verticals and services are offered, we expect gross margins to expand as well as the year continues.

25.     On August 14, 2017, the Company filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2017 (the "Q2 2017 10-Q").   For the quarter, the Company reported revenue of approximately

$43.3 million attributable to its Wecast Services segment. With respect to its overall revenues, the Company advised investors that "[r]evenue for the three months ended June 30, 2017 was $43.3 million as compared to $1.5 million for the same period in 2016, an increase of approximately $41.8 million, or 2,826%. The increase was mainly due to our new business line acquired in January 2017"—*i.e.*, its consumer electronics and other Wecast Services businesses.

26.     The Q2 2017 10-Q contained signed certifications pursuant to SOX by Defendants Yang and Wang, attesting that the "[i]nformation contained in the [Q2 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operation of the Company."

27.     On November 13, 2017, the Company filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2017 (the "Q3 2017 10-Q"). For the quarter, the Company reported revenue of approximately $30.2 million attributable to its Wecast Services segment. With respect to its overall revenues, the Company advised investors that "[r]evenue for the three months ended September 30, 2017 was $30.2 million as compared to $1.6 million for the same period in 2016, an increase of approximately $28.6 million, or 1.758%. The increase was mainly due to our new business line acquired in January 2017"—*i.e.*, its consumer electronics and other Wecast Services businesses.

28.     The Q3 2017 10-Q contained signed certifications pursuant to SOX by Defendants Bruno Wu and Wang, attesting that the "[i]nformation contained in the [Q3 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operation of the Company."

29.     On March 1, 2018, the Company issued a press release, filed as an exhibit to a Current Report on Form 8-K filed with the SEC, entitled "Seven Stars Cloud Anticipated to Achieve Record Revenues in 2017 and Provides 2018 Fiscal Year Revenue and EBITDA Guidance."  In the press release, the Company stated that it was "poised for strong growth and positive EBITDA in 2018" and "estimates that in fiscal year 2018, the Company will generate $280 million in revenue and $35 million in EBITDA."

30.     In the press release, Defendant Bruno Wu further stated, in relevant part:

Unanticipated personnel issues that led to internal communication and internal administrative oversights that materialized during the Company's 2017 fiscal year, resulted in what is anticipated to be 2017 revenue that is below prior and recent guidance expectations.    However, the Company and management specifically, believes that it has taken strong and immediate actions to cure the causes of these deficiencies.  ***Because of the foundation built and steps taken during 2017, the Company believes it is well positioned for continued growth in 2018***.  Specifically:

- Management successfully transitioned the Company, formerly strictly focused on VOD content distribution in China, into a global financial technology firm;

- The Company executed the first phase of its strategic and integration plan by acquiring, investing in, or partnering with firms focused on Artificial Intelligence, Blockchain and Alternative Trading System platforms;

- SSC is poised to launch the second phase of its strategic plan in 2018 and expects to introduce a Global Trading Partner Network that enables partners to list and trade financial products both cost effectively and seamlessly across the globe;

- The Company relieved its former Chief Executive Officer of his responsibilities and Mr. Robert G. Benya joined the Company as President, Chief Revenue Officer & Board Director. Mr. Benya is responsible for leading the Company's US operations with specific focus on revenue generating initiatives. In addition, Mr. Benya is overseeing plans to open a US HQ in NYC in 2018 and is working to supplement the global management team with additional US-based senior executives.

. . . Given the high level of 2017 strategic plan accomplishments as well as operational and personnel adjustments continually implemented in the midst of all

of the forward motion, SSC estimates **the Company will generate $280 million in revenue and $35 million in EBITDA in 2018.**

(Emphases added.)

31.     On March 30, 2018, the Company filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2017 (the "2017 10-K"). For 2017, the Company reported revenue of approximately $143.5 million attributable to its Wecast Services segment. With respect to its overall revenues, the Company advised investors that "[r]evenue for the year ended December 31, 2017 was $144.3 million as compared to $35.2 million for the same period in 2016, an increase of approximately $109.2 million, or 310%. The increase was mainly due to our new business line acquired in January 2017"—*i.e.*, its consumer electronics, oil trading, and other Wecast Services businesses.

32.     The 2017 10-K also advised investors of the addition of another business to its Wecast Services segment, stating that "[s]tarting from October, through partnership with another business partner, our newly controlled Singapore joint venture has been conducting oil trading business in Singapore."

