**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAYSUKH RUDANI, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., ZHENG WU a/k/a BRUNO WU, BING YANG, and ROBERT BENYA, and FEDERICO TOVAR,<br><br>Defendants. | No: 1:19-cv-06741-GBD |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FEDERICO TOVAR'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

    A.    Ideanomics Shifts To Touting Blockchain After The Company's Massive
          2017 Revenue Miss.................................................................................................. 2

    B.    Tovar Fraudulently Touts The Incorporation Of Blockchain Into Ideanomics'
          Businesses ............................................................................................................. 3

    C.    Post-Class Period Revelations ................................................................................ 4

LEGAL ARGUMENT.......................................................................................................... 5

I.    TOVAR'S FALSE STATEMENT IS ACTIONABLE ......................................................... 6

    A.    Tovar's Statement Regarding Ideanomics' "Current" Focus On Consumer
          Electronics And Crude Oil To Migrate To Blockchain Was False When Made.... 7

    B.    The PSLRA Safe Harbor Affords Tovar No Protection ........................................ 7

    C.    Tovar's Counter-Narrative Must Be Rejected ...................................................... 10

II.    TOVAR ACTED WITH THE REQUISITE SCIENTER ................................................. 12

    A.    Tovar Acted With Conscious Misbehavior And Recklessness............................. 12

    B.    Tovar Had Access To Information Regarding Blockchain Integration Due
          To Its Importance To The Company And His Unique Expertise ......................... 16

    C.    Tovar Possessed The Motive And Opportunity To Make Misleading
          Statements About Ideanomics' Integration Of Blockchain ................................. 17

III.    PLAINTIFF STATES A CLAIM UNDER SECTION 20(a)......................................... 17

IV.    TOVAR'S DEFENSE OF BENYA'S FALSE STATEMENT FAILS ........................... 18

V.    ALTHOUGH UNNECESSARY, AMENDMENT SHOULD BE PERMITTED ........... 20

CONCLUSION.................................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)............................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................5

*In re Atossa Genetics Inc. Sec. Litig.*,
    868 F.2d 784 (9th Cir. 2017) .........................................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)...........................................................................................12

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011)..........................................................................15

*Better v. YRC Worldwide, Inc.*,
    2012 WL 4433500 (D. Kan. Sept. 25, 2012) ...............................................10, 11, 20

*In re BP P.L.C. Sec. Litig.*,
    843 F. Supp. 2d 712 (S.D. Tex. 2012) .........................................................................13

*In re Cabletron Sys., Inc.*,
    311 F.3d 11 (1st Cir. 2002)...........................................................................................17

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) ...........................................................................8

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)...........................................................................................5

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013)..........................................................................18

*City of Providence v. Aeropostale, Inc.*,
    2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) .....................................................7, 8, 13

*Cresci v. Mohawk Valley Cmty. Coll.*,
    693 F. App'x 21 (2d Cir. 2017) ....................................................................................21

*Deeds v. Bayer*,
    2007 U.S. Dist. LEXIS 103427 (D. Nev. Jan. 11, 2007).............................................18

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..........................................................................................17

*In re Ecotality, Inc. Sec. Litig.*,
  2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ................................................................20

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017)..............................................................................5, 14

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  2013 WL 1139408 (S.D.N.Y. Dec. 12, 2013) .................................................................7, 19

*Freudenberg v. E\*TRADE Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................................13

*Gammel v. Hewlett-Packard Co.*,
  2013 WL 1947525 (C.D. Cal. May 8, 2013) .........................................................................7

*In re General Elec. Co. Sec. Litig.*,
  857 F. Supp. 2d 367 (S.D.N.Y. 2012)....................................................................................6

*Global Network Commc'ns, Inc. v. City of New York*,
  458 F.3d 150 (2d Cir. 2006)....................................................................................................5

*Gregory v. ProNAi Therapeutics Therapeutics, Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018)....................................................................................9

*Gross v. GFI Group, Inc.*,
  162 F. Supp. 3d 263 (S.D.N.Y. 2016)......................................................................7, 11, 19

*Haley v. Ornelas*,
  2016 WL 11519291 (C.D. Cal. Dec. 21, 2016) ...................................................................18

*Hall v. The Children's Place Retail Stores, Inc.*,
  580 F. Supp. 2d 212 (S.D.N.Y. 2008)..................................................................................15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014).................................................................................................................6

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*,
  2019 WL 4601644 (S.D.N.Y. Sept. 23, 2019)......................................................................14

*Ho v. Duoyuan Glob. Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012)..................................................................................16

*In re IMAX Sec. Litig.*,
  587 F. Supp. 2d 471 (S.D.N.Y. 2008)..................................................................................17

*In re Initial Pub. Offering Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003)..................................................................................12

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)......................................................................................17

*In re KeySpan Corp.,*
    2003 WL 21981806 (E.D.N.Y. July 30, 2003).........................................................15

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.,*
    2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) .............................................................13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,*
    797 F.3d 160 (2d Cir. 2015).....................................................................................21

*Manavazian v. Atec Group, Inc.,*
    160 F. Supp. 2d 468 (E.D.N.Y. 2001) ............................................................8, 11, 19

*Matrixx Initiatives, Inc. v. Siracusano,*
    563 U.S. 27 (2011)......................................................................................................6

*McMahan & Co. v. Wherehouse Ent., Inc.,*
    900 F.2d 576 (2d Cir. 1990)........................................................................................6

*Merck & Co., Inc. v. Reynolds,*
    559 U.S. 633 (2010)...................................................................................................13

*Micholle v. Ophthotech Corp.,*
    2019 WL 4464802 (S.D.N.Y. Sept. 17, 2019)....................................................10, 19

*Miller v. Van Boening,*
    2011 WL 884222 (W.D. Wash. Feb. 11, 2011).........................................................18

*Mulligan v. Impax Laboratories, Inc.,*
    36 F. Supp. 942 (N.D. Cal. 2014) ...............................................................................8

*Mulligan v. Impax Labs., Inc.,*
    36 F. Supp. 3d 942 (N.D. Cal. 2014) .................................................................10, 19

