**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAYSUKH RUDANI, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>      v.<br><br>IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., *et al.*,<br><br>           Defendants. | No. 1:19-cv-06741-GBD |

**REPLY IN FURTHER SUPPORT OF DEFENDANT FEDERICO TOVAR'S**
**MOTION TO DISMISS AMENDED SECURITIES CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.      The PSLRA Safe Harbor Applies. ........................................................................... 1

    A.      The 2Q 2018 10-Q Statement is Forward-Looking. ................................................ 1

    B.      The 2Q 2018 10-Q Statement Was Accompanied by Cautionary Language. ........ 4

    C.      The Amended Complaint Does Not Support the Inference that Mr. Tovar Had
        Actual Knowledge of Falsity. .................................................................................. 4

II.     The Allegation That the 2Q 2018 10-Q Statement is False Rests on a Facially Wrong
    Reading of a Subsequent Disclosure ..................................................................................... 5

III.    Plaintiff Fails to Allege the Requisite Scienter as to Mr. Tovar. ....................................... 8

    A.      The Amended Complaint Lacks Facts to Support that Mr. Tovar Acted with
        Conscious Misbehavior and Recklessness. .............................................................. 8

    B.      The Amended Complaint Lacks Facts to Support that Mr. Tovar Acted with
        Motive or Opportunity. ............................................................................................ 9

IV.     Plaintiff Fails to State a Section 20(a) Claim .................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
  No. 12-2389, 2013 WL 11319408 (S.D.N.Y. Dec. 12, 2013) ....................................................8

*Gammel v. Hewlett-Packard Co.*,
  No. SACV 11-1404 AG RNBX, 2013 WL 1947525 (C.D. Cal. May 8, 2013) .......................8

*Gissin v. Endres*,
  739 F. Supp. 2d 488 (S.D.N.Y. 2010)................................................................................4, 10

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y.), *aff'd*, 757 F. App'x 35 (2d Cir. 2018)...........................2, 3, 4

*Gross v. GFI Group, Inc.*,
  162 F. Supp. 3d 263 (S.D.N.Y. 2016)........................................................................................8

*Iowa Pub. Emps.' Ret. Sys. v. MF Global*,
  620 F.3d 137 (2d Cir. 2010)......................................................................................................3

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).................................................................................................9, 10

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*,
  724 F. Supp. 2d 447 (S.D.N.Y. 2010), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).........................8

*NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*,
  No. 3:09-cv-01740, 2013 WL 1188050 (D. Conn. Mar. 23, 2013) .......................................3, 4

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
  153 F. Supp. 3d 628 (S.D.N.Y. 2015).....................................................................................2, 7

*In re PXRE Grp., Ltd., Sec. Litig.*,
  600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp.
  Ltd.*, 357 F. App'x 393 (2d Cir. 2009) .................................................................................8, 10

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris
  Cos.*,
  75 F.3d 801 (2d Cir. 1996).........................................................................................................7

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
  F.3d 199 (2d Cir. 2016)...........................................................................................................1, 5

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010)........................................................................................1, 3, 4

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011)..................................................................................8

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)..................................................................................................3

*Xerion Partners, I LLC v. Resurgence Asset Mgmt., LLC*,
    474 F. Supp. 2d 505 (S.D.N.Y. 2007), *aff'd sub nom. Bay Harbour Mgmt.
    LLC v. Carothers*, 282 F. App'x 71 (2d Cir. 2008) ............................................................7, 8

**Statutes**

15 U.S.C. § 78u–5(c)(1)(B) ........................................................................................................5

15 U.S.C. § 78u-5(i)(1)(B)...........................................................................................................1

The one alleged misrepresentation attributed to Mr. Tovar — the 2Q 2018 10-Q Statement — is non-actionable pursuant to the PSLRA's safe harbor.  Plaintiff tries to "spin" the 2Q 2018 10-Q Statement as false and made with scienter, but the assertions are conclusory, unsupported by specific facts, and contradicted by other disclosures.  Therefore, the Court should grant Mr. Tovar's motion and dismiss the Amended Complaint.

