# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HOU LIU and AMY FU, Individually and on Behalf of All Others Similarly Situated, <br><br> Lead Plaintiffs, <br><br> v. <br><br> INTERCEPT PHARMACEUTICALS INC., MARK PRUZANSKI, SANDIP S. KAPADIA, RICHARD KIM, and RACHEL MCMINN <br><br> Defendants. | No. 1:17-cv-07371-LAK <br><br> CLASS ACTION <br><br> JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE EXTRINSIC EVIDENCE AND RELATED ARGUMENTS SUBMITTED WITH DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

LEGAL STANDARDS ................................................................................................... 3

    A.    Incorporation By Reference ....................................................................... 3

    B.    Judicial Notice Under Federal Rule of Evidence 201 ............................... 5

ARGUMENT ................................................................................................................... 7

I.     DEFENDANTS HAVE NOT PROPERLY REQUESTED THE COURT'S
CONSIDERATION OF THEIR EXTRINSIC EVIDENCE AND RELATED
ARGUMENTS .......................................................................................................... 7

II.    THERE IS NO BASIS TO CONSIDER DEFENDANTS' EXTRINSIC EVIDENCE
UNDER EITHER EXCEPTION ............................................................................... 9

    A.    The Enrollment Form And The Brochure ................................................. 9

    B.    The Morgan Stanley Healthcare Conference Transcript ........................ 10

    C.    The Forms 4 ............................................................................................. 11

        1.    The Forms 4 Cannot Be Considered For Their Truth ............................. 12

        2.    Trading Plans Are a Prematurely Asserted Affirmative Defense to a
Claim Not Asserted in the AC ................................................................. 13

    D.    The Quarterly And Annual SEC Filings ................................................. 14

    E.    The Settlement Agreement ...................................................................... 15

    F.    The FDA Webpages ................................................................................. 16

        1.    The FDA Webpages Are Not Incorporated By Reference ...................... 16

        2.    The FDA Webpages Are Not Properly Subject to Judicial Notice........... 16

    G.    The Enhanced Interconnect Form ........................................................... 17

        1.    The Enhanced Form Is Not Incorporated By Reference.......................... 18

        2.    The Enhanced Form Is Not Properly Subject To Judicial Notice............. 18

    H.    The FDA Guidance, The FDA Ocaliva Documents, And The Journal
Excerpts .................................................................................................. 19

        1.    The FDA Ocaliva Documents and the Journal Excerpts Are Not
Incorporated By Reference ...................................................................... 19

        2.    The FDA's Ocaliva Documents and the Journal Excerpts Are Not
Properly Subject to Judicial Notice......................................................... 20

I.      Inadmissible Attorney Testimony.................................................................................. 21

CONCLUSION.................................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Able Labs. Sec. Litig.*,
   2008 WL 1967509 (D.N.J. Mar. 24, 2008) ................................................................. 13

*Alvarez v. County of Orange N.Y.*,
   95 F. Supp. 3d 385 (S.D.N.Y. 2015) ..................................................................... 5, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................. 12

*Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*,
   448 F.3d 138 (2d Cir. 2006) .................................................................................. 21

*Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*,
   2013 WL 822173 (S.D.N.Y. Mar. 6, 2013) ........................................................... 6, 18

*Cabrera v. Dream Team Tavern Corp.*,
   2016 WL 1627621 (E.D.N.Y. Apr. 22, 2016) .......................................................... 10

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................................. 3, 16

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   957 F. Supp. 2d 277 (S.D.N.Y. 2013) ................................................................. 17, 21

*Curry v. Hansen Medical, Inc.*,
   2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) .......................................................... 11

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010) .................................................................................. 3, 4

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   637 F.3d 435 (4th Cir. 2011) ................................................................................. 21

*In re ECOtality, Inc. Sec. Litig.*,
   2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) .................................................. 4, 10, 20

*Elec. Workers Pension Trust Fund of IBEW Local Union No. 58 v. CommScope,
   Inc.*,
   2013 WL 4014978 (W.D.N.C. Aug. 6, 2013) .......................................................... 14

*Finn v. Barney*,
   471 F. App'x 30 (2d Cir. 2012) ............................................................................... 6

*Ganino v. Citizens Utilities Co.*,
   228 F.3d 154 (2d Cir. 2000) ........................................................................... 1, 16, 21

*Gladu v. Correct Care Solutions*,
2018 WL 3122219 (D. Me. June 26, 2018) ..................................................................17

*Global Network Commc'ns., Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2006).................................................................................3, 6, 7, 15

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)......................................................................................4, 19

*Guzman-Ruiz v. Hernandez-Colon*,
406 F.3d 31 (1st Cir. 2005)............................................................................................7

*Joffee v. Lehman Bros., Inc.*,
2005 WL 1492101 (S.D.N.Y. June 23, 2005) ..............................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .........................................................................1, 4, 8, 14

*Kramer v. Timer Warner Inc.*,
937 F.2d 767 (2d Cir. 1991).............................................................................................3

*In re Lehman Bros. Sec. and ERISA Litig.*,
799 F. Supp. 2d 258 (S.D.N.Y. 2011) (Kaplan, J.)........................................... *passim*

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
2008 WL 346421 (S.D. Cal. Feb. 6, 2008)....................................................................5

*Mor v. Collins*,
2017 WL 6626307 (D. Del. Dec. 28, 2017)..................................................................15

*Natural Resources Defense Council, Inc. v. U.S. Food and Drug Admin.*,
884 F. Supp. 2d 108 (S.D.N.Y. 2012)............................................................................9

*NDX Advisors, Inc. v. Advisory Financial Consultants, Inc.*,
2012 WL 174942 (N.D. Cal. Jan. 20, 2012)................................................................20

*In re Network Equip. Techs., Inc., Litig.*,
762 F. Supp. 1359 (N.D. Cal. 1991) ..............................................................................6

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)..........................................................................................18

*In re OSI Pharms., Inc. Sec. Litig.*,
2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007)........................................................11, 16

*Owens Corning v. National Union Fire Ins. Co. of Pittsburgh, PA*,
257 F.3d 484 (6th Cir. 2001) ........................................................................................15

