**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAYSUKH RUDANI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., *et al.*,<br><br>Defendants. | No. 1:19-cv-06741-GBD<br><br>Oral Argument Requested |

**REPLY MEMORANDUM OF LAW OF DEFENDANTS**
**IDEANOMICS, INC., BRUNO WU, BING YANG, AND**
**ROBERT BENYA IN FURTHER SUPPORT OF**
**THEIR MOTION TO DISMISS THE AMENDED**
**SECURITIES CLASS ACTION COMPLAINT**

VENABLE LLP
1290 Avenue of the Americas,
Twentieth Floor
New York, New York 10104

– and –

VENABLE LLP
600 Massachusetts Avenue NW
Washington DC 20001

*Counsel for Defendants Ideanomics, Inc.,*
*Bruno Wu, Bing Yang, and Robert Benya*

**TABLE OF CONTENTS**

**Page**

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    ARGUMENT.................................................................................................. 1

      A.     The Safe Harbor and Bespeaks Caution Doctrine Apply. ...................................... 1

            1.     The Company's Statements About Revenue Are Forward-Looking. ....................................................................... 1

            2.     The January 16, 2018 Statement Was a Forward-Looking Statement........................................................................ 3

            3.     The Company's Statements About Blockchain Are Forward-Looking. ....................................................................... 4

            4.     The Company's Cautionary Language Was Sufficiently Meaningful........................................................................ 5

      B.     Plaintiff Has Not Adequately Pleaded Scienter. ...................................................... 6

III.   CONCLUSION.............................................................................................. 9

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AIG, Inc. 2008 Sec. Litig.*,
  741 F. Supp. 2d 511 (S.D.N.Y. 2010).......................................................................................5

*In re Atossa Genetics Inc. Sec. Litig.*,
  868 F.3d 784 (9th Cir. 2017) ...................................................................................................4

*In re Cabletron Sys., Inc.*,
  311 F.3d 11 (1st Cir. 2002)......................................................................................................9

*City of Austin Police Dep't v. Kinross Gold Corp.*,
  957 F. Supp. 2d 277 (S.D.N.Y. 2013)......................................................................................3

*In re Electrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017).......................................................................................7

*In re Fairway Grp. Holdings Corp. Sec. Litig.*, No. 14 Civ. 0950 (LAK)(AJP), 2015
  U.S. Dist. LEXIS 109941 (S.D.N.Y. Aug. 19, 2015) ..............................................................3

*In re Ferrellgas Partners, L.P., Sec. Litig.*,
  No. 16 Civ. 7840 (RJS), 2018 U.S. Dist. LEXIS 56896 (S.D.N.Y. Mar. 30, 2018) ................3

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010).......................................................................................8

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entertainment Holdings*,
  No. 18-cv-00299(AJN), 2019 WL 4601644 (S.D.N.Y. Sept. 23, 2019) ..................................6

*In re IMAX Sec. Litig.*,
  587 F. Supp. 2d 471 (S.D.N.Y. 2008).......................................................................................9

*In re Insys Therapeutics, Inc. Sec. Litig.*,
  No. 17 Civ. 1954 (PAC), 2018 WL 2943746 (S.D.N.Y. June 12, 2018) .................................4

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000).........................................................................................6

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991)......................................................................................................2

*Lefkowitz v. Synacor, Inc.*,
  No. 18 Civ. 2979 (LGS), 2019 U.S. Dist. LEXIS 146550
  (S.D.N.Y. Aug. 28, 2019) ........................................................................................................3

*Lipow v. Net1 UEPS Techs., Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015)....................................................................................7

*Lopez v. CT Partners Exec. Search, Inc.*,
   173 F. Supp. 3d 12 (S.D.N.Y. 2016)..................................................................................3, 4

*Mangiafico v. Blumenthal*,
   471 F.3d 391 (2d Cir. 2006)...............................................................................................2

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)...................................................................................7

*In re Secure Computing Corp. Sec. Litig.*,
   184 F. Supp. 2d 980 (N.D. Cal. 2001) .................................................................................3

*In re Take Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008)...................................................................................9

## I.    PRELIMINARY STATEMENT[1]

Defendants' motion to dismiss (the "Motion") made clear that the Amended Complaint fails to meet the standards set forth in the PSLRA and Plaintiff's opposition confirms the fundamental flaws in the Amended Complaint. Plaintiff's opposition ignores many of the cases cited in Defendants' Motion and argues that neither the Safe Harbor nor the bespeaks caution doctrine applies because Defendants' statements allegedly include material omissions, concern either present or historical facts, or do not include sufficiently specific cautionary language. Plaintiff's assertions are neither supported by Plaintiff's conclusory allegations nor the law Plaintiff cites. The opposition also points to no facts that meet the pleading standards under the PSLRA to establish that Defendants acted with motive or conscious disregard or recklessness. Simply put, and as set forth below and in the Motion, Plaintiff's allegations are wholly insufficient, and the Amended Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A.    The Safe Harbor and Bespeaks Caution Doctrine Apply.