33.     The 2017 10-K contained signed certifications pursuant to SOX by Defendants Bruno Wu and Wang, attesting that the "[i]nformation contained in the [2017 10-K] fairly presents, in all material respects, the financial condition and results of operation of the Company."

34.     On May 15, 2018, the Company filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2018 (the "Q1 2018 10-Q"). For the quarter, the Company reported revenue of approximately $185.9 million attributable to its Wecast Services segment. With respect to its overall revenues,

the Company advised investors that "[r]evenue for the three months ended March 31, 2018 was $185.9 million as compared to $33.2 million for the same period in 2017, an increase of approximately $152.8 million, or 461%. The increase was mainly due to our expanding business of crude oil trading initiated in October 2017."

35. The Q1 2018 10-Q contained signed certifications pursuant to SOX by Defendants Bruno Wu and Jason Wu, attesting that the "[i]nformation contained in the [Q1 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operation of the Company."

36. On May 15, 2018, the Company also issued a press release, subsequently filed with the SEC as an exhibit to a Current Report on Form 8-K, in which the Company stated, in part:

> Revenue for Q1 2018 was $185.9 million as compared to $33.2 million for the same period in 2017, an increase of approximately $152.8 million, or 461%. The increase was primarily due to our expanding business in crude oil trading which began in October 2017.
>
> *****
>
> Notwithstanding the strong Q1 revenue to begin 2018, management, for the time being, will be maintaining the previously provided guidance of $280 million in revenue and $35 million in EBITDA for full year 2018.

37. On August 13, 2018, the Company filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2018 (the "Q2 2018 10-Q"). For the quarter, the Company reported revenue of approximately $133 million attributable to its Wecast Services segment. With respect to its overall revenues, the Company advised investors that "[r]evenue for the three months ended June 30, 2018 was $133.0 million as compared to $43.3 million for the same period in 2017, an increase of

approximately $89.7 million, or 207%. The increase was mainly due to our expanding business of crude oil trading initiated in October 2017."

38. The Q2 2018 10-Q contained signed certifications pursuant to SOX by Defendants Bruno Wu and Tovar, attesting that the "[i]nformation contained in the [Q2 2018 10-Q] fairly presents, in all material respects, the financial condition and results of operation of the Company."

39. That same day, the Company issued a press release entitled "Seven Stars Cloud Reports Solid Second Quarter Operating Results; Exceeds Full Year 2018 Top Line Revenue Estimates During Q2". The press release stated, in part, that the Company "maintains EBITDA guidance for 2018."

40. The above statements identified in ¶¶ 21-39 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) costs associated with building out Ideanomics' U.S. infrastructure and hiring its new executive team were negatively impacting the Company's bottom line performance; (ii) as a result, Ideanomics was highly unlikely to meet its 2018 EBITDA guidance; (iii) Ideanomics' margins in its oil trading and consumer electronics businesses were too low for those businesses to remain viable; and (iv) as a result, Ideanomics' public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

41. On November 14, 2018, Ideanomics issued a press release, filed as an exhibit to a Current Report on Form 8-K with the SEC, announcing the Company's financial and operating

results for the third quarter of 2018 (the "Q3 2018 Press Release"). The Q3 2018 Press Release disclosed, in relevant part:

> Although to date, aside from our legacy video-on-demand business, only our commodities trading business has generated revenues, given that our oil trading and consumer electronics businesses have realized low margins in relation to top line sales, we decided to focus our efforts on the higher margins we believe may be achievable in our digital securitized asset business. As a result, *we intend to phase out our oil trading and consumer electronics businesses, with the intention to fully divest these assets in the near future.*
>
> **Guidance Update**
> Revenue for the third quarter was $43.7 million, an increase of approximately $13.5 million, or approximately 45%, from the same period in 2017. Given our strong revenue results, we are on track to exceed our revenue guidance of $280 million for fiscal year 2018.
>
> During the third quarter, the Company continued to focus on right-sizing the staffing levels of our legacy business, in addition to hiring a best-in-class executive team capable of positioning the business to be competitive and successful in the continued evolution of our business in 2019. *Costs associated with building out our U.S. infrastructure and hiring our new executive team have put a strain on our bottom line performance, resulting in our increased net loss for the third quarter of 2018 as compared to the third quarter of 2017. As a result of these factors, we do not anticipate meeting our EBITDA guidance of $35 million for fiscal year 2018.*

(Emphases added.)