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
    709 F.3d 109 (2d Cir. 2013).....................................................................................20

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes, Inc.,*
    2013 WL 1188050 (D. Conn. Mar. 23, 2013) ...........................................................9

*New Orleans Empls. Ret. Sys. v. Celestica, Inc.,*
    455 F. App'x 10 (2d Cir. 2011) .............................................................................5, 16

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000)...................................................................10, 12, 16, 17

*In re NTL, Inc. Sec. Litig.*,
    347 F. Supp. 2d 15 (S.D.N.Y. 2004)................................................................15

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278 (S.D.N.Y. 2005).........................................................17, 18

*In re Parmalat Sec. Litig.*,
    474 F. Supp. 2d 547 (S.D.N.Y. 2007)..............................................................7

*Pehlivanian v. China Gerui Adv. Mat. Grp. Ltd.*,
    153 F. Supp. 3d 628 (S.D.N.Y. 2015)..............................................................11

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007)..............................................................17

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ..........................................................................15

*In re Salix Pharm., Ltd.*,
    2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016).............................................7, 8, 9

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co.,
Inc.*,
    75 F.3d 801 (2d Cir. 1996)...............................................................................11

*Schnall v. Annuity and Life Re (Holdings), Ltd.*,
    2004 WL 367644 (D. Conn. Feb. 22, 2004) .....................................................8

*Scritchfield v. Paolo*,
    274 F. Supp. 2d 163 (D.R.I. 2003)........................................................10, 19, 20

*Sgalambo v. McKenzie*,
    739 F. Supp. 2d 453 (S.D.N.Y. 2010)........................................................14, 15

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010).......................................................................6, 9, 12

*Stratte-McClure v. Morgan Stanley*,
    784 F. Supp. 2d 373 (S.D.N.Y. 2011)..............................................................14

*Teachers' Pension Plan Board v. Teva Pharm. Indus. Ltd.*,
    2019 WL 4674839 (D. Conn. Sept. 25, 2019) ................................................17

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008).............................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................12, 17

*In re Vivendi Universal, S.A. Sec. Litig.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003)...................................................................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011).................................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ...........................................................................13

*Xerion Partners, I LLC v. Resurgence Asset Management, LLC*,
   474 F. Supp. 2d 505 (S.D.N.Y. 2007).................................................................................11

**Other Authorities**

Fed. R. Civ. P. 12(b), 12(d), 56(d) ................................................................................................5

Lead Plaintiff Jaysukh Rudani ("**Plaintiff**") respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendant Federico Tovar ("**Tovar**").[1]

## PRELIMINARY STATEMENT

Tovar, a supposed "Blockchain and AI" expert, was hired as the Chief Financial Officer ("**CFO**") of Ideanomics, Inc. ("**Ideanomics**" or the "**Company**") after the Company missed its revenue guidance by a massive ***$156 million*** ($300 million guided compared to $144 million actually achieved) and began to tout itself as a "next-generation global Artificial Intelligence & Blockchain-powered disruptive financial services company." *See* ¶¶64, 100. Tovar served as CFO from June 1, 2018 until his resignation on or around April 30, 2019. ¶24. Plaintiff alleges that during Tovar's tenure at the Company, he made a false statement by signing a Form 10-Q on August 13, 2018 which emphasized that Ideanomics was "***currently*** focused on consumer electronics and [] crude oil trading" "***with*** the ***intent to migrate***" those businesses onto blockchain. ¶68. Tovar's statement follows Wu's statement that Ideanomics "***did***" integrate blockchain onto crude oil, ¶66, and was made on the same day that Benya's stated blockchain was a "***key driver***" of Ideanomics' "***current and rapid topline revenue growth***," ¶70.

Like his co-defendants, Tovar challenges Plaintiff's §10(b) claims by arguing that his statement was forward-looking and protected by the PSLRA's safe harbor and bespeaks caution doctrine. Second, Tovar argues his statement was not false when made by attempting to construct a counter-narrative with extrinsic evidence in violation of Fed. R. Civ. P. 12(b)(6) & 12(d). Third, Tovar argues that scienter is inadequately pled. He also asserts that Plaintiff's

---

[1] Unless stated otherwise, Plaintiff uses the following conventions: (1) capitalized terms mean the same as they do in the Amended Securities Class Action Complaint ("AC") (ECF No. 41) and its Table of Defined Terms and Abbreviations, AC at iii-iv; (2) all "¶__" references are to the AC; (3) all "Q_" are references to Ideanomics' fiscal quarters, which track the calendar year, ¶4 n.3; (4) all " Benya & Co. MTD" references are to the brief filed in support of Ideanomics, Inc., Bruno Wu ("**Wu**"), Bing Yang, and Robert Benya's ("**Benya**") motion to dismiss, ECF No. 52; (5) all "Tovar MTD" references are to the brief filed in support of Tovar's motion to dismiss, ECF No. 49; (6) all emphases are added to quotations; and (7) all internal citations and quotations are omitted.

1

§20(a) claim fails due to the supposed deficiencies of Plaintiff's §10(b) claim's. As explained below, Tovar's challenges to Plaintiff's claims fail.

In an apparent attempt to evade the page limits, Tovar also devotes a substantial portion of his brief to challenging statements he is not alleged to have made, specifically statements attributed to his co-defendant Benya, who filed his own motion to dismiss with Ideanomics, Wu, and Yang. *See* Co. MTD at 1. Tovar's attempt to defend Benya fails because Tovar lacks standing to make arguments on Benya's behalf, and in any event, Benya's statements are actionable for the reasons set forth in Plaintiff's memorandum of law in opposition to the motion to dismiss filed by defendants Ideanomics, Wu, Bing Yang, and Benya ("Benya & Co. MTD Opp."), ECF No. 57.

Plaintiff respectfully submits that Tovar's motion should be denied for the reasons set forth herein as well as those in the brief in support of Plaintiff's motion to strike ("**MTS**"), ECF No. 59.