## I.      The PSLRA Safe Harbor Applies.

Mr. Tovar has demonstrated that the 2Q 2018 10-Q Statement is forward-looking and (1) is accompanied by appropriate cautionary language (which Plaintiff did not dispute) *and* (2) was not made with actual knowledge of falsity.[1]  Therefore, dismissal is appropriate.

### A.      The 2Q 2018 10-Q Statement is Forward-Looking.

Plaintiff wrongly contends that the safe harbor does not apply because the 2Q 2018 10-Q Statement of intent to migrate to blockchain says that the Company is "currently" focused on that migration or transition, and therefore is framed by a present fact.  But the fact that the 2Q 2018 10-Q Statement represents the Company's current *intention* does not alter the essentially forward-looking character of the statement.  A statement of the Company's *present plans* for the *future* is precisely the type of statement that the PSLRA safe harbor is meant to protect.  *See* 15 U.S.C. § 78u-5(i)(1)(B) (PSLRA definition includes "a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer").  A statement is protected by the safe harbor if, as here, it is "merely an expression

---

[1] Under the safe harbor provision, a forward-looking statement is non-actionable when it is "accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading."  *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010).  "Because the statute is written in the disjunctive, statements are protected by the safe harbor if they satisfy any one of these three categories."  *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 530 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016).

of opinion, expectation or *declaration of intention.*" *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 647 (S.D.N.Y. 2015) (emphasis added).[2]

Viewing the 2Q 2018 10-Q Statement in context confirms that no investor would consider the statement anything other than forward-looking. The sentence immediately following the 2Q 2018 10-Q Statement emphasizes the Company's "aim" to become a smart supply chain management platform "*[i]n the near future*, once the technology platform is fully functional." Carter Decl., Ex. 1, 2Q 2018 10-Q at 33 (emphasis added). The same day the 2Q 2018 10-Q was filed, Mr. Tovar further explained on the August 13th Earnings Call:

> This increase in margin is primarily due to our outstanding supply chain management business, which *we intend to transition* into our higher margin and blockchain driven TradeTech business.

Carter Decl., Ex. 2, Aug. 13, 2018 Earnings Call Tr. at 4 (emphasis added).[3] Fairly read, this statement says the Company had a *plan*, *going forward* to "transition" the consumer electronics and crude oil business to blockchain. That makes it non-actionable. Plaintiff's argument would gut the safe harbor if it did not apply to present declarations of intention or future plans.

Plaintiff's attempts to distinguish *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372 (S.D.N.Y.), *aff'd*, 757 F. App'x 35 (2d Cir. 2018) fail. In *Gregory*, the company stated: "we *intend* to expand the commercial market opportunity for PNT2258 by developing it for the treatment of a wide variety of BCL2-driven tumors . . . ," "we *plan to build* a commercial infrastructure," "[w]e *plan to enter* into collaborations for the development, marketing and commercialization of PNT2259," and "[w]e also *plan to invest* in scaling our manufacturing capacity to support our global commercial strategy." 297 F. Supp. 3d at 410 (emphasis added).

---

[2] Mr. Tovar incorporates by reference the safe harbor arguments made in the Company's Reply Brief at Section II.A.3.
[3] Mr. Tovar defers to the Company to defend the allegations relating to the August 13th Earnings Call Statement, given that, according to the Opposition, Plaintiff does not attribute it to Mr. Tovar.

2

These statements are nearly identical to Mr. Tovar's statement that the company had the "*intent to migrate*" the consumer electronics and crude oil trading business "on to the blockchain with AI capabilities" — the statement represents the Company's future business *plan*.  The *Gregory* court held that, even though the plaintiff seemed to "fault these statements on the ground that [defendant] allegedly knew . . . that the market . . . could never be as large as described," the statements were protected as forward-looking because they were statements of future business *plans*.  *Id.*