*Pabon v. Barclays Bank PLC*,
    2015 WL 5834796 (S.D.N.Y. Sept. 30, 2015) (Kaplan, J.) ..............................................6, 9, 12

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) .................................................................................3, 14, 18, 19

*Sicav v. Wang*,
    989 F. Supp. 2d 264 (S.D.N.Y. 2013) .........................................................................................7

*Sviridyuk v. BAC Home Loan Servicing, LP*,
    2012 WL 174791 (D. Or. Jan. 20, 2012) ................................................................................20

*In re Teligent Inc.*,
    380 B.R. 324 (Bankr. S.D.N.Y. 2008) ........................................................................................6

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    2009 WL 5851089 (D.N.M. Dec. 21, 2009) ............................................................................13

*In re Tyrone F. Conner Corp., Inc.*,
    140 B.R. 771 (Bankr. E.D. Cal. 1992) ........................................................................................7

*United States v. Bryant*,
    402 F. App'x 543 (2d Cir. 2010) .................................................................................................5

*Wagner v. Royal Bank of Scotland Group PLC*,
    2013 WL 4779039 (S.D.N.Y. Sept. 5, 2013) .....................................................................13, 14

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
    780 F.3d 597 (4th Cir. 2015) .......................................................................................................7

**Statutes**

15 U.S.C. §78u-4(b)(3)(B) ................................................................................................................19

**Other Authorities**

17 C.F.R. § 240.10b5-1 (Preliminary Note) ....................................................................................13

17 C.F.R. § 240.10b5-1(c) ...............................................................................................................13

21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice &*
    *Procedure: Evidence* §5106.4 (2d ed. Supp. 2018) ........................................................7, 15, 19

Fed. R. Civ. P. 12(d) ....................................................................................................................1, 22

Fed. R. Civ. P. 56(d) ....................................................................................................................1, 22

Fed. R. Evid. 201(a), advisory committee's note ......................................................1, 5, 11, 18

Fed. R. Evid. 201(b)................................................................................................5, 8, 22

Fed. R. Evid. 801-02 .......................................................................................................6

2-12, James Wm. Moore, et al., *Moore's Federal Practice*, §12.34[2] (2015) .........................4, 5

Local Civ. R. 7.1(a)(1)......................................................................................................8

Lead Plaintiffs Hou Liu and Amy Fu ("Plaintiffs") respectfully submit this memorandum of law in support of their motion to strike the extrinsic evidence and related arguments that Defendants submitted with their Motion to Dismiss the Amended Class Action Complaint (ECF Nos. 61-63).[1]

## INTRODUCTION

By moving to dismiss Plaintiffs' complaint, Defendants availed themselves of the benefits of the automatic discovery stay created by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(b)(3)(B). Despite invoking the stay's protections, Defendants nonetheless seek to introduce certain documents and purported facts into the record untested by discovery as well as the applicable evidentiary and procedural rules. *See* Fed. R. Civ. P. 12(d), 56(d).

On a Rule 12(b)(6) motion, however, all well pleaded facts must be deemed true, and all reasonable inferences must be drawn in favor of the nonmoving party. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000). Furthermore, under Fed. R. Civ. P. 12(d), the Court is precluded from considering evidence outside the pleading unless at least one of two narrow exceptions applies: (1) the ***document*** is incorporated by reference into Plaintiffs' complaint; or (2) the adjudicative ***fact***[2] is properly the subject of judicial notice pursuant to Fed. R. Evid. 201 ("Rule 201"). In any event, the proffered evidence must be admissible for the purpose it is being offered as it would be inherently unreasonable for the Court to draw any

---

[1] Unless defined herein, all capitalized terms are defined in the Amended Class Action Complaint ("AC"). ECF No. 52. All references to "¶" are to the AC. All internal citations and quotations are omitted and all emphases are added unless otherwise noted. All references to "Motion To Dismiss" or "MTD" are to Defendants' Memorandum of Law in Support of Their Motion To Dismiss the AC. ECF No. 62.

[2] "Adjudicative facts" are "the facts of the particular case." Fed. R. Evid. 201(a), advisory committee's note. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000 n.5 (9th Cir. 2018) ("An irrelevant fact could hardly be an adjudicative fact . . . ") (citing 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5104, at 156 (2d ed. 2005)).

inferences, much less those against the nonmoving party, based on evidence inadmissible under the Federal Rules.

Tellingly, Defendants did not file a motion specifying which adjudicative facts the Court is being requested to decide under Fed. R. Evid. 201; nor did Defendants make any meaningful arguments explaining how each and every item of extrinsic evidence is subject to either the incorporation by reference exception or the judicial notice exception. On this basis alone, the Court should strike all the extrinsic evidence Defendants seek to introduce, and all arguments in the Motion to Dismiss that rely on them. Alternatively, the Court should strike Defendants' extrinsic evidence because the evidence is not properly considered under either exception.

In particular, Plaintiffs object to the Court's consideration of the following extrinsic evidence for the purposes that Defendants appear to have offered them: (1) Ex. 8 (an Interconnect enrollment form) and Ex. 15 (an Ocaliva Specialty Pharmacy Brochure)[3]; (2) Ex. 17 (a conference call transcript); (3) Exs. 20-21 (SEC Forms 4); (4) Exs. 13-14, 16, 18 (quarterly and annual SEC filing excerpts); (5) Ex. 10 (settlement agreement excerpts); (6) links to FDA webpages; (7) Ex. 9 (an "enhanced" Interconnect enrollment form); (8) Ex. 2 (FDA guidance), Exs. 5-7, 11-12, 19 (FDA documents concerning Ocaliva) and Exs. 3-4 (journal excerpts); and (9) inadmissible attorney testimony further specified below.

That said, if the Court considers this extrinsic evidence notwithstanding Plaintiffs' objections, the Court *must* convert the 12(b)(6) motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d), and give Plaintiffs an opportunity to respond by conducting full discovery under Fed. R. Civ. P. 56(d).

---

[3]    All references to "Ex." are to exhibits filed with the Declaration of Scott D. Musoff in Support of Defendants' Motion To Dismiss the AC. ECF Nos. 63-1-21.