#### 1.    The Company's Statements About Revenue Are Forward-Looking.

Plaintiff argues that the Company's statements regarding the SVG and WAG acquisitions and related guarantees made to the Company, and Ideanomics's 2017 revenue guidance were materially false and misleading when made and are not forward-looking statements. Plaintiff's allegations and arguments fail under the PSLRA.

First, Plaintiff argues that Ideanomics stated "that SVG was guaranteed to make $250 million in revenue and $15 million in profits." Opp'n at 8 (quotation capitalized in original). But the February 1, 2017 Press Release and the accompanying Form 8-K set forth that the SVG

---

[1] For the Court's convenience, capitalized terms herein take the meaning ascribed to them in the Motion.

acquisition agreement disclosed that the *seller* made revenue and profit guarantees. Mtn. Ex. 7; Reply Ex. A.[2] Defendants omitted nothing material regarding the SVG guarantee and *the Company* made no guarantee. The Company's statement did not mislead investors. The press release announcing the acquisition included a Safe Harbor Statement making clear that it contains forward-looking statements. Mtn. Ex. 7. And the Company disclosed that if SVG did not meet its revenue and profit guarantees, the seller must forfeit back on a pro rata basis to Ideanomics the stock it received. *Id.*

Second, Plaintiff advances the purely conclusory argument that SVG's and WAG's Fourth Quarter 2016 results made them unlikely to meet their guarantee to the Company. Plaintiff ignores that the Company disclosed that the guarantee was not limited to SVG's and WAG's current businesses, but also included new businesses acquired post-acquisition. Reply Ex. A. Plaintiff argues that the Company's revenue guidance was misleading because Ideanomics was purportedly operating its consumer electronics business only for research purposes. But the very documents Plaintiff relies upon show that Defendants disclosed ***all along*** that they were in ***the process*** of transforming to a blockchain company. *See* Mtn. at 4, 7, 9, 12, 15-16. Plaintiff also glosses over the fact that the Company's statement regarding operating its consumer electronics business for research purposes was made in *December 2018*, which does not show that the Company's statements were misstated *when made*. Mtn. at 13.

Third, Defendants' statements regarding the Company's 2017 revenue projections concerned neither historical nor present facts. Plaintiff claims that Defendant's statement that it

---

[2] The Court may consider the exhibits appended to the Reply Brief (the "Reply Exhibits") because they are heavily cited, directly quoted, and integral to the Amended Complaint and Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and are thus incorporated by reference. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006). Additionally, Reply Exhibits A, C-G are publicly available documents required to be filed by the SEC, and thus are proper subjects of judicial notice on a motion to dismiss a complaint alleging securities fraud. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991).

was "on track" to meet its revenue guidance concerned a present fact. But "on track" statements, *i.e.*, statements saying that an entity is on track to meet a number, are routinely deemed to be forward-looking. *See, e.g.*, *Lefkowitz v. Synacor, Inc.*, No. 18 Civ. 2979 (LGS), 2019 U.S. Dist. LEXIS 146550, at *24-25 (S.D.N.Y. Aug. 28, 2019) (statement that company was "on track . . ." was a "forward looking statement[]"); *In re Fairway Grp. Holdings Corp. Sec. Litig.*, No. 14 Civ. 0950 (LAK)(AJP), 2015 U.S. Dist. LEXIS 109941, at *61-62 (S.D.N.Y. Aug. 19, 2015) (statement that a company was "on track" was a non-actionable statement of opinion); *In re Ferrellgas Partners, L.P., Sec. Litig.*, No. 16 Civ. 7840 (RJS), 2018 U.S. Dist. LEXIS 56896, at *39-40 (S.D.N.Y. Mar. 30, 2018) (company's statements that "we remain on track to deliver" were within the PSLRA's safe harbor).[3]