42. On this news, Ideanomics' stock price fell $1.59 per share, or 48.77%, to close at $1.67 per share on November 14, 2018, damaging investors.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons who acquired Ideanomics common stock (a) pursuant or traceable to the Registration Statement issued in connection with the Acquisition; and/or (b) purchased or otherwise acquired Ideanomics securities during the Class Period. Excluded from the Class are Defendants and their families; the officers, directors, and affiliates of Defendants, at all relevant times; members of their

immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

44.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Ideanomics or their transfer agents and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.      whether Defendants violated federal securities law;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of the Company;

c. Class Period misrepresented material facts about the business, operations and management of the Company;

d. whether the Individual Defendants caused the Company to issue false and misleading financial statements during the Class Period;

e. whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

f. whether the prices of the Company securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g. to what extent the members of the Class have sustained damages and the proper measure of damages.

48. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

49. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# COUNT I

## (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

50.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ideanomics securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Ideanomics securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Ideanomics securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Ideanomics' finances and business prospects.

54.     By virtue of their positions at Ideanomics, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Ideanomics, the Individual Defendants had knowledge of the details of Ideanomics' internal affairs.

56.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Ideanomics. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Ideanomics' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements,

the market price of Ideanomics securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Ideanomics' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Ideanomics securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57.     During the Class Period, Ideanomics securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Ideanomics securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Ideanomics securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Ideanomics securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

60. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. During the Class Period, the Individual Defendants participated in the operation and management of Ideanomics, and conducted and participated, directly and indirectly, in the conduct of Ideanomics' business affairs. Because of their senior positions, they knew the adverse non-public information about Ideanomics' misstatement of income and expenses and false financial statements.

62. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Ideanomics' financial condition and results of operations, and to correct promptly any public statements issued by Ideanomics which had become materially false or misleading.

63. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Ideanomics disseminated in the marketplace during the Class Period concerning Ideanomics' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Ideanomics to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Ideanomics within the meaning of Section 20(a) of the Exchange Act. In this

capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ideanomics securities.

64.     Each of the Individual Defendants, therefore, acted as a controlling person of Ideanomics.   By reason of their senior management positions and/or being directors of Ideanomics, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Ideanomics to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of Ideanomics and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Ideanomics.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

(B)     Awarding damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

(C)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel and expert fees; and

(D)     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated:  July 19, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Jonathan D. Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
Email:  ahood@pomlaw.com
Email:  jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**


      1.     I, MARIA JOSÉ_PINTO CLARO DA FONSECA MIRANDA, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

      2. I have reviewed a Complaint against Ideanomics Inc. ("Ideanomics" or the "Company") and authorize the filing of a comparable complaint on my behalf.

      3. I did not purchase or acquire Ideanomics securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

      4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Ideanomics securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

      5. To the best of my current knowledge, the attached sheet lists all of my transactions in Ideanomics securities during the Class Period as specified in the Complaint.

      6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

      7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed __7/18/2019__
**(Date)**

_Maria Jose Pinto Claro da Fonseca Miranda_
**(Signature)**

MARIA JOSÉ PINTO CLARO DA FONSECA MIRANDA
**(Type or Print Name)**

**Ideanomics Inc. (IDEX)**                          **Maria José Pinto Claro da Fonseca Miranda**

### List of Purchases and Sales

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 8/20/2018 | Purchase | 3,000 | $3.2996 |
| 8/27/2018 | Purchase | 1,000 | $5.0675 |
| 8/27/2018 | Purchase | 1,000 | $5.3885 |
| 8/28/2018 | Purchase | 3,040 | $4.4678 |
| 9/4/2018 | Purchase | 1,000 | $4.0300 |
| 9/11/2018 | Purchase | 1,000 | $4.9600 |
| 9/26/2018 | Purchase | 500 | $4.0100 |
| 9/28/2018 | Purchase | 500 | $3.7480 |
| 10/4/2018 | Purchase | 500 | $3.4100 |
| 10/10/2018 | Purchase | 500 | $3.0100 |
| 8/24/2018 | Sale | 3,000 | $5.4610 |
| 9/11/2018 | Sale | 1,040 | $5.7400 |