## STATEMENT OF FACTS

### A.   Ideanomics Shifts To Touting Blockchain After The Company's Massive 2017 Revenue Miss

Blockchain is a decentralized data record managed by a cluster of computers, rather than a single entity. ¶32. Information held on a blockchain exists as a shared database that is continually updated across a network of computers rather than a single one. ¶32. Blockchain can be used to, *inter alia*, ensure databases are continually reconciled, updated, and verified. *Id.* Blockchain's decentralized nature provides the following advantages: (1) greater transparency; (2) increased efficiency due to the removal of middlemen; and (3) better security as no centralized version of information exists for a hacker to corrupt. ¶¶32, 33. Due to these perceived benefits, several publicly traded companies incorporated blockchain into their names

2

or business practices, resulting in a "more than threefold" increase in those companies' stock prices. ¶34. As a result, the SEC began scrutinizing such companies to determine whether their public disclosures comply with the securities laws. ¶35. Seizing on the public's heightened interest in blockchain technology, Ideanomics began fraudulently touting the integration of blockchain into Ideanomics' crude oil and consumer electronics businesses. The SEC itself recognized that the blockchain hype was ripe for fraud, noting:

> ***I doubt anyone . . . thinks it would acceptable for a public company with no meaningful track record in pursuing the commercialization of distributed ledger or blockchain technology to (1) start to dabble in blockchain activities, (2) change its name to something like 'Blockchain-R-Us,' and (3) immediately offer securities**, without providing adequate disclosure to Main Street investors about those changes and the risks involved*.

¶35. As a result, the SEC began looking closely at disclosures of public companies that shift their business models to capitalize on blockchain technology. ¶35.

As detailed in Plaintiff's Benya & Co. MTD Opp., after revealing a massive revenue miss for the year 2017—having earned just $144 million in revenue instead of the $300 million it guided and the $250 million Ideanomics touted as a "guarantee"—the Company began to tout itself as a "a next generation global Artificial Intelligence & Blockchain-powered disruptive financial services company" blockchain company. ¶64. To help weave that narrative, Ideanomics hired Tovar, a seasoned executive and "***subject matter expert***" in ***blockchain*** and AI, on June 1, 2018 as the Company's CFO. ¶¶24, 100.

### B.    Tovar Fraudulently Touts The Incorporation Of Blockchain Into Ideanomics' Businesses

Beginning in 2018, Tovar and his co-defendants began to falsely tout that Ideanomics was incorporating blockchain into its businesses to achieve higher profitability. ¶¶66-70.

For example, on a May 15, 2018 earnings call, Wu discussed applying "four layers" of blockchain technology onto the Company's consumer electronics and crude oil businesses. ¶66.

Wu claimed that Ideanomics was "*in the middle of*" applying blockchain and AI into its businesses and that Ideanomics already "*did*" this "*with [] crude oil*" "*to greatly increase the margin of Ocasia subsidiary*" and that the Company was "*ready to in the next couple of quarters do the same*" with the consumer electronics business. *Id*. This statement was false when made because blockchain and AI *were not integrated into Ideanomics' crude oil business*. ¶¶67, 77, 79.

Then, on August 13, 2018, during an earnings call, Benya touted that one of the Company's products, "*TradeTech[,] which involves the use of blockchain,*" was "*a key driver of our current and rapid topline revenue growth*." ¶70. Benya's statement, however, was false when made because blockchain was not integrated into the crude oil or consumer electronics businesses, and thus, blockchain was not driving Ideanomics' revenues, ¶¶71, 77, 79.

That same day, Ideanomics filed a Form 10-Q for 2Q 2018 signed by Tovar stating that Ideanomics was "*currently focused on consumer electronics and the crude oil trading business in supply chain management with the intent to migrate this on to the blockchain with AI capabilities.*" ¶68. This statement was false when made because (1) blockchain and artificial intelligence blockchain and artificial intelligence *were not integrated* into the crude oil or consumer electronics businesses; and (2) the Company never intended to migrate the consumer electronics and crude oil businesses onto blockchain as it only intended to operate these businesses for research purposes. ¶¶65, 69, 77, 79.

C.     **Post-Class Period Revelations**

On November 14, 2018, the day after the Class Period's end, Ideanomics revealed it was divesting its oil trading and consumer electronics businesses due to "low margins" despite previously touting "ramp[ed] up margins" due to blockchain. ¶¶66, 70, 75. On this news, Ideanomics stock price dropped 48.8%. ¶76. In a Form 10-Q filed later that day, Ideanomics

4

revealed that its "*commodities trading business*," *i.e.*, its crude oil and consumer electronics businesses, ¶75, "*does not currently integrate blockchain or AI based logistics solutions[.]*" ¶77.  In response to SEC comments on December 14, 2018, Ideanomics filed a second amended 2017 Annual Report, revealing that its crude oil and consumer electronics businesses were operated "*largely for <u>research purposes</u>*" and "*not primarily with a view to competitive returns.*"  ¶79.

After pivoting yet again, the Company currently operates an "Electric Vehicle" business—a clear departure from its prior businesses.  ¶113.

## LEGAL ARGUMENT

In evaluating a Rule 12(b)(6) motion, the Court must accept as true the facts alleged and draw all reasonable inferences in Plaintiff's favor.  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006).  Matters outside the pleading must be excluded; otherwise the Court must convert the 12(b)(6) motion into a Rule 56 summary judgment motion and provide Plaintiff an opportunity to respond after conducting appropriate discovery.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); Fed. R. Civ. P. 12(b), 12(d), 56(d).  A plaintiff need only allege enough facts "to state a claim for relief that is plausible on its face[,]" meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 456 (S.D.N.Y. 2017); *see also New Orleans Empls. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 15 (2d Cir. 2011) ("[E]ven with the heightened pleading standard under Rule 9(b) and the [PSLRA] we do not require the pleading of detailed evidentiary matter in securities litigation.").

Claims under Section 10(b) and Rule 10b-5 have the following six elements: "(1) a material misrepresentation or omission by the defendant [*i.e.*, falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).  Tovar only challenges the falsity and scienter elements.