Plaintiff also contends that *NECA-IBEW Health & Welfare Fund v. Pitney Bowes Inc.*, No. 3:09-cv-01740, 2013 WL 1188050 (D. Conn. Mar. 23, 2013) carries no weight because the statements at issue in that case used "anticipates" or "expected" rather than "intent."  But the Court must recognize that is no distinction at all, as the words are synonymous.  Just as "anticipate" and "expect" are linguistic cues for forward-looking language, so is the word "intent."  Moreover, the cautionary language at the start of the MD&A expressly designates the 2Q 2018 10-Q Statement as forward-looking, stating that forward-looking statements can be identified by "words such as 'may', 'will', 'expect', 'anticipate', 'estimate', 'believe', 'continue', or *other similar words*."  Carter Decl., Ex. 1 at 30 (emphasis added).  The Second Circuit has established that "[t]he use of linguistic cues like 'we expect' or 'we believe,' when combined with an explanatory description of the company's intention to thereby designate a statement as forward-looking" — as is present here — is "sufficient to put the reader on notice that the company is making a forward-looking statement."  *Slayton*, 604 F.3d at 769.  Thus, the 2Q 2018 10-Q Statement is forward-looking.[4]

---

[4] In any event, "[a] statement may contain some elements that look forward and others that do not . . . [b]ut in each instance the forward-looking elements and the non-forward-looking are severable." *Iowa Pub. Emps.' Ret. Sys. v. MF Global*, 620 F.3d 137, 144 (2d Cir. 2010).  Where, as here, the plaintiff fails to plead that the present fact contained in the statement is false — Plaintiff does not allege that the Company was *not* "currently focused on consumer electronics and the crude oil trading business," Carter Decl., Ex. 1 at 33 — the forward-looking portion of the statement is severable for purposes of applying the safe harbor. *Pitney Bowes Inc.*, 2013 WL 1188050, at *18; *cf. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016) (affirming analysis where trial court separately considered the forward-looking elements from the non-forward-looking elements).

**B.**     **The 2Q 2018 10-Q Statement Was Accompanied by Cautionary Language.**

Plaintiff's Opposition did not dispute that the statement is accompanied by adequate cautionary language.[5]   As a result, dismissal is appropriate — *even if* Plaintiff alleges actual knowledge of falsity (which it does not). *See Gissin v. Endres*, 739 F. Supp. 2d 488, 511 (S.D.N.Y. 2010) ("defendants' use of the requisite cautionary language . . . effectively secures the protection of safe harbor for their forward-looking statements"); *Gregory*, 297 F. Supp. 3d at 410 (despite allegation of actual knowledge of falsity, safe harbor applied because statement was accompanied by meaningful cautionary language); *Pitney Bowes*, 2013 WL 1188050, at *23 (statements non-actionable because forward-looking and accompanied by the requisite cautionary language).

**C.**     **The Amended Complaint Does Not Support the Inference that Mr. Tovar Had Actual Knowledge of Falsity.**

The Complaint does not allege actual knowledge by Tovar of falsity.  "Liability under the actual knowledge prong of the safe harbor 'attaches only upon proof of knowing falsity' — a showing of recklessness is insufficient." *Gissin*, 739 F. Supp. 2d at 502 (quoting *Slayton*, 604 F.3d at 773).  The scienter implication that Plaintiff attempted to defend in the Opposition simply does not stand up.

Plaintiff's Opposition is littered with the conclusory assertion that the 2Q 2018 10-Q Statement was "false when made" because the Company never intended to integrate blockchain. But Plaintiff fails to identify any specific facts in the Amended Complaint to suggest that Mr. Tovar — himself, not any other defendant — had actual knowledge that the Company was not actually intending to integrate blockchain.  Mr. Tovar joined the Company in June 2018, and by then, by Plaintiff's purported theory, the Company had already been misrepresenting its intent to

---

[5] Rather than repeat the citations to the cautionary statements and supporting argument, Mr. Tovar refers the Court to pages 12–13 of his Memorandum in Support of Motion to Dismiss.

4

integrate blockchain for months.  Nowhere in the Amended Complaint does Plaintiff allege that Mr. Tovar gained actual knowledge of the Company's purported "true" intent in the two months preceding the 2Q 2018 10-Q.  "[P]laintiffs do not allege concrete factual particulars that support an inference that the statements were 'made with actual knowledge that [they were] false or misleading.' 15 U.S.C. § 78u–5(c)(1)(B)." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 538 (where complaint alleged only that "defendants were aware of the FDA's concerns," inference that statements addressing likelihood of FDA approval were made with actual knowledge was unsupported).  *See also infra,* Section III.A.  Therefore, the safe harbor applies, and the Court should dismiss the claims against Mr. Tovar.