2

**LEGAL STANDARDS**

A.      **Incorporation By Reference**

It is well established that when deciding a Rule 12(b)(6) motion, the court must only

consider the complaint, documents incorporated into the complaint, and documents attached to

the motion to dismiss so long as "the complaint relies heavily upon" those documents' "terms

and effect" and "no dispute exists regarding the authenticity or accuracy of the document[s]."

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  "It must also be clear that

there exist no material disputed issues of fact regarding the relevance of the document[s]."  *See*

*id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).  Should the court consider

documents beyond these limitations, it must "treat the motion as one for summary judgment

under Rule 56, giving the party opposing the motion notice and an opportunity to conduct

necessary discovery and to submit pertinent material."  *Kramer v. Timer Warner Inc.*, 937 F.2d

767, 773 (2d Cir. 1991); *Global Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150,

155 (2d Cir. 2006) ("[T]he conversion of a Rule 12(b)(6) motion into one for summary judgment

under Rule 56 when the court considers matters outside the pleadings is strictly enforced and

***mandatory***.").

The Second Circuit has explained that the incorporation by reference doctrine does not

apply to any and all documents that might be referenced or relied upon in a complaint, or even

those quoted in a complaint.  Rather, this principle requires that "the complaint rel[y] heavily

upon [the documents'] terms and effect," rendering "the document 'integral' to the complaint."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Roth v. Jennings*, 489

F.3d 499, 509 (2d Cir. 2007) ("Even if not attached or incorporated by reference, a document

upon which the complaint ***solely*** relies and which is ***integral to the complaint*** may be considered

3

Case 1:17-cv-07731-PLAK Document 72 Filed 10/25/18 Page 11 of 29

by the court in ruling on such a motion.") (original emphasis). "Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Furthermore, even if a document is "integral" to the plaintiff's complaint, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco*, 622 F.3d at 111.

Thus, the incorporation by reference doctrine is not a license for defendants to poison the well with self-serving hearsay on a Rule 12(b)(6) motion to dismiss. Even if a document is incorporated by reference into a complaint, the doctrine does not permit the court to assume "the truth of the matters asserted" in the document. *See In re Lehman Bros. Sec. and ERISA Litig.*, 799 F. Supp. 2d 258, 273 (S.D.N.Y. 2011) (Kaplan, J.) (stating that a document integral to the complaint can be "properly considered, albeit not for the truth of the matters asserted[]"); *see also Khoja*, 899 F.3d at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."). Indeed, "were the Court to assume the truth of all documents incorporated by reference [], that would mean assuming the truth of all of Defendants' allegedly false or misleading statements. That cannot be the intended result of the cases Defendants cite, or it would be impossible ever to successfully plead a fraud claim." *In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *3 n.2 (N.D. Cal. Sept. 16, 2014).

Finally, a court considering a document incorporated by reference must still do so pursuant to Rule 12(b)(6). That is, "even when the court is allowed to consider these extrinsic materials, it must do so under the appropriate standard of Rule 12(b)(6), so that materials must be viewed in the light most favorable to the plaintiffs, and all reasonable inferences from them must

4

be drawn in plaintiff's favor." 2-12, James Wm. Moore, et al., *Moore's Federal Practice*, §12.34[2] (2015).

### B.  Judicial Notice Under Federal Rule of Evidence 201

Pursuant to Fed. R. Evid. 201, a court is permitted to consider matters extraneous to the complaint by taking judicial notice of adjudicative ***facts*** that are not subject to reasonable dispute because they are (1) generally known within the trial court's territorial jurisdiction ("Generally Known"); or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned ("Readily Ascertainable").  Fed. R. Evid. 201(b); *see also United States v. Bryant*, 402 F. App'x 543, 545 (2d Cir. 2010).

Thus, to properly be subject to judicial notice, the proposed fact must meet either of Rule 201's tests for indisputability: "they should be common knowledge or derived from an unimpeachable source." *Alvarez v. County of Orange N.Y.*, 95 F. Supp. 3d 385, 398 (S.D.N.Y. 2015) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).  "A high degree of indisputability is the essential prerequisite." Fed. R. Evid. 201(a) advisory committee's note (stating that "adjudicative facts" are usually established "through the introduction of evidence, ordinarily consisting of the testimony of witnesses[,]" and that "[i]f particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary[]").

As a result, courts often only take judicial notice of readily verifiable matters such as "(1) scientific facts: for instance, when does the sun rise or set; (2) matters of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was president in 1958." *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, 2008 WL 346421, at *8 (S.D. Cal. Feb. 6, 2008).

"Because judicial notice forecloses the parties' opportunity to use rebuttal evidence, cross-examination, and argument to attack such evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.*, 2013 WL 822173, at *9 (S.D.N.Y. Mar. 6, 2013). Consequently, it is inappropriate to take judicial notice not only of facts that are directly in dispute, but also of facts that are ***disputable***. Indeed, a court "should not use judicial notice to generate an evidentiary record and then weigh evidence—which plaintiffs have not had the opportunity to challenge—to dismiss plaintiffs['] complaint." *In re Network Equip. Techs., Inc., Litig.*, 762 F. Supp. 1359, 1363 (N.D. Cal. 1991) ("While defendants['] arguments on the facts may ultimately prevail upon a motion for summary judgment or at trial, they do not create a basis for dismissing plaintiffs' complaint.").

Accordingly, when taking judicial notice of public documents on a motion to dismiss, a court may not assume the truth of the factual matters asserted therein. *See Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (finding that the district court did not abuse its discretion when it took judicial notice of public documents "for the purpose of establishing that the information was publicly available" but "did not consider the documents for their truth"); *Pabon v. Barclays Bank PLC*, 2015 WL 5834796, at *1 (S.D.N.Y. Sept. 30, 2015) (Kaplan, J.) ("[T]o the extent this Court takes judicial notice of certain other documents outside the complaint, it does so only as evidence of what those documents say, not the truth of the matters asserted.").