### 2.    The January 16, 2018 Statement Was a Forward-Looking Statement.

Plaintiff incorrectly argues that Defendants' statement about its preliminary and unaudited Fourth Quarter 2017 oil trading revenue was "historical." But preliminary and unaudited results are, by their very nature, unfinalized and subject to change. As the court in *Lopez v. CT Partners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 30 (S.D.N.Y. 2016) held, a "preliminary results statement was a forward-looking projection, insofar as it gave a 'preliminary' calculation of what the final quarterly financial results *would* be 'based on currently available financial and operating information      and      management's      preliminary      analysis . . . .'" Plaintiff's throwaway attempt to distinguish *Lopez*—a case that is on all fours with the

---

[3] The cases Plaintiff cites to the contrary do not support Plaintiff. In at least one of the cases, the court actually recognized that an "on track" statement was forward-looking. *See, e.g.*, *City of Austin Police Dep't v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 305 (S.D.N.Y. 2013) (a statement that company was "on track" was forward-looking, but actionable because, among other things, the defendant did not include cautionary language); *Mulligan v. Impax Labs, Inc.*, 36 F. Supp. 942, 964 (N.D. Cal. 2014) (statements of progress with respect to the status of an ongoing response to the FDA—not revenue projections—were not forward-looking); *In re Secure Computing Corp. Sec. Litig.*, 184 F. Supp. 2d 980, 990 (N.D. Cal. 2001) (statements that company was "on track" to meet its financial goals were not forward-looking when made "almost immediately" before the results at issue were released).

facts here—in a footnote is telling. Plaintiff claims that *Lopez* is distinguishable because, there, defendants included the word "expected" in its disclosure of its then-preliminary and unaudited results. But Plaintiff's theory that past tense language renders a statement non-forward-looking discredits that distinction. The statement in *Lopez* is nearly identical to the statement here.

Plaintiff cites three inapposite cases to argue that the January 18, 2016 statements are actionable. *In re Insys Therapeutics, Inc. Sec. Litig.*, No. 17 Civ. 1954 (PAC), 2018 WL 2943746 (S.D.N.Y. June 12, 2018) concerned a company's restatement of its Form 10-Q quarterly SEC filings, following the company's admission of accounting errors. *In re AIG, Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511 (S.D.N.Y. 2010) involved alleged misstatements in the company's filings and investor conferences regarding AIG's exposure to the subprime mortgage market, but did not address the specific issue here. Further, the *AIG* plaintiff alleged that the company's "expressed confidence contradicted [an] explicit warning given a week earlier regarding the potential material weakness." *Id.* at 528. There is no such allegation here.  Finally, *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784 (9th Cir. 2017) involved a statement that FDA clearance risk had been achieved—which is not analogous to the preliminary and unaudited results statement here and in *Lopez.*

### 3.    The Company's Statements About Blockchain Are Forward-Looking.

As evidenced by Plaintiff's Motion to Strike, Plaintiff cherry-picks certain company filings and statements to argue that Defendants touted the Company's integration of blockchain, while disregarding that the Company clearly disclosed that it was aiming to integrate blockchain, but had not yet. Plaintiff argues that on a May 15, 2018 investor call, Defendant Wu claimed "that Ideanomics already 'did' apply blockchain 'with crude oil.'" Opp'n at 15 (emphasis removed). The actual language shows that Mr. Wu was discussing the Company's transformation process—

4

> If we just do supply chain, then the gross margin is very low, but however, the supply chain business provides a foundation for us to add four layers of pyramid on top of that, which is the digital settlement, that's our blockchain, which is the digital wallets that based blockchain for buyers and sellers, which is the digital asset trading place whereas we can capture a transaction fee over all the blockchain based transactional activities in that particular industry. And [on] top of that pyramid is the indexing and future derivative computation using super artificial intelligence and dynamic ontology technology. So, we are now in the middle of transforming. We did with the crude oil—what we did with the [crude] oil is going to greatly increase the margin of Ocasia subsidiary, and we are about ready to, in the next couple of quarters, do the same thing with electronic verticals.

Reply Ex. B at 4.

Plaintiff argues Defendant Benya claimed, during an August 13, 2018 call, that Tradetech, which involves the use of blockchain, was "a key driver of [ ] current and rapid topline revenue growth." Opp'n at 6, 15 (emphasis removed). Mr. Benya stated that the Company's "supplier chain finance service business," *not Tradetech*, was "a key driver of our current and rapid top line revenue growth." Mtn. Ex. 19 at 2 ("Product four is TradeTech, which involves the use of blockchain, active ledger, and index products to ramp up margin significantly in our supplier chain finance services business, which is a key driver of our current and rapid top line revenue growth.").