## I.    TOVAR'S FALSE STATEMENT IS ACTIONABLE

It is unlawful to (1) "make any ***untrue*** statement of a material fact" ***or*** (2) "omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not ***misleading***."  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011) (quoting 17 C.F.R. § 240.10b-5(b)).  Thus, statements are actionable if they are either materially false or materially misleading.  Hence, "statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." *McMahan & Co. v. Wherehouse Ent., Inc.*, 900 F.2d 576, 579 (2d Cir. 1990).  A statement identified as forward-looking is actionable when it is not accompanied by meaningfully cautionary language and is made with actual knowledge that the statement is false or misleading. *See Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010).  The Second Circuit has held that a speaker has actual knowledge of the falsity of a forward-looking statement if the speaker has actual knowledge that one or more of the following implicit factual representations is not true: "(i) that the statement is genuinely believed; (ii) that there is a reasonable basis for that belief; and (iii) that the speaker is not aware of any undisclosed facts tending to seriously undermine the accuracy of the statement."  *In re General Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 388 (S.D.N.Y. 2012) (citing *Slayton*, 604 F.3d at 774).

**A.      Tovar's Statement Regarding Ideanomics' "Current" Focus On Consumer Electronics And Crude Oil To Migrate To Blockchain Was False When Made**

On August 13, 2018, Ideanomics filed a 10-Q by Tovar emphasizing that Ideanomics was "***currently*** focused on consumer electronics and [] crude oil trading" "***with*** the ***intent to migrate***" the businesses onto blockchain.  ¶68.  This statement was false when made because Ideanomics did not operate those businesses with the intent to migrate them onto blockchain as those businesses were operated for "research purposes" and not for competitive returns.  ¶69. Therefore, this statement is actionable.  *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 2013 WL 1139408, at *23 (S.D.N.Y. Dec. 12, 2013) (finding actionable "specific statements leading up to the Facebook IPO ensuring 'on-time, on-target and ready-to-launch' technology" when such technology was not ready); *Gross v. GFI Group, Inc.*, 162 F. Supp. 3d 263, 269 (S.D.N.Y. 2016) (finding actionable statement that merger was "singular and unique opportunity" where defendant "never intended to optimize value"); *Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *15-16 (C.D. Cal. May 8, 2013) (finding statements regarding commitment to apply "webOS on PCs" actionable where, *inter alia*, company was "just concepting" webOS). Furthermore, Ideanomics is liable for Tovar's statement under principles of *respondeat superior*. *In re Parmalat Sec. Litig.*, 474 F. Supp. 2d 547, 550 n.12 (S.D.N.Y. 2007) ("[M]ost circuits have explicitly held that *respondeat superior* applies in federal securities cases[.]").

**B.      The PSLRA Safe Harbor Affords Tovar No Protection**

Tovar asserts that his statement in ¶68 is protected by the PSLRA's safe harbor for forward-looking statements and the closely related bespeaks caution doctrine.  Not so.  The PSLRA's safe harbor applies ***only*** to forward-looking statements, not omissions or statements of present or historical fact.  *See In re Salix Pharm., Ltd.*, 2016 WL 1629341, at *9 (S.D.N.Y. Apr. 22, 2016); *City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at *12 (S.D.N.Y. Mar. 25,

7

2013).  The safe harbor also "does not apply to any allegedly false statement [that] has both a forward-looking aspect and an aspect that encompasses a representation of present fact," *Salix*, 2016 WL 1629341, at *9, or to any statement that links "future success to present and past performance," *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 183 (S.D.N.Y. 2003).

Tovar's assertion that the portion of his statement using the word "intent" renders his statement forward-looking is belied by the fact that the statement is framed in clearly present-tense terms—Ideanomics was "***currently focused***" on consumer electronics and crude oil for blockchain purposes.  *See Manavazian v. Atec Group, Inc.*, 160 F. Supp. 2d 468, 481 (E.D.N.Y. 2001) (statements not forward-looking where they pertained to "ATEC's ***current***" business health); *Schnall v. Annuity and Life Re (Holdings), Ltd.*, 2004 WL 367644, at *7 (D. Conn. Feb. 22, 2004) (statements not forward-looking where they were "positive characterizations of ANR's ***current*** and [even] future business conditions" because the statements included representations of "present facts"); *Carlton v. Cannon*, 184 F. Supp. 3d 428, 494 (S.D. Tex. 2016) (statements that plant was "***currently*** producing additional oil" and "turning the corner toward steady-state operations" were not forward-looking because they were about "current operations"); *Mulligan v. Impax Laboratories, Inc.*, 36 F. Supp. 942, 965 (N.D. Cal. 2014) (statements not forward-looking where "the ***focus*** of these statements [was] on ***current*** customer demand"); *accord In re Atossa Genetics Inc. Sec. Litig.*, 868 F.2d 784, 801 (9th Cir. 2017) (statement not forward-looking because statement's "emphasis on the past tense indicate[d] Quay was referring to prior events").

8

The nature of the statement is further borne out by its context.  During a ***prior conference call***, Wu claimed that Ideanomics was ***then-applying*** blockchain with crude oil.[2]  *See* ¶¶66-67 (Wu stating, "we are ***now in the middle of transforming***" into company which uses "digital settlement based on blockchain" and that Ideanomics "***did [transform] with crude oil***" and was ready to do the same with consumer electronics).  Moreover, on the very same day Ideanomics filed the 10-Q with Tovar's statement, Benya stated that blockchain was a "***key dri<u>ver</u> of our current and <u>rapid topline revenue growth</u>***."  ¶70.  Indeed, Tovar's statement does not act as a disclaimer to Wu's and Benya's statements but, in fact, ***expands*** on them by communicating that Ideanomics planned on running ***all of its businesses*** on the "blockchain with AI capabilities." ¶68.  Thus, in context, Tovar's statement—that Ideanomics was "***<u>currently focused on consumer electronics and [] crude oil trading</u>***" "***<u>with the intent to migrate</u>***" the businesses onto blockchain—is not forward-looking because it simply confirms and adopts what Wu said previously about Ideanomics having already applied blockchain to the crude oil business and what Benya said regarding blockchain driving Ideanomics' revenue growth.  *See Salix*, 2016 WL 1629341, at *11 ("Defendants' statements . . . taken in light of the overall ***context*** in which they were made, are not subject to the PSLRA safe harbor for forward-looking statements because they [] incorporated misleading representations of present fact[.]").