## II.   The Allegation That the 2Q 2018 10-Q Statement is False Rests on a Facially Wrong Reading of a Subsequent Disclosure.

Plaintiff's theory, that the 2Q 2018 10-Q Statement is false because the Company characterized this process as engaging in the consumer electronics and crude oil business "for research purposes," does not withstand scrutiny in light of the actual disclosures made.  Those disclosures repeatedly describe that the "research purposes" were to develop a way to migrate or to transition to blockchain.  The phrase "research purposes" in the Third 2017 10-K — read in context — explains this intention to transition and to migrate very clearly.

The phrase "for research purposes" comes at the end of a long section repeatedly describing how the consumer electronics and crude oil businesses constituted the concrete steps toward the plan of developing blockchain capabilities, consistent with earlier disclosures of the intent to migrate to blockchain. An excerpt of that section is submitted herewith, marked to direct the Court's attention to the passages demonstrating that the Company operated these businesses "for research purposes" in order to accomplish the overall strategy of offering customized blockchain

5

products across various industries.[6]  *See* Suppl. Decl. of Hunter T. Carter Ex. 1, Third 2017 10-K at 1–12.  Speaking in terms quite *similar* to the 2Q 2018 10-Q Statement, the Third 2017 10-K states:

> Starting in early 2017, . . . we began ***transitioning our business model*** to become a next-generation financial technology ("fintech") company, *with the **intention** of offering customized products and services based on best-in-class blockchain, artificial intelligence ("AI") . . . across various industries*. To do so, we are building a technology ecosystem through license agreements, joint ventures and strategic acquisitions, which we refer to as our "Fintech Ecosystem." In parallel, *through strategic acquisitions*, equity investments and joint ventures, *we are building* a network of businesses, operating across industry verticals, *that we believe have significant potential to recognize benefits from blockchain* and AI technologies . . . .

*Id.* at 1 (emphasis added).  The disclosure emphasizes the intention to migrate or transition to blockchain described in the 2Q 2018 10-Q Statement:

> For example, in 2017, we acquired a crude oil trade business and a consumer electronics trading business with the goal of *gaining experience* in the traditional logistics management and financing business, providing an *initial use case* for technologies in our Fintech Ecosystem, and *enabling the application of our **learnings from operating these businesses** to the development of an AI- and blockchain* enabled platform for more efficient logistics management and finance generally.

*Id.* (emphasis added).  Moreover, the disclosure expressly states that "development of our Fintech Ecosystem and our Industry Ventures . . . are still in the planning and testing phase."  *Id.*[7]  Nothing in the disclosure — which explains how the Company engaged in the consumer electronics and crude oil business for research purposes — supports the inference that the Company lacked intent to integrate these business lines with blockchain and AI-capabilities.  The phrase "for research

---

[6] *See* Reply Memorandum of Law of Defendants Ideanomics, Inc. Bruno Wu, Bing Yang, and Robert Benya (the "Company's Reply Brief") at 3 (noting that the Company "disclosed *all along* that they were in *the process* of transforming to a blockchain company").

[7] Statements pre-dating the 2Q 2018 10-K Statement are likewise consistent.  The "research" component of these product lines is apparent in the First 2017 10-K, and the 2Q 2018 10-Q, the Second 2017 10-K, and the Third 2017 10-K, all of which reference the "trial operation" or "testing" of the Venus blockchain platform, which includes TPaaS & VPaaS system.  *See* First 2017 10-K at 4; 2Q 2018 10-Q at 31; Second 2017 10-K at 4; Third 2017 10-K at 3.

purposes" comes in a discussion of competition that follows the thorough description of how businesses were acquired with the intent to determine how to convert them to blockchain.