In other words, courts may not take judicial notice of facts in violation of the hearsay restrictions in the Federal Rules of Evidence. *See* Fed. R. Evid. 801-02; *see also In re Teligent Inc.*, 380 B.R. 324, 329 n.2 (Bankr. S.D.N.Y. 2008) ("The taking of judicial notice simplifies the process of authenticating a document, but does not automatically render the document admissible in the face of a hearsay objection."); *Global Network Commc'ns*, 458 F.3d at 157 ("A court may

6

take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* §5106.4 (2d ed. Supp. 2018) ("[A] court cannot take judicial notice of a fact that would be inadmissible if it were offered as evidence.").

Even if judicial notice of a fact is appropriate under Fed. R. Evid. 201, the Court's consideration of the fact must comport with the standards of Rule 12(b)(6). *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) ("[W]hen a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs."). Significantly, on a Rule 12(b)(6) motion to dismiss, all facts alleged in a complaint must be deemed true and all reasonable inferences must be drawn in favor of the plaintiff. *See Sicav v. Wang*, 989 F. Supp. 2d 264, 268 n.2 (S.D.N.Y. 2013) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

## ARGUMENT

I.     **DEFENDANTS HAVE NOT PROPERLY REQUESTED THE COURT'S CONSIDERATION OF THEIR EXTRINSIC EVIDENCE AND RELATED ARGUMENTS**

As an initial matter, Defendants' requests for consideration of their extrinsic evidence and related arguments are insufficient. As the proponents of this evidence, Defendants bear the burden of persuading the Court that it may properly be considered. *See In re Tyrone F. Conner Corp., Inc.,* 140 B.R. 771, 781 (Bankr. E.D. Cal. 1992)) ("[A] party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice."); *cf. Guzman-Ruiz v. Hernandez-Colon*, 406 F.3d 31, 36 (1st Cir. 2005) (stating that the district court was "amply justified" in refusing to take judicial notice where, *inter alia*, the party "made no attempt to specify what 'adjudicable facts' met the requirements of [Rule] 201").

The closest Defendants come to explaining why the Court is permitted to consider any of the extrinsic evidence they submit with their Motion To Dismiss is the following cursory reference in a footnote: the Court may consider "documents referenced in a complaint, matters of which the Court may take judicial notice, including public records such as filings made with the Securities and Exchange Commission, and documents incorporated by reference into a complaint." MTD at 6 n.2. ***Defendants, however, never explain what adjudicative facts they seek judicial notice of.*** Thus, the supposed facts—whatever they may be—are not Readily Ascertainable or Generally Known and therefore cannot be judicially noticed. *See* Fed. R. Evid. 201(b). Defendants also fail to explain whether the documents they submit are cited in the AC and how they are integral to Plaintiff's claims.[4] Undoubtedly, Defendants omit this information to avoid drawing attention to the fact that, at least in some instances, this evidence is being offered for inadmissible hearsay purposes.

Plaintiffs are thus left to sort through hundreds of pages of exhibits and the Motion To Dismiss and attempt to guess which, if any documents might be incorporated into the AC and of which adjudicative facts Defendants' might be seeking judicial notice. This endeavor is further complicated by the fact that the extrinsic evidence does not always support the propositions for which they appear to be cited.[5]

As Defendant have failed to carry their burden as the proponents of this evidence, their

---

[4]     Furthermore, the notice of motion accompanying the Motion To Dismiss makes no mention of the relief sought with respect to judicial notice or the legal basis for the requested relief, in violation of Local Civ. R. 7.1(a). *See* Local Civ. R. 7.1(a)(1) (requiring that the "notice of motion" accompanying a motion "specify the applicable rules or statutes pursuant to which the motion is brought," and the "relief sought by the motion").

[5]     For example, Defendants mistakenly cite Exhibit 17, which they describe as the "Nov. 6, 2017 10-Q", for the irrelevant proposition that Ocaliva "remains on the market in every other jurisdiction outside of the United States in which it has been approved." *See* MTD at 25 n.15. Exhibit 17, however, is actually a transcript; the Nov. 6, 2017 10-Q is located at Exhibit 18, and neither exhibit appears to contain this information. *Cf. Khoja*, 899 F.3d at 1005 (cautioning that mistakenly cited documents happen when "parties pile on volumes of exhibits to their motion to dismiss," and can result in materials being "inserted into pleadings when they should not be there").

extrinsic evidence and all arguments based thereon should be stricken from the record.  *See*

*Natural Resources Defense Council, Inc. v. U.S. Food and Drug Admin.*, 884 F. Supp. 2d 108,

115 n.5 (S.D.N.Y. 2012) (stating "[a] court has inherent authority to strike any filed paper which

it determines to be abusive or otherwise improper under the circumstances" and collecting

cases).

## II.     THERE IS NO BASIS TO CONSIDER DEFENDANTS' EXTRINSIC EVIDENCE UNDER EITHER EXCEPTION

### A.      The Enrollment Form And The Brochure

Defendants appear to submit the Interconnect enrollment form ("Enrollment Form") (Ex.

8)[6] and the Ocaliva Specialty Pharmacy Brochure ("Brochure") (Ex. 15) to establish supposed

facts that neither document supports: namely, that "treating physicians" could "directly submit[]

prescriptions to the three specialty pharmacies that dispense Ocaliva" without going through

Interconnect or Intercept, and that "many" did so.  MTD at 9; *see also* MTD at 18.

Neither the incorporation by reference exception nor the judicial notice exception provide

a basis for the Court to consider the truth of the matters asserted in these documents, *see In re*

*Lehman Bros.*, 799 F. Supp. 2d at 273, *Pabon*, 2015 WL 5834796, at *1, let alone the truth of

matters ***not found anywhere in the documents***.  Indeed, the supposed facts that doctors could

bypass Intercept and its Interconnect system when prescribing Ocaliva, and that many doctors

did, is based entirely on attorney testimony in the Motion To Dismiss, as neither the Enrollment

Form nor the Brochure establish this.  In fact, the Enrollment Form actually suggests that all

prescriptions had to go through Intercept and/or Interconnect.  For example, it directs doctors to

send the form ***"to Interconnect"***—not specialty pharmacies—by mail, email, or fax.  *See* Ex. 8

---

[6]      To be clear, Plaintiffs are only arguing that the Enrollment Form be stricken for the purposes it appears to be offered.