### 4.    The Company's Cautionary Language Was Sufficiently Meaningful.

Plaintiff contends that Defendants' cautionary language is boilerplate and generic by relying on cherry-picked language in Ideanomics's disclosures and ignoring language that specifically warned investors about risks at the heart of Plaintiff's claims. Ideanomics's cautionary language was far more specific than the language in the cases Plaintiff cites. For instance, in the March 31, 2017 press release providing 2017 revenue guidance, Defendants cautioned, among other things, that its "expectations may prove to be incorrect" and its "actual results could differ materially." Mtn. Ex. 14. In its 2016 10-K, Defendants cautioned investors that expanding its

5

business could "imped[e] [its] ability to meet any potential increased demand for our services and possibly hurt[] our future operating results," Mtn. Ex. 15 at 13; *see also* Reply Ex. C at 14 (same); Reply Ex. D at 15 (same); Reply Ex. E at 19 (same); Reply Ex. F at 21 (same); and Reply Ex. G at 47 (same). This cautionary language is closely similar to language that the court in *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Entertainment Holdings*, No. 18-cv-00299(AJN), 2019 WL 4601644 (S.D.N.Y. Sept. 23, 2019), a case cited by Plaintiff, deemed sufficiently specific (but flawed for unrelated reasons). *Id.* at \*14 (language warning that "optimizing [AMC's] theater circuit . . . and the transformation of [ ] existing theaters may be subject to delay and unanticipated costs," would have been sufficient). Here, in announcing its preliminary crude oil trading revenue in January 2018, Ideanomics cautioned that its "expectations may prove to be incorrect" and "actual results could differ materially from those anticipated . . . ," Mtn. Ex. 16, and made clear—by using the preliminary and unaudited language—that its results could change after being finalized and audited. Ideanomics's cautionary language more than sufficiently disclosed the very risks that could cause their expectations to vary from actual results.

### B.    Plaintiff Has Not Adequately Pleaded Scienter.

As set forth in the Motion, Plaintiff's scienter allegations initially fail because they rely on group pleading. Apparently attempting to counter that argument, Plaintiff argues that Ideanomics's scienter results from respondent superior and claims in a footnote that "[t]o the extent that Individual Defendants are not identified . . . Ideanomics still possesses scienter through its un-named officers and managers." Opp'n at 18 n.4. Plaintiff cites no authority for this argument and in conclusory fashion fails to adequately allege scienter as to the named defendants. *See Kalnit v. Eichler*, 99 F. Supp. 2d 327, 341 (S.D.N.Y. 2000). It is undisputable that a plaintiff can only plead scienter as to a corporate defendant if it pleads facts "creat[ing] a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters*

6

*Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Aside from this unfounded argument, the opposition does nothing to counter that, as to the Individual Defendants, Plaintiff cannot plead scienter through group pleading. Plaintiff argues it pled scienter by alleging Wu and Yang approved transactions, and Wu, Yang, Benya, and Tovar had access to an internal computer system. Opp'n at 18 n.4. Even if true, such allegations do not suffice under the PSLRA. *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006); *Lipow v. Net1 UEPS Techs.*, *Inc.*, 131 F. Supp. 3d 144, 163 (S.D.N.Y. 2015).

The Opposition identifies no facts that establish that any Defendant acted with conscious disregard or recklessness. Plaintiff argues that certain of the Defendants had access to SVG/WAG's Fourth Quarter 2016 results. Opp'n at 18-19. Even if true, the Company's revenue guidance did not wholly depend on SVG/WAG's prior revenues. Plaintiff cites ***no*** facts, documents, or confidential witness testimony to support its argument that the revenue guidance was misstated *when given*. Plaintiff cites *In re Electrobras Sec. Litig.*, 245 F. Supp. 3d 450 (S.D.N.Y. 2017), but it is inapposite. *Electrobras* involved allegations that defendants made public statements that the company had no issues with internal controls even though the Electrobras board received an internal report detailing serious issues with the company's internal controls. There are no such allegations here. Plaintiff is simply trying to manufacture such allegations by emphasizing SVG's and WAG's collective Fourth Quarter 2016 results.