---

[2]     Tovar's cases are inapposite.  The statements found to be forward-looking in *Gregory v. ProNAi Therapeutics Therapeutics, Inc.*, 297 F. Supp. 3d 372, 410 (S.D.N.Y. 2018) concerned whether the Company "intend[ed]" to "***expand . . . opportunity***" for its drug in the future, whereas Tovar's statement is about the Company's "***current[]***" focus on crude oil and consumer electronics "***with***" the "***intent***" to migrate them onto blockchain.  The statements in *NECA-IBEW Health & Welfare Fund v. Pitney Bowes, Inc.*, 2013 WL 1188050, at *17 (D. Conn. Mar. 23, 2013) were deemed forward-looking because they "incorporate[d] . . . linguistic cues denoting forward-looking statements: 'the company anticipates' and 'the company expects[,]'" ***not*** because the word "intent" was used.  The portions of *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 769 (2d Cir. 2010) cited by Tovar concerns the ***designation*** of a forward-looking statement, rather than whether the statement itself is historical or forward-looking, and is inapplicable in any event because Tovar did not combine his statement with "linguistic cues like 'we expect' or 'we believe[.]'"

Additionally, Plaintiff may plead that Tovar's statement was made with "strong circumstantial evidence of recklessness[]" to be liable under Section 10(b) because his statement is not forward looking. *Novak v. Kasaks*, 216 F.3d 300, 309-10 (2d Cir. 2000). As discussed below, § II, *infra*, Plaintiff has pleaded the requisite scienter for Tovar.

### C.    Tovar's Counter-Narrative Must Be Rejected

Tovar also plucks phrases from larger quotations to assert that his statement was not false when made. Tovar MTD at 16-18 (dissecting his statement into two separate ones, one being that Ideanomics is "currently focused on consumer electronics and the crude oil trading business" and the other being that Ideanomics intended to "migrate this on to blockchain"). However, the test for whether a statement is false or misleading "***is objective***" and "***depends on the perspective of a reasonable investor***[,]" not Tovar's *post hoc* assessment of his own statement. *See Micholle v. Ophthotech Corp.*, 2019 WL 4464802, at *6 (S.D.N.Y. Sept. 17, 2019). Plaintiff's claim is that Tovar falsely stated that Ideanomics was ***then*** "***currently focused***" ***on the consumer electronics and crude oil businesses*** "***with*** ***the intent to migrate***" ***them into blockchain*** when in fact no such migration had occurred and when the Company itself possessed no such intent because it was operating those businesses primarily for research purposes. *See* ¶¶68-69; *Scritchfield v. Paolo*, 274 F. Supp. 2d 163, 175–76 (D.R.I. 2003) (stressing that "a company's statements that it is 'premier,' 'dominant,' or 'leading' must not be assessed in a vacuum" "by plucking the statements out of their context"); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 966 (N.D. Cal. 2014) ("[T]he Court may not assess the statements listed in the FAC in a vacuum, plucking the statements out of their context to determine whether the words, taken per se, are sufficiently vague so as to constitute puffery, but rather will examine the entire statement and its circumstances to determine if it is actionable."); *Better v. YRC Worldwide, Inc.*, 2012 WL 4433500, at *9 (D. Kan. Sept. 25, 2012) (noting that

10

"[t]hroughout its falsity argument, defendants would have the Court read isolated sentences or phrases out of context, without considering the entire statement" and "reject[ing] the notion that it should examine each of these statements in isolation, as the proper approach is to accept all of plaintiffs' allegations as true and to review them collectively.").

Tovar additionally argues that the Company's admission that it was focused on its consumer electronics and crude oil businesses "largely for research purposes" and "not primarily with a view for competitive returns" is consistent with his statement. However, operating consumer electronics and crude oil for research purposes *and not competitive returns is necessarily in conflict* with operating them to migrate them onto blockchain, because Ideanomics' own stated goal with blockchain was to unlock higher "margins," in other words, competitive returns. *See* ¶¶12, 13, 66, 70; *Gross*, 162 F. Supp. 3d at 269 (finding actionable statement that merger was "singular and unique opportunity" where defendant "never intended to optimize value"); *Manavazian*, 160 F. Supp. at 484 (finding actionable statement that defendant did not sell stock to purchase building where "implicit in this allegation" was that he "never intended to purchase the building" and defendant "knew that statement was false when made").[3]

---

[3]     *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812 (2d Cir. 1996) is inapposite, because there the plaintiff failed to allege that Phillip Morris was doing anything but pursuing its plan. Here, Plaintiff adequately alleges that Tovar was stating one thing—that Ideanomics was integrating blockchain to obtain higher margins—but *in fact* the Company was not integrating blockchain and not intending to run these businesses for "competitive returns[.]" Similarly, *Pehlivanian v. China Gerui Adv. Mat. Grp. Ltd.*, 153 F. Supp. 3d 628, 646 (S.D.N.Y. 2015) is inapposite because there, as the court noted, the company "did not make any statements or predictions foreclosing the possibility of adopting alternative strategies[.]" Here Plaintiff is not alleging that Tovar's statement is false because Ideanomics pursued a different strategy, but because he stated that Ideanomics was currently focused on its crude oil and consumer electronics businesses with the intent to migrate them to blockchain when, in fact, that was not the case. ¶¶68-69. *Xerion Partners, I LLC v. Resurgence Asset Management, LLC*, 474 F. Supp. 2d 505, 518 (S.D.N.Y. 2007) is inapplicable because there the plaintiff noted that the purportedly false statements regarding leasehold value were false because of events that "occurred five months" after the statements were made. Here, Plaintiff has alleged that Tovar's statement was false *when it was made*. ¶¶68-69.