The Opposition has thus mischaracterized the disclosures in the Amended Complaint as suggesting that the 2Q 2018 10-Q Statement was false.  That said, however, the Complaint would fail to state a claim *even if* the Company engaged in a different business plan than the one stated in the 2Q 2018 10-Q.  A shift in business plan alone does not support an inference of falsity.  *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812 (2d Cir. 1996) is instructive.  There, the plaintiffs argued that the company's statements that its business strategy was to narrow the price gap between premium and discount cigarettes were false because it had already decided to, or was actively considering, adopting another plan.  *Id.*  The Court rejected the argument because the plaintiffs failed to allege facts "indicating how such consideration would have rendered any of the company's prior statements false" or demonstrating that the company was "doing anything but pursuing a strategy of narrowing the price gap."  *Id.*

Likewise, Plaintiff here has failed to allege any specific facts to demonstrate that the Company was *not* pursuing blockchain, or that it was pursuing some other, undisclosed business strategy at the time the 2Q 2018 10-Q Statement was made.  *See Xerion Partners, I LLC v. Resurgence Asset Mgmt., LLC*, 474 F. Supp. 2d 505, 518 (S.D.N.Y. 2007) (plaintiffs failed to allege facts to support argument that the company concealed the "true" future business plans), *aff'd sub nom. Bay Harbour Mgmt. LLC v. Carothers*, 282 F. App'x 71 (2d Cir. 2008).  "The mere fact that the company decided to pursue another strategy does not make its earlier statements false." *Pehlivanian*, 153 F. Supp. 3d at 645 (plaintiff's allegation that company implemented a change in business strategy one month after alleged misrepresentation was made was insufficient to infer that alleged misrepresentation was false when made).  Accordingly, dismissal is appropriate.  *See*

*Xerion Partners*, 474 F. Supp. at 518, 520 (dismissing claim where plaintiffs failed to identify specific facts indicating that the business strategy as presented was contemporaneously false).[8]

### III.   Plaintiff Fails to Allege the Requisite Scienter as to Mr. Tovar.

#### A.   The Amended Complaint Lacks Facts to Support that Mr. Tovar Acted with Conscious Misbehavior and Recklessness.

The Opposition failed in its struggle to support the bare allegation of scienter in the Complaint. Plaintiff argues that Mr. Tovar *should have known* about alleged misstatements because of his expertise in blockchain, the importance of the blockchain project to the Company, and his access to the Company's computers and systems, but none of these is sufficient to state a claim that he *did know* of *specific facts* showing that any disclosure was false. Plaintiff thus fails to "*specifically* allege defendants' knowledge of facts or access to information contradicting defendants' public statements" that were available to Mr. Tovar "*at the same time*" the statement was made. *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 336 (S.D.N.Y. 2011) (quoting *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009), *aff'd sub nom. Condra v. PXRE Grp. Ltd.*, 357 F. App'x 393 (2d Cir. 2009)).

Plaintiff has failed to allege *specific* information that Mr. Tovar viewed or had access which would have suggested that the Company lacked intent to migrate the consumer electronics and crude oil businesses to blockchain; speculative allegations do not suffice. *See Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010)

---

[8] The cases cited by plaintiff to support falsity are inapposite. In *In re Facebook, Inc., IPO Securities & Derivative Litigation*, No. 12-2389, 2013 WL 11319408, at *23 (S.D.N.Y. Dec. 12, 2013), plaintiff did not allege that the statements were false *when made*, but that they were later rendered false and that Facebook had a duty to correct. In *Gross v. GFI Group, Inc.*, 162 F. Supp. 3d 263, 268 (S.D.N.Y. 2016) plaintiff alleged specific facts to show falsity — that the CEO was informed of a competing offer to acquire the company when he announced to shareholders that the offer he supported was a "singular and unique opportunity." In contrast, Plaintiff here has not alleged any specific facts to support that the Company did not actually intend to integrate its businesses to blockchain. Plaintiff also cites *Gammel v. Hewlett-Packard Co.*, No. SACV 11-1404 AG RNBX, 2013 WL 1947525, at *8 (C.D. Cal. May 8, 2013), which actually *supports* Mr. Tovar's argument that the PSLRA safe harbor applies here. In *Gammel*, the court held that statements relating to the company's plans and intentions made during earnings calls and in Form 10-Qs were forward-looking and protected by the PSLRA safe harbor. *Id.* at *9.