9

at 1.  Similarly, the Brochure page Defendants cite merely describes what a specialty pharmacy

is and "how it *may* work."  *See* Ex. 15 at 3.  Nowhere does the Brochure inform readers which

specialty pharmacies prescribe Ocaliva or how to contact them, let alone show that these

pharmacies directly receive Ocaliva prescriptions from doctors.

As a result, these documents and the attorney testimony based upon them should be

stricken.

### B.  The Morgan Stanley Healthcare Conference Transcript

Defendants appear to cite a Fair Disclosure ("FD") Wire transcript from the September

12, 2017 Morgan Stanley Healthcare Conference (Ex. 17) (the "Transcript") for the self-serving

and irrelevant statement that Intercept "had not been able to establish any kind of causality"

between Ocaliva and the deaths in the post-marketing setting of late-stage PBC patients.  *See*

MTD at 23.

Neither exception permits the Court to consider this inadmissible hearsay.  Indeed,

consideration of the Transcript for the truth of any of the matters asserted therein would be

especially improper where, as here, Plaintiffs claim that the Transcript contains false and/or

misleading statements.  *See* ¶¶144-45; *ECOtality*, 2014 WL 4634280, at *3 n.2 (explaining that

the Court is not "to assume the truth of all documents incorporated by reference into the []AC[,]"

otherwise "it would be impossible ever to successfully plead a fraud claim[]").

Judicial notice is also unavailable for the Transcript for at least two additional reasons.

First, the alleged fact Defendants appear to cite the Transcript for is irrelevant, as Plaintiffs'

argument is that Ocaliva was "*associated* with an increased risk of serious liver injury and

death," not their definitive cause.  *See, e.g.*, ¶¶11, 84; *Cabrera v. Dream Team Tavern Corp.*,

2016 WL 1627621, at *3 (E.D.N.Y. Apr. 22, 2016) ("[C]ourts and commentators have required

that noticed facts be relevant.").

Second, the Transcript's contents do not meet the "high degree of indisputability"
required under Rule 201. *See* Fed. R. Evid. 201(a), advisory committee's note. Its contents are
not Generally Known, as they are only accessible by paying Fair Disclosure wire a fee, and the
only Readily Ascertainable fact from the transcript is what FD Wire transcribed as being stated
during the conference call—not the **truth** of the words transcribed. *See In re OSI Pharms., Inc.
Sec. Litig.*, 2007 WL 9672541, at *5 (E.D.N.Y. Mar. 31, 2007) (declining to take judicial notice
of a conference call transcript, as it is "not a matter of public record like an SEC filing[,] [n]or is
it otherwise capable of accurate and ready determination from sources whose accuracy cannot
reasonably by questioned[]"); *Curry v. Hansen Medical, Inc.*, 2012 WL 3242447, at *3 (N.D.
Cal. Aug. 10, 2012) (taking judicial notice of "the conference calls for the fact that they were
made on the dates specified, but not for the truth of the matters asserted therein").

### C.     The Forms 4

Defendants cite to Exhibits 20 & 21, Statements of Changes in Beneficial Ownership
("Forms 4") purportedly filed with the SEC by defendants McMinn and Pruzanski, in an
apparent attempt to evidence that "all" of their stock sales were made "pursuant to []
agreement[s] to cover withholding tax obligations"[7] ("Tax Agreements"), or pursuant to Rule
10b5-1 trading plans ("Trading Plans"). *See* MTD at 13.

Even assuming, *arguendo*, that the Forms 4 are incorporated by reference into the AC,
neither this exception nor the judicial notice exception permits the Court to consider the truth of
the inadmissible hearsay for which Defendants appear to cite it—namely: (1) that McMinn and
Pruzanski made no other sales than those reflected in the Forms 4; and (2) that all of their Class
Period sales were made pursuant to Tax Agreements or Trading Plans. *See In re Lehman Bros.*,

---

[7]      *See, e.g.*, Ex. 20 at 1.

799 F. Supp. 2d at 273; *Pabon*, 2015 WL 5834796, at *1.

### 1.    The Forms 4 Cannot Be Considered For Their Truth

A Form 4 only conveys information about insider sales for the dates on which insiders

choose to report them, not sales made on other days.  Even if the forms' contents were

considered true, they could only be true for the dates and transactions listed in those Forms 4, not

for any other date and transaction outside of those Forms 4.  Stated differently, the absence of a

Form 4 for the remaining dates during the Class Period is not evidence of the absence of sales in

that unreported period.  For example, certain Intercept insiders recently filed Forms 4 that

contained stock transactions made several months ago.  *See, e.g.*, Pruzanski (Form 4) (Oct. 3,

2018) (reporting transactions from as late as January 1, 2018); David Shapiro (Form 4) (Oct. 3,

2018) (same); Richard Kim (Form 4) (Oct. 3, 2018) (reporting transactions from as late as

October 13, 2017).[8]  Indeed, even the SEC declines to take Forms 4 at their face value.  *See, e.g.*,

Press Release, SEC, *Corporate Insiders Charged for Failing to Update Disclosures Involving*

*"Going Private" Transactions*, https://www.sec.gov/news/pressrelease/2015–47.html (Several

respondents "only disclosed their transactions in company securities months or years after the

fact, not within two business days, as required for these disclosures by insiders.").

Additionally, the Tax Agreements and Trading Plans referenced in the Forms 4 are

nothing more than mere legal conclusions couched as facts which should not be considered under

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs have no access to the Tax

Agreements and Trading Plans and therefore have no way to determine whether any of the trades

were properly made pursuant to them.  For example, to invoke a Trading Plan as a defense to

insider trading under 17 C.F.R. § 240.10b5-1(c), a defendant must prove, *inter alia*, that the plan

---

[8]      These Forms 4 can be found at the following link: https://www.sec.gov/cgi-bin/own
disp?action=getissuer&CIK=0001270073&type=&dateb=&owner=include&start=160.

12

was entered into before the defendant possessed material nonpublic information, and that the plan was "entered into in good faith." *See* 17 C.F.R. § 240.10b5-1(c).