Plaintiff contends that the Company and Wu had scienter with respect to the January 2018 press release disclosing preliminary, unaudited Fourth Quarter 2017 oil trading revenue. The Amended Complaint alleges no facts showing that any data contradicted the January 2018 statements regarding the Company's preliminary and unaudited Fourth Quarter 2017 oil trading revenue. Plaintiff argues it pled scienter by alleging that certain Defendants had access to the

revenue numbers at that time, but those numbers were preliminary and unaudited and thus subject to change. Plaintiff cites *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010), but *Freudenberg* involved allegations supported by sixteen confidential witnesses and corroborating evidence of what defendants were told and knew. Plaintiff has not offered any such evidence here.

Plaintiff argues that the disparity between the Company's actual results and its January 2018 press release statement "is so large that anyone who reviewed the financial data would have discovered that the statement was false." Opp'n at 20. Plaintiff does not identify what "financial data" would have revealed that Defendants knew the January 2018 press release statement was inaccurate when made. Plaintiff cites several cases for the proposition that the magnitude of the loss supports an inference of scienter, *id.*, but Plaintiff misstates the law. The law is clear that the size of an alleged loss, on its own, does not establish scienter. Mtn. at 22 (citing *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 596-97 (S.D.N.Y. 2011)).

Plaintiff's argument that Defendants had scienter regarding statements made about the alleged blockchain implementation rests on Plaintiff's mischaracterization of those statements. The Company consistently stated that it was "aiming to become a . . . Blockchain-Powered, Fintech company." Mtn. Ex. 2 at 4.

Plaintiff's argument as to motive is equally unavailing. Plaintiff contends Ideanomics was motived to inflate its stock to conduct five offerings to reap more than $60 million in profits because the Company disclosed concerns about its ability to continue as a going concern (*see, e.g.*, Mtn. Ex. 2 at 14; Mtn. Ex. 15 at 13). But two of the five offerings occurred ***months before*** the January 2018 statement (May and October 2017) and the remaining three occurred ***months after*** the Company pulled back its guidance regarding 2017 revenue (March, July, and August 2018).

Am. Compl. ¶ 104. And three of the five offerings occurred in May and October 2017 and March 2018—***before*** the alleged misstatements regarding blockchain implementation. *Id.* Plaintiff's attempt to tie motive to these offerings is belied by Plaintiff's allegations. Likewise, Plaintiff's argument that motive exists where there are allegations that "'executives' careers and the very survival of the company were on the line'" also fails. Plaintiff has not alleged that any Ideanomics's executive's career was endangered or the Company was in imminent danger of collapse.[4] Plaintiff argues that Wu had motive because he "offloaded five of his unprofitable businesses . . . in exchange for the Company's inflated stock," Opp'n at 23, but it makes little sense that Wu would be motivated to artificially inflate Ideanomics's share price only to turn around and obtain (for himself or any of his entities) those shares at an inflated price. *See In re Take Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 278 (S.D.N.Y. 2008) ("[T]he alleged conduct of other defendants . . . undercuts . . . motive allegations. For instance, Take-Two's CEO . . .actually acquired 50,000 shares of Take-Two stock . . . at nearly the same time that Winters allegedly engaged in insider sales.").

### III.    CONCLUSION

For the foregoing reasons and the reasons set forth in the Motion (and Tovar's Motion), Defendants respectfully request that the Court dismiss the claims against it with prejudice and grant all such other relief the Court deems just and proper.[5]

---

[4] The two cases Plaintiff cites are inapposite. In *In re Cabletron Sys., Inc.*, 311 F.3d 11 (1st Cir. 2002), the court found motive where, unlike here, the company concealed its financial distress and executives reaped large sums from trading the company's stock. And the portion of *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471 (S.D.N.Y. 2008) that Plaintiff cites does not concern *motive* (which the court found plaintiff had not pled), it relates to conscious disregard and recklessness. *IMAX*, 587 F. Supp. at 483.

[5] The Amended Complaint should also be dismissed as to all Defendants, including Federico Tovar, for the reasons set forth in Mr. Tovar's Reply brief.

Dated:  April 1, 2020

Respectfully submitted,

**VENABLE LLP**

By:  <u>/s/ George Kostolampros</u>
George Kostolampros
600 Massachusetts Avenue NW
Washington DC  20001
Tel.: (202) 344-4426
Fax: (202) 344-8300

- and -

Xochitl S. Strohbehn
Dakota L. Kann
1290 Avenue of the Americas
Twentieth Floor
New York, New York 10104
Tel.:  (212) 307-5500
Fax:  (212) 307-5598

*Attorneys for Defendants Ideanomics, Inc.,*
*Bruno Wu, Bing Yang, and Robert Benya*