11

## II.   TOVAR ACTED WITH THE REQUISITE SCIENTER

"The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the smoking-gun genre or even the most plausible of competing inferences[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).  The court's "job is not to scrutinize each allegation in isolation but to assess all of the allegations holistically[,]" *id.* at 326, and make "a practical judgment about whether, accepting the whole factual picture painted by the Complaint, it is **at least as likely as not** that defendants acted with scienter." *Slayton*, 604 F.3d at 775 .

A plaintiff may satisfy the scienter standard "by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Motive and opportunity are pleaded by stating "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 364 (S.D.N.Y. 2003).  Conscious misbehavior or recklessness arises in two situations.  First, when the defendants had "knowledge of facts or access to information contradicting their public statements" such that they "knew or . . . should have known that they were misrepresenting material facts[.]" *Novak*, 216 F.3d at 308.  Second, when "the defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Id.*

When considered holistically, Plaintiff's allegations and arguments below establish Tovar's scienter.

### A.   Tovar Acted With Conscious Misbehavior And Recklessness

Because blockchain is a large system where transactions are recorded in a decentralized database on various computers in order to promote transparency, such a platform would have been easily accessible on Ideanomics' internal computers.  ¶¶32-33, 95.  Tovar, as CFO and the

12

Company's blockchain guru, had access to Ideanomics' internal computers and systems, and thus had access to real-time information indicating that Ideanomics had not integrated blockchain into its crude oil and consumer electronics businesses.  ¶¶32-33, 95; *see City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at \*19 (S.D.N.Y. Mar. 25, 2013) ("access to real time [inventory and sales] data" supported inference of defendants' awareness "of the severity of the 'inventory crisis'" and its impact on revenue guidance); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at \*4 (S.D.N.Y. Jan. 27, 2014) (CFO's role in financial reporting and touting of real time inventory systems supported inference of scienter).  Thus, it should have been—and undoubtedly was—obvious to Tovar, a blockchain expert, that his statement regarding the integration of blockchain was false when made when no such integration occurred.  *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 650 (2010) ("[C]ertain statements[,]" such as "I am not married[,]" are such that "to show them false is normally to show scienter as well."); *Freudenberg v. E\*TRADE Fin. Corp.*, 712 F. Supp. 2d 171, 199 (S.D.N.Y. 2010) ("[T]he magnitude of write-offs alleged to be the subject of the misstatements supports a strong inference of scienter."); *see also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d Cir. 2008) (endorsing collective scienter theory where company scienter can be inferred, for example, where company announces it sold one million SUVs when "actual number was zero"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 66281, at \*14 (N.D. Cal. Jan. 4, 2017) (applying theory where VW touted the emissions compliance of all "clean diesel" vehicles when none were in compliance); *In re BP P.L.C. Sec. Litig.*, 843 F. Supp. 2d 712, 791 (S.D. Tex. 2012) (applying theory where BP could only recover 15,000 of 491,721 barrels of oil it claimed it could, as the difference was "so far from the truth as to support a finding of reckless indifference").

Moreover, Tovar publicly discussed the integration of blockchain into the Company's consumer electronics and crude oil businesses.  ¶68.  "In order to speak so knowledgeably regarding the state of" blockchain integration, Tovar "must have educated himself regarding" the progress of Ideanomics' blockchain platform "by performing his own due diligence."  *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entm't Holdings, Inc.*, 2019 WL 4601644, at *17 (S.D.N.Y. Sept. 23, 2019); *see also Sgalambo v. McKenzie*, 739 F. Supp. 2d 453, 482 (S.D.N.Y. 2010) (explaining that the defendants "surely relied on some sort of document or report . . . in reporting the test results contained in their public statements.  And it is probable that these documents or reports contained the allegedly negative tests results that [the defendants] allegedly withheld, as well as the positive tests results that [the defendants] reported.").  Therefore, either Tovar reviewed the transactions in the consumer electronics and crude oil business and saw that blockchain had not been integrated, or he was reckless in speaking about the integration of blockchain without verifying whether it had actually occurred.  *See In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 469 (S.D.N.Y. 2017) (inferring scienter when defendants were in a position to know "facts or had access to information suggesting that their public statements were not accurate" or "failed to check information they had a duty to monitor.").

At the very least, the SEC's inquiry during the Class Period into Ideanomics' blockchain platform would have put Tovar on notice that the system had not yet been integrated into the crude oil and consumer electronics businesses.  ¶¶34-35, 96.  In response to the SEC's inquiry, the Company conducted an investigation into the status of its blockchain platform, and was eventually required to retract its statement that blockchain had been integrated into its businesses.  ¶¶34-35, 96; *see Stratte-McClure v. Morgan Stanley*, 784 F. Supp. 2d 373, 388

(S.D.N.Y. 2011) (An SEC letter questioning the company's holdings and valuations "creat[ed] the inference that the Company was aware of regulatory concerns about the valuation[.]"); *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 480 (S.D.N.Y. 2011) (communication of SEC's concerns put defendants on notice of issues).[4]

Tovar was also undoubtedly aware that Ideanomics was operating its consumer electronics and crude oil businesses primarily for research purposes and not competitive returns given the Company's admission. ¶79; *see Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 227 (S.D.N.Y. 2008) ("[A]dmissions of misrepresentations, coupled with defendants' continuous intimate knowledge of company affairs is enough to adequately infer scienter."); *In re NTL, Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 33 (S.D.N.Y. 2004) ("The allegation of scienter is certainly sufficient for defendant Knapp, as he admitted his knowledge" that the company had become cash flow negative); *In re KeySpan Corp.*, 2003 WL 21981806, at *16 (E.D.N.Y. July 30, 2003) (inferring scienter when defendant admitted that he received periodic reports); *accord Ronconi v. Larkin*, 253 F.3d 423, 433 (9th Cir. 2001) (scienter may be inferred when defendant makes a later admission along the lines of "I knew it all along[,]" where it is coupled with a specific false statement).