(emphasizing that "bland assertions that they 'would have received' such information offer nothing concrete and are not allegations of fact"), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).  Plaintiff's suggestion that Mr. Tovar had "access to real-time information indicating that Ideanomics had not integrated blockchain" is a misdirect.  The 2Q 2018 10-Q Statement does not state that the Company had *already* integrated blockchain.  Rather, it states that it *intended* to migrate to blockchain.  Thus, to allege scienter Plaintiff must point to specific facts to show that the Company did not *intend to migrate to blockchain*.  Relying only on the allegation that the Company did not migrate to blockchain, Plaintiff has not even attempted to allege it did not *intend* to do so.

Similarly, the SEC's inquiries are inapposite because Plaintiff claims that the inquiry "put Tovar on notice that the system had not yet been integrated."  Again, Mr. Tovar never claimed blockchain had *already* been integrated.  And Plaintiff's assertion that the Company was required to "retract its statement that blockchain had been integrated" is demonstrably wrong.  The Third 2017 10-K at page 3 expressly states that the Company began testing the TPaaS system in the fourth quarter of 2017, and further discusses TPaaS at page 62.  Thus, there was no "retraction" to put Mr. Tovar on notice of the Company's purported "true" business plan.

### B.      The Amended Complaint Lacks Facts to Support that Mr. Tovar Acted with Motive or Opportunity.

Even if opportunity is presumed by virtue of Mr. Tovar's position as CFO, Plaintiff is still required to allege motive.  "Sufficient motive allegations 'entail *concrete benefits* that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'"  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001) (emphasis added) (quoting *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000)).  Plaintiff contends that the Company's executives used misrepresentations to inflate the Company stock price and ensure the survival of the Company and their careers, but allegations that an executive was motivated by a desire to retain his or her position

with a company are insufficient to establish scienter.  *See id.* ("To allege a motive sufficient to support the inference [of fraudulent intent], a plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold.").  Similarly, allegations of motive to ensure the survival of a company are likewise insufficient.  *See In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d at 532 (desire to maintain high credit rating to raise money that was necessary "to protect the very survival" of company was insufficient to allege motive); *Gissin*, 739 F. Supp. 2d at 499, 512–13 (despite company's "crippling liquidity problem," desire to complete an offering did not support inference of scienter).  As such, Plaintiff has failed to allege a specific, concrete benefit that would inure to Mr. Tovar resulting directly from the alleged fraud attributed to him, and thus Plaintiff has failed to allege scienter.[9]  Consequently, dismissal is appropriate.[10]

## IV.      Plaintiff Fails to State a Section 20(a) Claim.

The section 20(a) claim should be dismissed because the Amended Complaint fails to allege a primary violation by Mr. Tovar.  Additionally, Plaintiff cannot contend that Mr. Tovar controlled the other Individual Defendants given that he was subordinate to them in rank, or that he was a "meaningful participant" in the alleged misrepresentations that occurred prior to his joining the Company.  As such, dismissal is warranted.

******

For the reasons set forth above and in the Memorandum in Support of Mr. Tovar's Motion to Dismiss (and the Company's Motion and Reply Brief), the Amended Complaint fails to allege any actionable statement attributed to Mr. Tovar.  The one alleged misstatement is protected by the PSLRA safe harbor, not false, and lacks the requisite scienter to state a claim.  Therefore, Mr. Tovar respectfully requests that the Court dismiss the claims against him with prejudice.

---

[9] Notably, the Amended Complaint does not even allege that Mr. Tovar owned stock in the Company.
[10] Mr. Tovar incorporates by reference the scienter arguments made in the Company's Reply Brief at Section II.B.

10

Respectfully submitted,

Dated:    April 1, 2020                    ARENT FOX LLP
                                           By:  */s/ Hunter T. Carter*
                                           Hunter T. Carter
                                           1301 Avenue of the Americas
                                           Floor 42
                                           New York, NY 10019
                                           Telephone:  (212) 484-3900
                                           Facsimile:  (212) 484-3990
                                           Email: hunter.carter@arentfox.com

                                           *Counsel for Defendant Federico Tovar*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of Reply in Further Support of Defendant Federico Tovar's Motion to Dismiss Amended Complaint was served on this date on counsel of record via the Court's CM/ECF system.


Dated: April 1, 2020                                    */s/ Hunter T. Carter*
                                                        Hunter T. Carter