The conclusory assertions in the Forms 4 do not establish any of these facts. It would therefore be inherently unreasonable on a motion to dismiss for the Court to draw any inferences—much less those against Plaintiffs—based on inadmissible hearsay that contains bare legal conclusions. *See Wagner v. Royal Bank of Scotland Group PLC*, 2013 WL 4779039, at \*4 (S.D.N.Y. Sept. 5, 2013) (noting that "[s]ince all reasonable inferences must be drawn in favor of the plaintiff . . . Form 4 does not establish that the transactions fall within" a particular SEC trading exemption); *In re Able Labs. Sec. Litig.*, 2008 WL 1967509, at \*27 n.40 (D.N.J. Mar. 24, 2008) ("Not only can this Court not make such factual findings when considering a motion to dismiss, [it] must also draw all inferences in favor of the non-moving party. Therefore, this Court cannot infer that Wadekar acted in good faith in adopting his 10b5-1 plan."); *cf. In re Thornburg Mortg., Inc. Sec. Litig.*, 2009 WL 5851089, at \*3 (D.N.M. Dec. 21, 2009) (declining to notice the truth of the Forms 4 and noting that "the contents of the SEC filings is potentially false, as the documents were created by individuals, fallible and potentially prone to untruth as humans sometimes tend to be[]").

> **2.      Trading Plans Are a Prematurely Asserted Affirmative Defense to a Claim Not Asserted in the AC**

Trading Plans only provide an affirmative defense to ***insider trading claims*** asserted under Rule 10b-5. *See* 17 C.F.R. § 240.10b5-1 (Preliminary Note) (Rule 10b5-1 pertains only to "***insider trading cases*** brought under Section 10(b) of the Act and Rule 10b-5 thereunder."). As Plaintiffs do not assert any insider trading claims against McMinn or Pruzanzki, this defense is irrelevant.

Even assuming, *arguendo*, that the Trading Plans were a defense to any of the

misrepresentation claims in the AC, the purported fact that trades were made pursuant to Trading Plans is at best an affirmative defense, the consideration of which is improper and irrelevant at this stage of the proceedings. *See, e.g.*, *Wagner*, 2013 WL 4779039, at *3-4 (declining to consider Form 4s where they were offered to establish an affirmative defense at the motion to dismiss stage); *Elec. Workers Pension Trust Fund of IBEW Local Union No. 58 v. CommScope, Inc.*, 2013 WL 4014978, at *7 (W.D.N.C. Aug. 6, 2013) (refusing to take judicial notice or consider 10b5-1 plan as doing so would be "premature in a motion to dismiss").[9]

### D.     The Quarterly And Annual SEC Filings

Defendants also cite to certain risk factors in selected quarterly and annual SEC filings. *See* MTD at 24 n.12 (citing Ex. 13 (Nov. 9, 2016 10-Q at 37); Ex. 14 (Mar. 1, 2017 10-K at 45); Ex. 16 (Aug. 3, 2017 10-Q at 37); and Ex. 18 (Nov. 6, 2017 10-Q at 37). Although Defendants have again failed to justify their consideration under either exception, Plaintiffs do not object to notice of these warnings to the extent they are offered to "determine **what** the documents stated, and **not to prove the truth of their contents**." *Roth*, 489 F.3d at 509 (original emphasis). Plaintiffs do, however, object to notice of these warnings to the extent they are offered in support of the proposition that the warnings were consistent with Intercept's disclosure on the September 21, 2017 conference call. *See* MTD at 23-24 & 24 n.12. The risk factors are alleged to be misleading in this case and therefore their consistency with what was ultimately disclosed is directly disputed in the AC and not properly considered for the truth of that proposition. *See, e.g.*, ¶¶108-114.

---

[9]     *Cf. Khoja*, 899 F.3d at 1003 ("Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint, but with a perverse added benefit: unless the district court converts the defendant's motion to dismiss into a motion for summary judgment, the plaintiff receives no opportunity to respond to the defendant's new version of the facts.").

14

### E.   The Settlement Agreement

The AC states that Intercept paid $45 million out of pocket to settle a prior securities fraud case in support of the proposition that Defendants were aware of their disclosure obligations to investors and that "[c]oncealing important safety information is Intercept's *modus operandi.*" ¶175; *cf. Joffee v. Lehman Bros., Inc.*, 2005 WL 1492101, at *11 (S.D.N.Y. June 23, 2005) (noting that *modus operandi* allegations can support scienter).  Defendants appear to submit excerpts from that prior case's settlement agreement (Ex. 10) (the "Settlement Agreement") to establish (1) that there were no findings of fact in that action; and (2) that Intercept denied the case's allegations.  MTD at 29.  Even assuming, *arguendo*, that the Settlement Agreement is incorporated by reference into the AC, neither this exception nor the judicial notice exception permits the Court to consider it for the hearsay purposes it is being offered.  *See* 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* §5106.4 (2d ed. Supp. 2018) ("When offered to prove the facts stated, court records are hearsay" and therefore inadmissible and not the proper subject of judicial notice unless they "satisf[y] some hearsay exception"); *cf. Global Network Commc'ns.*, 458 F.3d at 157 ("[A] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Furthermore, as there is usually no "adverse judgment or finding of wrongdoing" before a pre-trial settlement, *Owens Corning v. National Union Fire Ins. Co. of Pittsburgh, PA*, 257 F.3d 484, 495 n.6 (6th Cir. 2001), and settlement stipulations usually deny liability, *see Mor v. Collins*, 2017 WL 6626307, at *2 n.3 (D. Del. Dec. 28, 2017), the purported facts Defendants attempt to establish are only relevant if used to draw the unfounded inference that the settled case had no merit.  This is an improper inference to draw at this stage of the litigation, and an

15

unreasonable one at that: the fact that Intercept paid *$45 million* towards a $55 million settlement for a securities fraud case is highly suggestive of a meritorious claim. *See Ganino*, 228 F.3d at 161 (stating that all reasonable inference are to be drawn in the plaintiffs' favor on a motion to dismiss). More pointedly, the reasonable inference on a motion to dismiss is that the claims had merit.