Tovar argues that because his statement was forward looking,[5] Plaintiff cannot establish scienter because Plaintiff failed to show that Tovar did not believe that blockchain would be

---

[4]     Tovar attempted to refute this allegation by pointing to improperly-submitted extrinsic evidence that cannot be considered at this stage of the litigation. *See generally* MTS. Moreover, the fact that TPaaS was mentioned in the 10-K does not negate the fact that Ideanomics was required to retract its statements regarding blockchain integration.

[5]     Tovar's insistence that his statement was forward-looking because Ideanomics was aiming to integrate blockchain "***in the near future***" is a tacit admission that Wu's and Benya's statements that such integration had taken place were knowingly false when made. *See Ronconi*, 253 F.3d at 433 (scienter may be inferred when defendant makes a later admission along the lines of "I knew it all along[,]" where it is coupled with a specific false statement); *see also NTL,* 347 F. Supp. 2d at 33 ("The allegation of scienter is certainly sufficient for defendant Knapp, as he admitted his knowledge" that the company had become cash flow negative); *KeySpan*, 2003 WL 21981806, at *16 (inferring scienter when defendant admitted that he received periodic reports).

integrated in the future.  However, as set forth, in Section I.B *supra*, this statement is not forward looking because it discusses the ***current*** integration of blockchain.  For statements of present fact, Plaintiff is only required to plead that Tovar had access to, or recklessly disregarded information showing that blockchain had not been integrated.  *Novak*, 216 F.3d at 308.  The Complaint contains ample allegations in that regard.  ¶¶32-35, 95-96.

> **B.**  **Tovar Had Access To Information Regarding Blockchain Integration Due To Its Importance To The Company And His Unique Expertise**

Numerous courts have found that the importance of an issue to a corporation lends to the inference of scienter as to adverse facts regarding that issue.  *See New Orleans Employees Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011) (endorsing the core operations doctrine as enhancing, if not independently supporting, an inference of scienter).  In *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012), the court found that, "knowledge of the falsity of a company's financial statements can be imputed to key officers who should have known of facts relating to the core operations of their company that would have led them to the realization that the company's financial statements were false when issued." During the Class Period, Ideanomics admitted in its SEC filings that it was "focused on consumer electronics and the crude oil business" as "part of [its] blockchain and AI-driven strategy."  ¶111.  Indeed, a "significant portion of [Ideanomics'] operations [] consist[ed]" of the crude oil joint venture with Ocasia.  ¶111.  Moreover, with respect to the importance of the integration of blockchain, defendant Bruno Wu has himself stated, "Blockchain is the future." ¶111.  Tovar, in particular had specialized experience in blockchain and was acutely aware of how the technology worked.  ¶100.  Thus, Tovar, as CFO was tasked with overseeing the Company's operations, and his statement indicates that he was heavily involved in developing the blockchain platform.  ¶68.  Therefore, due to the "importance of [this project] during the

relevant period, [Tovar] should have been aware of" the issues facing the project. *In re Alstom SA*, 406 F. Supp. 2d 433, 459–60 (S.D.N.Y. 2005).

### C. Tovar Possessed The Motive And Opportunity To Make Misleading Statements About Ideanomics' Integration Of Blockchain

Plaintiff is not required to plead a financial motive to state a claim. *Tellabs*, 551 U.S. at 325. However, Plaintiff's allegations suffice to establish Tovar's motive and opportunity to mislead the market regarding the integration of blockchain. "[O]pportunity is presumed to have been met" given that Tovar was Ideanomics' CFO. ¶24; *Teachers' Pension Plan Board v. Teva Pharm. Indus. Ltd.*, 2019 WL 4674839, at *21 (D. Conn. Sept. 25, 2019).

With respect to motive, because Ideanomics' own auditors had a "substantial doubt about the Company's ability to continue as a going concern[,]" Ideanomics pumped up its stock price through misrepresentations in order to conduct five share offerings, reaping more than $60 million in profits in only 15 months. ¶104. Two of these offerings, together totaling $18 million in proceeds, occurred when Tovar was CFO of Ideanomics. ¶102.[6] Allegations that "the executives' careers and the very survival of the company were on the line[,]" like those here, are the types of corporate goals that establish a financial motive. *In re Cabletron Sys., Inc.*, 311 F.3d 11, 39 (1st Cir. 2002); *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 483 (S.D.N.Y. 2008) ("the crucial contribution of theater system revenue to IMAX as a going concern" supported an inference of scienter).

### III. PLAINTIFF STATES A CLAIM UNDER SECTION 20(a)

"The elements of a claim under Section 20(a) include both a primary violation and

---

[6]   *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 647 (S.D.N.Y. 2007) does not support Tovar's arguments regarding scienter because the court in that case found that the defendants' sales of personal holdings did support an inference of scienter. Furthermore, *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 201 (2d Cir. 2009) and *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001) are not analogous because they did not contain allegations that the company was on the verge of bankruptcy, and the court in *Novak*, 216 F.3d at 312, did not consider any motive allegations.

17

control over the primary violator." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 307 (S.D.N.Y. 2005). Tovar only challenges the first of these two elements, *i.e.* whether there was a primary violation of § 10(b). Tovar MTD at 24. Thus, because Plaintiff alleges viable § 10(b) claims, Plaintiff's § 20(a) claims survive. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 310-11 (S.D.N.Y. 2013).