F.     The FDA Webpages

Defendants also cite to Internet sources that link to the following three webpages related to the FDA's Adverse Event Reporting System ("FAERS"): (1) *Questions and Answers on [FAERS]* ("FAERS Q&A"), *see* MTD at 10 nn.5-6, 32 n.20; (2) *FDA [FAERS] Public Dashboard* ("FAERS Dashboard"), *see* MTD at 10 n.6; and (3) a case on the FAERS database ("FAERS Case Report"), *see* MTD at 25 n.14 (collectively, "FDA Webpages"). Neither exception provides a basis for the Court's consideration of these webpages for the purposes Defendant appear to have offered them.

1.     The FDA Webpages Are Not Incorporated By Reference

As an initial matter, the specific FDA Webpages were not "relied upon in, or integral to, the [AC], nor [were they] incorporated by reference." *OSI*, 2007 WL 9672541, at *5. Although the FAERS database is referenced in the AC (*see* ¶91), Plaintiffs' *claims* in the AC in no way *rely* on the specific FDA Webpages cited by Defendants. *See Chambers*, 282 F.3d at 153. In fact, the information about each patient in Plaintiffs' SAE Chart came from information received from a Freedom of Information Act request, not through FAERS. *See* ¶85.

2.     The FDA Webpages Are Not Properly Subject to Judicial Notice

Although it is not clear which, if any, adjudicative facts from the FDA Webpages Defendants would like the Court to consider, they appear to be cited for propositions that are not appropriate subjects for judicial notice because they are irrelevant and/or highly disputable.

For example, Defendants appear to cite the FAERS Q&A webpage and the FAERS Dashboard webpage to establish that SAE reports have certain limitations, including, *inter alia*, that they do not establish that a particular drug caused or contributed to an event. *See* MTD at 10 & n.6. This is irrelevant because Plaintiffs do not claim that Ocaliva definitively caused any of the SAEs, let alone that the SAE reports establish causation. *See supra* § II.B.

Judicial notice is also unavailable for the Case Report webpage for similar reasons. Defendants appear to cite that webpage for the irrelevant proposition that counsel's "review" of the FAERS database shows that "some of the patients died for reasons *wholly unrelated* to the use of Ocaliva," and offer the purported fact that a patient died of a "myocardial infarction" as evidence. *See* MTD at 25 n.14 (original emphasis). Not only is this purported fact irrelevant, but the absence of a causal link between Ocaliva and this patient's death is not Readily Ascertainable from the Case Report. At best, it is counsel's **opinion** of what the FAERS database and Case Report shows about causation, which is not the proper subject of judicial notice. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 288 (S.D.N.Y. 2013) (declining to take judicial notice of a "causal link" that is not Generally Known and "plausibly subject to dispute"); *Gladu v. Correct Care Solutions*, 2018 WL 3122219, at *3 n.3 (D. Me. June 26, 2018) (noting that medical opinions "do not constitute facts that are not subject to reasonable dispute as contemplated by [Rule] 201").[10]

### G. The Enhanced Interconnect Form

Defendants also cite to an Interconnect enrollment form they claim was "enhanced" in

---

[10] Notably, Defendants' own Exhibit 7 does not rule out the possibility of Ocaliva-related myocardial infarctions, as it suggests that Ocaliva may "increase the risk for cardiovascular events." *See* Ex. 7 at 21-22 (noting "[r]eduction in HDLc may occur over time [with Ocaliva] and may increase the risk for cardiovascular events[,]" and that "[d]ata of longer duration of [Ocaliva] use are required to understand the implications of cardiovascular events with HDLc lowering[]").

September 2016 ("Enhanced Form") (Ex. 9).  *See* MTD at 9.  This document and its contents are not appropriately considered under either the incorporation by reference exception or the judicial notice exception for the reasons explained below.

### 1.    The Enhanced Form Is Not Incorporated By Reference

The Enhanced Form is not properly considered under the incorporation by reference exception because it is neither cited in nor referenced in the AC, let alone "***solely*** relie[d]" upon and "***integral to the complaint***."  *Roth*, 489 F.3d at 509 (original emphasis); *see also Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016).

Even assuming, *arguendo*, that the form could somehow be considered incorporated by reference, it cannot be considered for the truth of the inadmissible hearsay for which Defendants appear to cite it—the purported date of its enhancement.  *See In re Lehman Bros.*, 799 F. Supp. 2d at 273.  Defendants attempt to establish by attorney testimony that the form was "enhanced" by September 2016 and that the "version and effective date of the [Enhanced] Form are located on the bottom left-hand corner of the form."  MTD at 9 & n.4.  This date, however, does not appear to be there, and in any event the document does not state that it was available on Interconnect's system at that time.  The Enhanced Form's alleged "version and effective date" is thus not appropriately considered under this exception.

### 2.    The Enhanced Form Is Not Properly Subject To Judicial Notice

The purported date of the form's Enhancement is also not properly subject to judicial notice.  First, it comes nowhere near the "high degree of indisputability" required for this exception because the purported enhancement date does not appear on the document and is therefore not Readily Ascertainable, let alone Generally Known.  Fed. R. Evid. 201(a), advisory committee's note; *see also Bruce Lee Enters.*, 2013 WL 822173, at *9.  Even if the document bore the date Defendants purport it does, nothing in the document establishes that it was

18

*published* on Interconnect's system on that date. Indeed, counsel's say-so is the *only* source of information for this purported fact, as the PSLRA's discovery stay prevents Plaintiffs from determining whether the enrollment form was *actually* "enhanced" by this date and when, if ever, it was available on Interconnect's website. *See* 15 U.S.C. §78u-4(b)(3)(B).

Second, as previously noted, the purported enhancement date is inadmissible hearsay, and is therefore not subject to judicial notice. 21B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* §5106.4 (2d ed. Supp. 2018) ("[A] court cannot take judicial notice of a fact that would be inadmissible if it were offered as evidence.").

> **H.      The FDA Guidance, The FDA Ocaliva Documents, And The Journal Excerpts**

Defendants cite FDA guidance (Ex. 2), excerpts from various FDA documents concerning the agency's review of Ocaliva (Exs. 5-7, 11-12, 19) (collectively, the "FDA Ocaliva Documents") and excerpts from hepatology journals (Exs. 3-4) (collectively, the "Journal Excerpts"). These documents are not properly considered under either exception for the reasons explained below.