## IV.  TOVAR'S DEFENSE OF BENYA'S FALSE STATEMENT FAILS

Tovar offers arguments for dismissal of claims brought against Benya, who is represented by separate counsel and who has filed a separate motion to dismiss on his behalf. Benya's statement is actionable for the reasons stated in Plaintiff's opposition to his—and the other Defendants'—motion to dismiss. *See* Benya & Co. MTD Opp. at § I.A.3. Tovar's gratuitous arguments on Benya's behalf should be denied because it is axiomatic that a defendant "lack[s] standing to bring a motion to dismiss on behalf of a party whom it does not represent." *Deeds v. Bayer*, 2007 U.S. Dist. LEXIS 103427, at *16 (D. Nev. Jan. 11, 2007); *Haley v. Ornelas*, 2016 WL 11519291, at *3 (C.D. Cal. Dec. 21, 2016) ("To the extent Defendant County seeks to make arguments on behalf of Defendant Ornelas . . . the Court declines to address any such arguments."); *Miller v. Van Boening*, 2011 WL 884222, at *5 (W.D. Wash. Feb. 11, 2011), *adopted*, 2011 WL 884310 (W.D. Wash. Mar. 14, 2011) ("If counsel does not represent this defendant it is not proper to assert arguments on his behalf."). Indeed, Tovar himself acknowledges that Benya's statement is "not attributed to Mr. Tovar[.]" Tovar MTD at 13.

In any event, Benya's statement is actionable. That is, when discussing Tradetech, "***which involves the use of blockchain***," Benya claimed that Tradetech, and therefore blockchain, was used "***to ramp up margins***" in Ideanomics' consumer electronics and crude oil businesses and thus Tradetech was "***a key driver of our current and rapid topline revenue growth***[.]" ¶70. This statement was false when made because blockchain incorporation had not

taken place, and therefore blockchain was not driving Ideanomics' revenue growth. ¶71. *See Facebook*, 2013 WL 1139408, at \*23 (finding actionable "specific statements leading up to the Facebook IPO ensuring 'on-time, on-target and ready-to-launch' technology" when such technology was not ready); *Gross*, 162 F. Supp. 3d at 269 (finding actionable statement that merger was "singular and unique opportunity" where defendant "never intended to optimize value"); *Manavazian*, 160 F. Supp. at 484 (finding actionable statement that defendant did not sell stock to purchase building where "implicit in this allegation" was that defendant "never intended to purchase the building" and defendant "knew that statement was false when made").

Tovar's arguments to the contrary are meritless. Tovar argues that Benya's statement during the August 13, 2018 conference call is forward-looking and not false. Tovar MTD at 13-14, 19-20. Benya's statement concerns a historical fact, however, because its "accuracy can be determined at the time it was made." *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 569 (S.D.N.Y. 2011). That is, it was either true or false that Tradetech's blockchain technology was ramping up margins in Ideanomics' consumer electronics and crude oil trading businesses. *See id.* at 183 ("By definition the safe-harbor applies to protect only forward-looking statements, and not to misrepresentations of **historical or current** facts."); *Facebook*, 2013 WL 1139408, at \*23  (finding "statements leading up to the Facebook IPO ensuring 'on-time, on-target and ready-to-launch' technology" not forward-looking).

As with his own statement, Tovar also posits his own construction of Benya's statement. However, the test for whether a statement is false or misleading "is objective" and "***depends on the perspective of a reasonable investor***[,]" not Tovar's self-serving *post hoc* explanation of ***Benya's*** statement. *See Micholle*, 2019 WL 4464802, at \*6; *see also Scritchfield*, 274 F. Supp. 2d at 175–76 (stressing that "a company's statements that it is 'premier,' 'dominant,' or 'leading'

19

must not be assessed in a vacuum" "by plucking the statements out of their context"); *Mulligan*, 36 F. Supp. 3d at 966 ("[T]he Court may not assess the statements listed in the FAC in a vacuum, plucking the statements out of their context to determine whether the words, taken per se, are sufficiently vague so as to constitute puffery, but rather will examine the entire statement and its circumstances to determine if it is actionable."); *Better*, 2012 WL 4433500, at *9  (noting that "[t]hroughout its falsity argument, defendants would have the Court read isolated sentences or phrases out of context, without considering the entire statement" and "reject[ing] the notion that it should examine each of these statements in isolation, as the proper approach is to accept all of plaintiffs' allegations as true and to review them collectively.").,

Tovar also argues based on extrinsic evidence of his ***own purported statement*** during the conference call that Ideanomics "intend[ed] to transition" its supply chain management business to Tradetech/blockchain renders Benya's present-tense statement forward-looking and not false. Tovar MTD at 13-14, 19-20.  This argument must be rejected because it violates the edict that courts must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff" and by improperly relying on extrinsic inadmissible hearsay evidence.  *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119 (2d Cir. 2013); *see generally* MTS; *In re Ecotality, Inc. Sec. Litig.*, 2014 WL 4634280, at *3 n.2 (N.D. Cal. Sept. 16, 2014) ("[W]ere the Court to assume the truth of all documents incorporated by reference [], that would mean assuming the truth of all of Defendants' allegedly false or misleading statements.  That cannot be the intended result of the cases Defendants cite, or it would be impossible ever to successfully plead a fraud claim.").

## V.    ALTHOUGH UNNECESSARY, AMENDMENT SHOULD BE PERMITTED

Fed. R. Civ. P. 15(a) permits a party to amend a complaint with the court's permission. "Without doubt, [the Second Circuit] strongly favors liberal grant of an opportunity to replead

after dismissal of a complaint under Rule 12(b)(6)." *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient."). Therefore, should the Court grant the MTD, Plaintiff requests leave to amend, including to amend any fact or argument asserted herein that the Court does not believe were sufficiently alleged in the AC. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Tovar's motion. Alternatively, Plaintiff requests leave to amend the AC for the reasons set forth herein.

Dated: March 2, 2020                    Respectfully submitted,


                                        By: */s/ Richard W. Gonnello*
                                                Richard W. Gonnello

                                        Richard W. Gonnello
                                        Katherine M. Lenahan
                                        Sherief Morsy
                                        **FARUQI & FARUQI, LLP**
                                        685 Third Avenue, 26th Floor
                                        New York, NY 10017
                                        Telephone: 212-983-9330
                                        Facsimile: 212-983-9331
                                        Email: rgonnello@faruqilaw.com
                                                klenahan@faruqilaw.com
                                                smorsy@faruqilaw.com

                                        *Attorneys for Lead Plaintiff Jaysukh Rudani*

21