> **1.      The FDA Ocaliva Documents and the Journal Excerpts Are Not Incorporated By Reference**

As an initial matter, Exhibits 2 (FDA Guidance), 4 (an abstract from a hepatology journal) and 6 (the FDA's REMS Review) are not cited or referenced in the AC, let alone "integral to the complaint," and therefore cannot be considered under the incorporation by reference doctrine. *Roth*, 489 F.3d at 509. Although the AC cites to the hepatology journal article (Ex. 3) and certain FDA Ocaliva Documents (Exs. 5, 7, 11-12, and 19) for information relevant to Plaintiffs' claims, these documents are not *central* to Plaintiff's claims because there is no allegation that any investor was misled by them. *See Goel*, 820 F.3d at 559 (explaining that "merely mentioning" a document or offering "limited quotation[s]" from it "is not enough[]" for

19

incorporation by reference); *Sviridyuk v. BAC Home Loan Servicing, LP*, 2012 WL 174791, at *2

(D. Or. Jan. 20, 2012) (stating that even a document that "may constitute important evidence

going to the merits of [p]laintiff's claim . . . does not form the basis of [p]laintiff's claim as

alleged[]"). Even assuming, *arguendo*, that any of the FDA Guidance, FDA Ocaliva Documents,

or Journal Excerpts were incorporated by reference, it would be improper to consider them for

the truth of the matters asserted therein at this stage of the litigation. *See In re Lehman Bros.*,

799 F. Supp. 2d at 273; *ECOtality*, 2014 WL 4634280, at *3 n.2.

### 2. The FDA's Ocaliva Documents and the Journal Excerpts Are Not Properly Subject to Judicial Notice

Judicial notice is also inappropriate because it is not clear precisely which adjudicative

facts in the FDA Guidance, FDA's Ocaliva Documents, and the Journal Excerpts that

Defendants seek the Court to decide by judicial notice. For example, Defendants cite to a span

of 18 pages in the FDA Guidance and ask the court to "compare" it with Plaintiffs' SAE chart.

*See* MTD at 32-33. As such, whatever facts they seek notice of in the FDA Guidance are not

Readily Ascertainable and therefore not appropriate for judicial notice. *See Alvarez*, 95 F. Supp.

3d at 398 (declining to take judicial notice of a fact within a document where, *inter alia*,

Defendants offer no argument as to how it is "capable of accurate and ready determination"); *cf.*

*NDX Advisors, Inc. v. Advisory Financial Consultants, Inc.*, 2012 WL 174942, at *3 (N.D. Cal.

Jan. 20, 2012) ("The Court is not obligated to consider matters not specifically brought to its

attention.").

It is similarly unclear which adjudicative facts in the FDA Ocaliva Documents and

Journal Excerpts Defendants would like the Court to decide by judicial notice. As these

documents appear to be of no use to Defendants unless taken for their truth, they are apparently

offered for a hearsay purpose and are therefore not properly considered by the Court on a motion

to dismiss. *See Kinross*, 957 F. Supp. 2d at 289 ("[I]t is unavoidable that Kinross is relying on the [d]isputed [e]xhibits for the truth of the matters asserted in them[] . . . as they are of no assistance to Kinross except if taken for the truth.").

## I.      Inadmissible Attorney Testimony

In addition to the inadmissible attorney testimony associated with the extrinsic evidence discussed above, Defendants' Motion To Dismiss contains additional unsworn attorney arguments woven throughout that are unsupported by the record. *See Bldg. & Constr. Trades Council of Buffalo v. Downtown Dev., Inc.*, 448 F.3d 138, 155 (2d Cir. 2006) ("[A]rguments based on the moving parties' assertions of fact are inapt on a motion to dismiss."); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.")

For example, the Motion To Dismiss states that the Enrollment Form "was submitted for FDA review before its use." MTD at 9; *see also* MTD at 16. This purported fact appears nowhere in the AC, and is not even supported by the FDA regulation it cites to. *See* MTD at 9 (citing an FDA regulation concerning promotional materials, 21 C.F.R. § 314.550, which in no way establishes that the Enrollment Form was ***actually submitted*** to the FDA).

Additionally, the Motion To Dismiss cites ¶54 for the proposition that the Enrollment Form "allowed physicians to use an open field for providing dosing directions specific to each patient." MTD at 9; *see also* MTD at 16. Not so. Presumably, Defendants are referring to the field labeled "[a]dditional directions (allergies, concurrent medication, etc)," ¶54, which cannot be read to support Defendants' assertion that this field is for additional ***dosing*** directions because all inferences must be drawn in Plaintiffs' favor at this stage of the litigation. *See Ganino*, 228 F.3d at 161.

21

Finally, Defendants state that "Intercept contracted with a third party, Conduent Patient Access Solutions, LLC, to implement the Interconnect patient support services program," MTD at 8, and that "Conduent" "processed the [Interconnect Enrollment Form] on behalf of Intercept," MTD at 19. This irrelevant information appears nowhere in the AC, let alone at ¶¶51, 57, or at the Internet link cited in ¶57 (*see* MTD at 8 n.3).

As none of the foregoing extrinsic evidence is properly considered at this stage of the litigation, *see* Fed. R. Evid. 201(b), it must therefore be stricken from the Motion To Dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court strike all matters identified herein. Consideration of these materials and all related references in Defendants' briefing is improper unless the Motion To Dismiss is converted into a motion for summary judgment and Plaintiffs are allowed a reasonable opportunity to conduct the necessary discovery. *See* Fed. R. Civ. P. 12(d), 56(d).

Dated: October 29, 2018                          Respectfully submitted,


                                                 By: */s/ Richard W. Gonnello*
                                                        Richard W. Gonnello

                                                 Richard W. Gonnello
                                                 Katherine M. Lenahan
                                                 Sherief Morsy
                                                 **FARUQI & FARUQI, LLP**
                                                 685 Third Avenue, 26th Floor
                                                 New York, NY 10017
                                                 Telephone: 212-983-9330
                                                 Facsimile: 212-983-9331
                                                 Email: rgonnello@faruqilaw.com
                                                         klenahan@faruqilaw.com
                                                         smorsy@faruqilaw.com

                                                 *Attorneys for Lead Plaintiffs Hou Liu and Amy Fu*

22