**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAYSUKH RUDANI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., BING YANG, ROBERT BENYA, ZHENG WU *a/k/a* BRUNO WU, <br><br> Defendants. | No. 1:19-cv-06741-GBD |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND........................................................ 1

    A.    Description Of The Action............................................................. 1

    B.    The Proposed Settlement ............................................................ 3

ARGUMENT ........................................................................................................ 4

I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL........... 4

    A.    The Court "Will Likely Be Able To" Approve The Proposed Settlement ............... 4

        1.    The Class Has Been Adequately Represented ........................................... 5

        2.    The Proposed Settlement Was Negotiated at Arm's Length ...................... 6

        3.    The Relief Provided for the Class Is Adequate......................................... 7

            a.    The Costs, Risks, and Delay of Trial and Appeal.......................... 7

            b.    The Proposed Method for Distributing Relief Is Effective........... 10

            c.    Terms of Attorneys' Fees and Timing of Payment...................... 11

            d.    Related Agreements ................................................................. 12

        4.    The Settlement Treats Class Members Equitably..................................... 12

        5.    The Stage of the Proceedings and the Extent of Discovery Completed...................................................................................... 12

        6.    The Risks of Maintaining the Class Action Through Trial....................... 13

        7.    The Ability of Defendants To Withstand a Greater Judgment ................. 14

        8.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation..................................... 15

    B.    The Court "Will Likely Be Able To" Certify The Class For Settlement................. 16

        1.    The Proposed Settlement Class Meets the Requirements of Rule 23(a)...................................................................................... 18

            a.    There Are Common Questions of Law and Fact ......................... 18

            b.    The Proposed Class Representative's Claims Are Typical........... 19

            c.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class ............. 20

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(3) .......................... 20

a.      Common Questions of Law and Fact Predominate ...................... 21

b.      A Class Action Is Superior to Other Methods of
Adjudication.................................................................................. 21

3.      The Faruqi Firm Is Adequate to Serve as Class Counsel.......................... 22

II.     THE PROPOSED PLAN AND FORMS OF NOTICE SHOULD BE APPROVED ...... 23

III.    PROPOSED SCHEDULE ................................................................................. 24

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ......................................................................................15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) .........................................................................................6

*Allen v. Dairy Farmers of America, Inc.*,
    2011 WL 1706778 (D. Vt. May 4, 2011) ........................................................................9, 16

*In re. Am. Int'l Grp., Inc. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012).....................................................................................17, 20, 21

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).....................................................................................................21, 22

*Athale v. Sinotech Energy Ltd.*,
    2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013).....................................................................10

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)....................................................................................................6

*In re Beacon Assocs. Litig.*,
    2012 WL 1569827 (S.D.N.Y. May 3, 2012) .......................................................................20

*CE Int'l Resources Holdings, LLC v. S.A. Minerals Ltd. P'ship*,
    2013 WL 2661037 (S.D.N.Y. June 12, 2013) ......................................................................8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)................................................................................................16

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
    Care L.L.C.*,
    504 F.3d 229 (2d Cir. 2007).........................................................................................18, 19

*In re China Sunergy Sec. Litig.*,
    2011 WL 1899715 (S.D.N.Y. May 13, 2011) ....................................................................8, 9

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)........................................................................9

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)..................................................................................23

*In re Citigroup Sec. Litig.*,
    2014 WL 2112136 (S.D.N.Y. May 20, 2014) ......................................................................16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).................................................................................... *passim*

*Consol. Edison, Inc. v. Ne. Utils.*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004)..................................................................23

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001).....................................................................................15

*In re Deutsche Telekom AG Sec. Litig.*,
   229 F. Supp. 2d 277 (S.D.N.Y. 2002)...................................................................22

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) .......................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..........................................................6

*Frank v. Eastman Kodak, Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)..........................................................................14

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................4, 5, 7, 12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................................................11

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) .............................................................17, 19, 22

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)....................................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   2016 WL 7625708 (S.D.N.Y. Dec. 21, 2016) .........................................................4

*Marisol A. by Forbes v. Giuliani*,
   126 F.3d 372 (2d Cir. 1997)...................................................................................17

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................................................17

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
   241 F.R.D. 435 (S.D.N.Y. 2007) ...........................................................................19

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010)..................................................................................21

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..................................................................................15

*In re NYSE Specialists Sec. Litig.*,
    260 F.R.D. 55 (S.D.N.Y. 2009) .............................................................................18

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ..........................................................................15

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019)........................................................................5, 12

*In re Platinum and Palladium Commodities Litig.*,
    2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..................................................17, 18

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
    164 F.R.D. 362 (S.D.N.Y. 1996) ..........................................................................24

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ...........................................................13

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................23

*Slomovics v. All For a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ........................................................................10

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ............................................................................8

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................................11

*Vaccaro v. New Source Energy Partners, L.P.*
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ........................................................11

*Vargas v. Capital One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) .......................................................................23, 24

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .................................................................18, 19, 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................................4

*In re Warner Chilcott Ltd. Sec. Litig.*,
2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)...........................................................................5

*Yang v. Focus Media Holding Ltd.*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)........................................................5, 6, 7, 13

**Statutes**

15 U.S.C. § 78u-4(a)(7) ..............................................................................................................23

**Other Authorities**

Fed. R. Civ. P. 23.................................................................................................. *passim*

Fed. R. Civ. P. 23, advisory committee's note 2018 amendments .................................................12

Dana L. Post, *Discovery, Disclosure, and Data Transfer in Asia: China and Hong Kong*,
16 Sedona Conf. 257 (Fall 2015)........................................................................................8

Janeen McIntosh and Svetlana Starykh,
*Recent Trends in Securities Class Action Litigation:
2020 Full-Year Review* (NERA 2021)........................................................................16

Lead Plaintiff Jaysukh Rudani ("Lead Plaintiff"), on behalf of himself and the putative Class, and defendants Ideanomics, Inc. ("Ideanomics" or the "Company"), Zheng Wu a/k/a Bruno Wu, Bing Yang, and Robert Benya (collectively, "Defendants") have reached a proposed Settlement for $5,000,000.00 that, if approved, will resolve all claims in the above-captioned action (the "Action").[1] Lead Plaintiff respectfully submits this memorandum of law in support of his motion for preliminary approval of the Settlement and requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"). The Preliminary Approval Order will, *inter alia*: (1) preliminarily approve the Settlement set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) appoint Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel for settlement purposes; (4) approve the form and manner of providing notice of the Settlement to the Class; and (5) set a date for the Final Approval Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description Of The Action

This litigation began on July 19, 2019 when plaintiff Maria José Pinto Claro da Fonseca Miranda filed the initial class action complaint against Ideanomics and certain of its officers and directors in the United States District Court for the Southern District of New York. ECF No. 1. On October 7, 2019, District Judge George B. Daniels appointed Jaysukh Rudani as Lead Plaintiff and the Faruqi Firm as Lead Counsel, pursuant to the Private Securities Litigation Reform Act of 1995. *See* ECF No. 36. Rudani filed the amended class action complaint ("AC")

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated July 30, 2021 ("Stipulation"), filed concurrently herewith; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (e) all references to Exhibits 1-2 are to the exhibits annexed to the Declaration of Katherine M. Lenahan in support of this motion, filed concurrently herewith.

on December 4, 2019, naming as defendants Ideanomics; its founder, Chairman, and Chief Executive Officer ("CEO") Zheng Wu a/k/a Bruno Wu ("Wu"); former CEO and director Bing Yang ("Yang"); former Chief Financial Officer Federico Tovar ("Tovar"); and former President, Chief Revenue Officer, and director Robert Benya ("Benya").  ECF No. 41.

Briefly, the AC alleges that, during the Class Period, Defendants made three categories of false and/or misleading statements about the Company's businesses.  AC ¶3.  First, certain defendants touted Ideanomics' acquisitions of Sun Video Group HK Limited ("SVG") and Wide Angle Group Limited ("WAG") (collectively, the "Acquisitions")—from a private equity fund controlled by Wu ("BT Capital").  *Id.* at ¶¶3, 41-50, 54.  Specifically, they hyped the fact that the Acquisitions came with guarantees of $250 million in revenue and $15 million in gross profit, which Ideanomics used to support its 2017 revenue guidance of $280 million (later raised to $300 million).  *Id.* at ¶¶3, 41, 43, 45, 47, 49, 54.  Meanwhile, Defendants failed to disclose that (1) in the quarter preceding the Acquisitions, SVG and WAG only generated $30 million in revenue and incurred a $0.4 million loss; and (2) the Acquisitions were primarily being run for experimental purposes and ***not*** to maximize revenues and profits.  *Id.* at ¶¶3, 42, 44, 46, 48, 50.  Second, on January 16, 2018, Ideanomics stated that it had generated oil revenues in Q4 2017 of $170 million, when revenues were in fact only $19 million at most.  *Id.* at ¶¶3, 57-58.  Third, after disappointing investors in 2017, Ideanomics, Wu, and Benya began touting the Company's successful integration of blockchain and artificial intelligence technology into its consumer electronics and crude oil businesses when no such integration had occurred.  *Id.* at ¶¶3, 66-71.

The true facts came out gradually over time in disclosures on February 23, 2018, August 28, 2018, and November 13, 2018, each of which led to a decline in the price of Ideanomic's common stock.  *See* ¶¶7-10, 13-14, 113-23.

On January 17, 2020, defendants Ideanomics, Wu, Yang, and Benya (the "Company Defendants"), filed a motion to dismiss the AC ("Company Defendants' MTD"), ECF Nos. 51-53, and defendant Tovar filed a separate motion to dismiss ("Tovar's MTD"), ECF Nos. 48-50. Plaintiff opposed both motions separately on March 2, 2020 (ECF Nos. 57, 61), and moved to strike the extrinsic evidence and related arguments submitted with each motion, *see* ECF Nos. 54-56, 58-60. After a hearing, on September 25, 2020 the Court granted Tovar's MTD and granted in part and denied in part the Company Defendants' MTD, sustaining Plaintiff's Section 10(b) claims against Ideanomics, Wu, and Yang, but dismissing them as to Benya. *See generally* ECF No. 88 ("MTD Order"). The Court sustained Plaintiff's control person claims under Section 20(a) against Wu, Yang, and Benya. *See id.* at 17.

On October 19, 2020, the parties informed the Court of their intent to engage in settlement negotiations. *See* ECF No. 89. On April 21, 2021, the parties engaged in a mediation session before Jed Melnick, Esq., a highly experienced securities litigation mediator. The mediation was preceded by submission of mediation statements and exhibits. The parties came to an agreement in principle during the mediation session and then worked to finalize the terms of the Stipulation over the following months.

### B. The Proposed Settlement

The Settling Parties agreed to resolve the litigation for total consideration of $5,000,000.00. The Settlement Amount will be paid by Defendants and/or their insurers, placed into an escrow account, and after paying attorneys' fees and expenses approved by the Court and other costs of settlement, the Settlement Fund will be distributed to Authorized Claimants. In exchange for the payment of the Settlement Amount, Lead Plaintiff and the Class will release all Released Claims against the Released Parties. As further described below, Lead Plaintiff entered into this Settlement with a full and comprehensive understanding of the strengths and

3

weaknesses of the claims.  Lead Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon, and thus is in the best interests of, the Class.

**ARGUMENT**

## I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court approval.  There is a "strong judicial policy" in favor of class action settlements.  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005).

The settlement approval process involves two steps.  First, the "court makes a preliminary evaluation" of the settlement's "fairness" to determine whether it is appropriate to send notice of the proposed settlement to the class.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016).  Second, the court determines whether to grant final approval of the proposed settlement after notice has been provided to the class and a hearing has been held.  *Id.*

Under the amendments to Rule 23 that went into effect on December 1, 2018, the issue at preliminary approval is whether the court "will ***likely*** be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Rule 23(e)(1)(B).  For the reasons explained below, the Settlement meets Rule 23(e)'s requirements.

### A.      The Court "Will Likely Be Able To" Approve The Proposed Settlement

Rule 23(e)(2) directs the court to determine whether the settlement is "fair, reasonable, and adequate" after considering: (A) the adequacy of the representation; (B) the existence of arm's-length negotiations; (C) the adequacy of the relief provided; and (D) the equitable treatment of class members.  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 23(e)(2)).

Rule 23(e)(2)'s new factors, however, do not displace the factors that the Second Circuit

4

previously used to determine whether a settlement is "fair, reasonable, and adequate"—the so-called "*Grinnell* factors." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (stating that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinnell* factors[]"); *GSE*, 414 F. Supp. 3d at 692 (same). The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29 (citing, *inter alia*, *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). A settlement need not meet all nine *Grinnell* factors to be considered "fair, reasonable and adequate[;]" rather, "the court should consider the totality of these factors in light of the particular circumstances." *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *4 (S.D.N.Y. Sept. 4, 2014). As explained below, the Settlement satisfies Rule 23(e)(2) and the applicable[2] *Grinnell* factors.

### 1.    The Class Has Been Adequately Represented

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Determining adequacy generally involves considering whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."

---

[2]    *Grinnell* factor number two, the Class's reaction to the Settlement, is not a relevant factor at this time because notice has not yet been distributed. *See In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Both prongs are met here. Lead Plaintiff's interests are directly aligned with those of other Class Members, as he claims to have suffered damages from the same alleged conduct, and through those claims seeks the same recovery from Defendants. *Yang*, 2014 WL 4401280, at *12 (finding adequacy established where, "like all Class Members, [lead plaintiff] purchased Focus Media ADSs at artificially inflated prices during the Class Period as a result of Defendants' alleged materially false and misleading statements and was damaged thereby[]").

Additionally, Lead Counsel is a national law firm that is qualified, experienced, and able to conduct this litigation. *See* Ex. 1, Faruqi Firm resume. Lead Counsel has devoted significant efforts to identifying and investigating the potential claims in this Action and has fought vigorously to preserve those claims.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) requires the court to consider whether the proposed settlement "was negotiated at arm's length." A proposed settlement is entitled to a presumption of fairness if "it was the product of arm's-length negotiations conducted by capable counsel, well-experienced in class action litigation arising under the federal securities laws." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014) ("[A] strong initial presumption o[f] fairness attaches to the proposed settlement if, as here, the settlement is reached by experienced counsel after arm's-length negotiations.").

Here, the parties engaged in a mediation session after, *inter alia,* Lead Counsel thoroughly investigated the relevant facts, drafted the AC, vigorously opposed two motions to dismiss, and filed two separate motions to strike extrinsic materials from those motions. *See, e.g.*, ECF Nos. 41, 54-61, 75-76. After exchanging mediation statements and exhibits, the parties

6

had a mediation session with the assistance of Jed D. Melnick, Esq., a well-respected mediator with significant experience mediating securities fraud class actions. *See Yang*, 2014 WL 4401280, at *5 (finding that the participation of Mr. Melnick, "a highly qualified mediator[,]" "strongly supports a finding that negotiations were conducted at arm's length and without collusion[]"). After debating their positions during the mediation, the parties reached an agreement in principle, subject to Defendants providing Lead Plaintiff with confirmatory discovery regarding the Company's cash position pursuant to a mediation confidentiality agreement. Thereafter, the parties worked to finalize the settlement's terms.

Accordingly, the settlement was not achieved until the parties were sufficiently informed of the strengths and weaknesses of the case to competently evaluate its merits and agree on a settlement figure acceptable to Defendants and fair, adequate, and reasonable to the Class.

### 3. The Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Class is adequate, taking the following four specific considerations into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of distributing relief to the class; (3) the terms and timing of attorneys' fees; and (4) any related agreements. Each of these considerations is addressed below, along with the *Grinnell* factors that overlap with them.

### a. The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal. Fed R. Civ. P. 23(e)(2)(C)(i). This inquiry overlaps with *Grinnell* factors one, four, and five: the "complexity, expense and likely duration of the litigation," the "risks of establishing liability" and "the risks of establishing damages." *See GSE*, 414 F. Supp. 3d at 693-94 (noting the overlap).

Here, the Settlement Amount of $5,000,000.00 provides an immediate benefit to the class

and is adequate when compared to the risk that no recovery, or lesser recovery, might be achieved after prolonged litigation.  While Lead Plaintiff believes that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims, he acknowledges that continuing the Action poses significant risks and additional costs.  It is well known that securities class action litigation is inherently complex.  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (stating that "class action suits in general have a well-deserved reputation as being most complex[,]" and that federal courts "have long recognized" that securities class action "litigation is notably difficult and notoriously uncertain[]").

This case is no exception.  Although most of Plaintiff's claims survived a motion to dismiss, obtaining the necessary discovery in this Action would be very challenging and expensive because Defendants have represented that many of the relevant documents and witnesses are located in China.  The parties would be required to conduct discovery through the Hague Convention, which is often "unduly time consuming and expensive, as well as less certain to produce needed evidence than direct use of the Federal Rules."  *CE Int'l Resources Holdings, LLC v. S.A. Minerals Ltd. P'ship*, 2013 WL 2661037, at *11 (S.D.N.Y. June 12, 2013); *see also* Dana L. Post, *Discovery, Disclosure, and Data Transfer in Asia: China and Hong Kong*, 16 Sedona Conf. J. 257, 276 (Fall 2015) ("Many U.S. courts evaluating the efficiency of seeking evidence in China through the Hague Convention have found that it is not a viable alternative of securing information.").  Further, despite being a signatory to the Hague Convention, China does not permit foreign attorneys to take depositions in China without approval from Chinese authorities, which necessitates travel to more permissive jurisdictions.  *See* Post, 16 Sedona Conf. J. at 275.  Thus, the depositions of Company officers who are based in China would likely require them to travel to Hong Kong where depositions are permitted.  *See id.*; *In re China*

*Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) ("[T]he Company's location in China would have posed a barrier that would have increased the difficulty and expense of discovery, and might have made it impossible to collect some of the evidence or take depositions necessary to prove Plaintiff's claims."). Defendants have also taken the position that much of the relevant discovery would be protected from discovery under China's state secret laws, further complicating matters. In any event, even if the relevant documents and testimony could be obtained, they would need to be translated, which is costly and time-consuming. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019) (finding this factor weighed in favor of a proposed settlement where litigation "would necessarily require the expense of travelling to Hong Kong to depose Defendant's witnesses though interpreters, and the costly translation of many Chinese documents[]").

Even if obtaining discovery in China were no obstacle, the fact discovery process would require, among other things, discovery into the different areas of Ideanomics' business (*i.e.*, supply chain monitoring, consumer electronics, and crude oil trading) at issue; producing and reviewing at least hundreds of thousands of pages of documents; taking numerous depositions; and retaining blockchain and financial expert witnesses. Furthermore, Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step. Thus, even after the considerable time and expense of discovery, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment.

Even if the claims were to survive summary judgment, trial would be very time consuming and expensive and would monopolize valuable court resources. *See Allen v. Dairy Farmers of America, Inc.*, 2011 WL 1706778, at *3 (D. Vt. May 4, 2011) ("Neither the controlling case law nor the applicable rules and statutes favor [] an approach" that "would also

9

force Dean, a party that is willing to settle on terms Plaintiffs consider favorable, to proceed with costly and protracted litigation."). Indeed, the parties fundamentally disagree about the amount of damages in this case should Plaintiff prove his claims. Thus, the damages issues would likely boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants' favor. *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007).

Furthermore, a favorable judgment could be the subject of post-trial motions and appeals, delaying any payment to Class Members even if Lead Plaintiff were to prevail at trial. *See Slomovics v. All For a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."). Even if Lead Plaintiff ultimately prevailed, there is a risk that he would be unable to enforce and collect a money judgment in China, where many of Defendants' assets are located, because there is no treaty or reciprocal arrangement requiring Chinese courts to recognize a U.S. judgment. *See* Ideanomics, SEC Form 10-K at 21-22 (filed Mar. 31, 2021) (explaining that part of the Company's current operations are conducted in China and as a result, it may be difficult for investors "to enforce in U.S. courts judgments on the civil liability provisions of the U.S. federal securities laws against [Ideanomics] and [its] officers and directors, that are not residents in the United States and the substantial majority of whose assets are located outside of the United States"); *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *4 (S.D.N.Y. Sept. 4, 2013) (considering the "added difficulty of attempting to enforce any final judgment in China" in evaluating the proposed settlement).

    **b.**  **The Proposed Method for Distributing Relief Is Effective**

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims.

The Settlement provides a well-established method for distributing relief to eligible Class Members and processing claims.  As explained in Section II, *infra*, the notice plan includes mailing the Notice and Proof of Claim and Release form to all Class Members who can be identified with reasonable effort.  *See* Stipulation, Exs. A-1 & A-2.  These documents will request the information necessary for the Claims Administrator to calculate each eligible Class Member's claim pursuant to the Plan of Allocation.  *See* Stipulation, Ex. A-1 at 14-19, Ex. A-2. Under the proposed Plan of Allocation, which was developed with the assistance of a damages consultant, Class Members who are eligible to participate in the Settlement will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations.  *See* Stipulation, Ex. A-1 at 14-19.  Lead Plaintiff respectfully submits that this method of distribution and claims processing is effective.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 581 (S.D.N.Y. 2008) ("Pro-rata distribution of settlement funds based on investment loss is clearly a reasonable approach.").

### c.        Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment."  Lead Counsel intends to seek an award of attorneys' fees of 33.33% of the Settlement Amount, plus accrued interest, and expenses in an amount not to exceed $40,000.  This request is in line with those often awarded in this District. *See, e.g., Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (approving requested fee of 33.33% of a $2.85 million settlement fund, stating "[t]his percentage is within the range of what is reasonably granted in this Circuit."); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (approving requested fee of 33.3% of the $3.8 million settlement amount and collecting cases awarding that percentage).  Any attorneys' fees and expenses awarded by the Court shall be paid to Lead

11

Counsel only after the Court enters the Judgment.  Stipulation ¶6.2.

### d.       Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  The only agreement is the escrow agreement between Lead Counsel and the proposed Escrow Agent, with governs the deposit, investment, and disbursement of the Settlement Fund in terms consistent with the Stipulation.

### 4.       The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways. . . ."  Fed. R. Civ. P. 23, advisory committee's note 2018 amendments.  Under the proposed Plan of Allocation, Class Members who are eligible to participate in the Settlement will be required to sign the same release and will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations.  *See* Stipulation, Ex. A-1 at 14-19.  Thus, the proposed Settlement treats members of the Class equitably relative to each other.  *See GSE*, 414 F. Supp. 3d at 698-99 ("Under the proposed plan of distribution, claimants will be treated equitably by receiving a *pro rata* share of the recovery based on the estimated price impact of defendants' conduct on their . . . transactions."); *Payment Card*, 330 F.R.D. at 47 (finding that this factor weighed in favor of preliminary approval where, *inter alia*, "the scope of the release applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members . . .").

### 5.       The Stage of the Proceedings and the Extent of Discovery Completed

*Grinnell* factor number three, "the stage of the proceedings and the amount of discovery

12

completed – is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004). Formal discovery is not required before settlement; rather, "the question is whether the parties had adequate information about their claims" before entering into settlement. *Id.*; *see Rieckborn v. Velti PLC*, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached prior to even the filing of a motion to dismiss).

Although the Settlement was achieved early in the Action, it was reached only after the parties had a comprehensive understanding of the potential risks and procedural hurdles facing further litigation of this Action. For example, prior to the mediation, Lead Counsel conducted a thorough investigation by reviewing and analyzing several years-worth of publicly available information regarding Defendants; consulting with investigators who conducted an investigation including by contacting individuals likely to possess relevant information; and consulting with damages experts to evaluate the Class's damages and loss causation issues. Lead Counsel also conducted substantial legal research in connection with opposing the motions to dismiss and briefing the motions to strike. *See* ECF Nos. 54-60. Thus, Lead Plaintiff and Lead Counsel had sufficient information to enter into the Settlement. *Yang*, 2014 WL 4401280, at *7 (finding that this factor supported settlement where "Plaintiff and Lead Counsel have some knowledge of the strengths and weaknesses of Plaintiff's claims and considerable knowledge about the limits on their ability to recover anything for the Class if they win . . .").

      **6.     The Risks of Maintaining the Class Action Through Trial**

*Grinnell* factor number six inquires into the risks of maintaining the action as a class

action through trial. *Grinnell*, 495 F.2d at 463. The Class has not yet been certified. While

Lead Plaintiff is confident that the class meets the requirements for certification, *see* Section I.B,

*infra*, Lead Plaintiff is aware that there is a risk the Court could disagree. Furthermore, even if

the Court were to certify the Class, there is always a risk that the Class could be decertified at a

later stage in the proceedings. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 186

(W.D.N.Y. 2005) (acknowledging that while plaintiffs might ultimately prevail on class

certification were the settlement disapproved, "the risk that the case might be not certified is not

illusory and weighs in favor of the Class Settlement[]"). Thus, the risks and uncertainty

surrounding Class certification also supports approval of the Settlement.

## 7. The Ability of Defendants To Withstand a Greater Judgment

*Grinnell* factor number seven inquires into whether Defendants could withstand a

judgment greater than that secured by the settlement. *Grinnell*, 495 F.2d at 463. Lead Counsel

believes that the possibility of achieving a greater recovery than that provided by the settlement

is unlikely. The Settlement Amount will be funded by Defendants and/or their insurers. *See*

Stipulation ¶2.1. It is Lead Plaintiff and Lead Counsel's understanding that greater recovery is

unlikely because the Company's cash on hand is earmarked to fund operations and certain

business plans, which were disclosed to Lead Counsel subject to a mediation confidentiality

agreement. Additionally, Ideanomics has a large self-insured retention on its relevant insurance

policy that requires the Company to spend a substantial sum on litigation before insurance covers

any costs, and is required to indemnify the other defendants. The Company is also facing

pending derivative actions, another putative securities class action, and responding to an ongoing

SEC investigation, *see* Ideanomics, SEC Form 10-Q at 34 (filed May 17, 2021), and is

"obligated to indemnify and advance expenses to certain individuals involved in certain of these

proceedings[,]" Ideanomics, SEC Form 10-K at 19 (filed Mar. 31, 2021). As a result, it is Lead

14

Counsel's understanding that greater recovery from the Company's insurance would be unlikely because it will be needed to fund costs related to the pending litigation and ongoing SEC investigation described above.

In any event, even if Defendants could withstand a greater judgment, this factor is generally not determinative where, as here, "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming district court's decision to approve the proposed settlement even though the "defendants' ability to withstand a higher judgment weighed against the settlement"); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

### 8.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

*Grinnell* factors eight and nine require the Court to evaluate the Settlement's reasonableness in light of the best possible recovery and the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. The adequacy of a Settlement is judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). There is no specific equation by which a court determines that a settlement is reasonable, adequate, or fair. *See PaineWebber*, 171 F.R.D. at 130. Rather, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see PaineWebber*, 171 F.R.D. at 130 (the determination of a

15

settlement's reasonableness "is not susceptible of a mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness").

The Settlement Fund of $5,000,000.00 represents approximately 6.08% of the Class's maximum potential damages (assuming the proposed Class is certified and all claims and damages were proven) that Lead Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is materially higher than the median ratio of settlement amounts to investor losses for 2019 and 2020, which NERA Economic Consulting determined was 2.0% and 1.7%, respectively.  *See* Ex. 2 at 20, Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA 2021).  The percentage is also within the range of typical recoveries in complex securities litigation.  *See, e.g.*, *In re Citigroup Sec. Litig.*, 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining settlement amount equal to 2% of the class's out-of-pocket losses "falls squarely within this range of reasonableness"); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (finding settlement equal to 2% of aggregate expected recovery to be reasonable); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of estimated damages).

Given the significant risk and expense of continued litigation, the proposed Settlement is well within the range of reasonableness and warrants preliminary approval to permit Class Members to at least ***consider*** its terms.  *See Dairy Farmers*, 2011 WL 1706778, at *3 ("[W]ere the court to deny preliminary approval . . . it would be depriving settlement class members of the right to even ***consider*** the [] Settlement.").

**B.     The Court "Will Likely Be Able To" Certify The Class For Settlement**

Rule 23(e)(1)(B)(ii) requires the Court to consider whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal."  Lead Plaintiff seeks certification of

the following Class for the purposes of Settlement only:

> All Persons who purchased or otherwise acquired the publicly traded common stock of Ideanomics listed on the NASDAQ or domestically in the United States between February 1, 2017 and November 13, 2018, inclusive, and were damaged thereby. Excluded from the Class are: (a) Defendants; (b) the officers and directors of the Company at all relevant times; (c) members of any Defendant's immediate families; (d) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (e) the legal representatives, heirs, successors, and assigns of such excluded Persons; (f) those who purchased or otherwise acquired Ideanomics common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) ("It is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which §10(b) applies."); and (g) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

"The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class-action settlement." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009); *In re Platinum and Palladium Commodities Litig.*, 2014 WL 3500655, at *8 (S.D.N.Y. July 15, 2014) ("A court may certify a class for the purpose of a classwide settlement."). To certify a class for the purposes of settlement, a court must find that the proposed class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as at least one subjection of Rule 23(b). *See In re. Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."). Furthermore, in this Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). The proposed Class

17

easily meets the certification standards under Rules 23(a) and 23(b).

### 1.    The Proposed Settlement Class Meets the Requirements of Rule 23(a)

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To demonstrate numerosity, Lead Plaintiff must show only the extreme difficulty or inconvenience of joining all members of the class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007) ("The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate."). The "numerosity requirement is presumed satisfied if there are 40 class members." *Platinum*, 2014 WL 3500655, at *8. In securities class actions that relate "to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 69-70 (S.D.N.Y. 2009).

During the Class Period, Ideanomics securities were listed and actively traded on the NASDAQ. AC ¶127. As of November 10, 2018, there were 102,266,066 Ideanomics shares outstanding (Ideanomics, SEC Form 10-Q at 1 (filed Nov. 14, 2018)), potentially owned by hundreds or thousands of persons who are Class Members. Accordingly, joinder would be impracticable, thus satisfying the numerosity requirement of Rule 23(a)(1).

### a.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality does not mandate that all class members make identical claims and arguments. Rather, a "plaintiff must identify some unifying thread among the members' claims that warrants class treatment." *In re Vivendi Universal, S.A. Sec. Litig.*, 242

18

F.R.D. 76, 84 (S.D.N.Y. 2007).  For example, in securities class actions, "where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied."  *Indep. Energy*, 210 F.R.D. at 479 ("The commonality requirement has been applied permissively in securities fraud litigation.").

The overarching issues shared by all Class Members is whether Defendants violated the Exchange Act and the rules promulgated thereunder in connection with the factual allegations discussed above.  Specifically, common questions of law and fact in this case include: (a) whether Defendants violated the Exchange Act and the rules promulgated thereunder; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (d) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (e) whether the price of Ideanomics stock was artificially inflated; and (f) the extent of the damage sustained by Class Members and the appropriate measure of damages.  ¶130.  These are all common questions because each Class Member has to prove the same elements to establish Defendants' liability and satisfy the low hurdle of Rule 23(a)(2).  *See Vivendi*, 242 F.R.D. at 84 (finding commonality satisfied where plaintiffs allege elements of a Rule 10b-5 claim).

### b.      The Proposed Class Representative's Claims Are Typical

A Class may be certified if the claims of the representative parties are typical of the claims of the Class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Cent. States*, 504 F.3d at 245; *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 241 F.R.D. 435, 444 (S.D.N.Y. 2007) ("The typicality requirement primarily directs the district court to focus on whether the named

representatives' claims have the same essential characteristics as the claims of the class at large . . . A close nexus between the claims assures that the representatives will advance the interests of all class members.").  Typicality, however, does not require that all class members share identical claims.  When a representative alleges that "the same unlawful conduct was directed at or affected both [himself] and the class sought to be represented" he will usually satisfy the typicality requirement "irrespective of minor variations in the fact patterns underlying individual claims."  *In re Beacon Assocs. Litig.*, 2012 WL 1569827, at \*7 (S.D.N.Y. May 3, 2012).

Lead Plaintiff's claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed Settlement Class.  Lead Plaintiff claims (a) that Defendants violated §§10(b) and 20(a) of the Exchange Act by issuing false and misleading statements; (b) that he and other Class Members purchased Ideanomics common stock at artificially inflated prices based on those statements and were damaged thereby; and (c) by proving his own claims, Lead Plaintiff would prove the claims of the Class Members. Accordingly, there is a sufficient nexus between Lead Plaintiff's claims and the claims asserted on behalf of the members of the Settlement Class.  For these reasons, Rule 23(a)(3) is satisfied.

### c. The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Under Rule 23(a)(4), the plaintiff must establish that "the representative parties will fairly and adequately protect the interests of the class."  Lead Plaintiff has established his adequacy for the reasons explained in Section I.A.1, *supra*.

### 2. The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once the four prerequisites of Rule 23(a) are met, the proposed class must also satisfy one of the requirements of Rule 23(b).  *See Am. Int'l Grp.*, 689 F.3d at 238.  In this case, certification is proper under Rule 23(b)(3), which requires that "the questions of law or fact

20

common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.*

### a.     Common Questions of Law and Fact Predominate

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Predominance is satisfied when a plaintiff demonstrates that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).  The Supreme Court has expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]" *Amchem*, 521 U.S. at 625.

The common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each Class Member (*i.e.*, each Class Member purchased the common stock of Ideanomics during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions, and each Class Member was allegedly harmed when the undisclosed facts came to light).  Accordingly, the "predominance" requirement is satisfied.

### b.     A Class Action Is Superior to Other Methods of Adjudication

Rule 23(b)(3) outlines the following four factors to be considered by the Court in making a determination regarding superiority: (a) the interest of individual members in controlling the litigation; (b) the extent and nature of any litigation concerning the controversy already commenced; (c) the desirability or undesirability of concentrating litigation of the claims in a particular forum; and (d) the difficulties likely to be encountered in the management of the class

21

action.  *See Vivendi*, 242 F.R.D. at 91 (explaining that "[t]his list of pertinent factors is nonexhaustive").[3]  When considering these factors, several courts in this District have noted that "[c]lass actions are generally well-suited to securities fraud cases such as this one because they avoid the time and expense of requiring all class members to litigate individually."  *In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002); *Indep. Energy*, 210 F.R.D. at 486 ("There is also no question here that the class action device is superior to other methods of litigation.  Class actions are generally well-suited to securities fraud cases[.]").

The relevant factors are satisfied in this case.  First, prosecution of this lawsuit on a class action basis will be more efficient than adjudication of the numerous individual shareholder claims.  Indeed, the types of federal securities law violations alleged in this Action inflict economic injury on possibly hundreds of geographically dispersed investors, and pursuing individual litigation against well-financed corporate adversaries is not financially feasible for most investors.  Second, Lead Plaintiff and Lead Counsel have already invested significant resources thus far in preserving the claims of Ideanomics investors and prosecuting the claims asserted in the Action.  Any additional individual litigation would simply be duplicative of Lead Plaintiff's efforts.  As well, certification is the superior method to facilitate the resolution of the settlement Class's claims against Defendants because, absent certification, Defendants would not be able to obtain a Class-wide release and thus would have little incentive to enter into a settlement.  Accordingly, Lead Plaintiff has satisfied the superiority requirement of Rule 23(b)(3) and this Court should certify the proposed Settlement Class.

### 3.    The Faruqi Firm Is Adequate to Serve as Class Counsel

---

[3]    The fourth factor need not be considered because the proposed Settlement eliminates any manageability problems that may have existed here.  *See Amchem*, 521 U.S. at 620 (stating that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . .").

22

"[A] court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g).  Lead Plaintiff respectfully requests that the Court appoint the Faruqi Firm as Class Counsel for the Settlement Class.  The Faruqi Firm has, and will continue to, fairly and adequately represent the Settlement Class.  As explained in Section I.A.1, *supra*, proposed counsel is knowledgeable about the applicable law, experienced in handling class actions, has performed substantial work in pursuing the claims and in reaching a settlement, and has committed the necessary resources to representing the Settlement Class.  *See* Fed. R. Civ. P. 23(g)(1)(A).

## II.     THE PROPOSED PLAN AND FORMS OF NOTICE SHOULD BE APPROVED

When a settlement is proposed, class notice must meet the requirements of both Rules 23(c)(2) and 23(e) of the Federal Rules of Civil Procedure.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 379-80 (S.D.N.Y. 2013).  Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable).  In addition to being sent by an adequate delivery method, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.*; *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) (". . . Rule 23(e) requires notice that is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.").  The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements.  *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the

23

options that are open to them in connection with [the] proceedings.").

Plaintiff's proposed Notice, which will be sent by mail to potential Class Members with the Proof of Claim and Release form, has been carefully drafted to notify the Class of the Settlement's terms, the Class Members' rights in connection with the Settlement, and the date of the Final Approval Hearing in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process. For example, the Notice includes: (i) the case caption; (ii) a description of the Action's claims; (iii) a description of the Settlement Class; (iv) the names of counsel for the Settlement Class; (v) the maximum amount of attorneys' fees and expense reimbursement that will be sought; (vi) the Final Approval Hearing date; (vii) a description of the Class Members' opportunity to appear at the Final Approval Hearing; (viii) a statement of the deadline for filing objections to and exclusions from the Settlement; (ix) the consequences of exclusion; (x) the consequences of remaining in the Settlement Class; and (xi) the manner in which to obtain more information. *See, e.g.,* Stipulation, Ex. A-1 at 1-14.

The parties have agreed to use the traditional methods for notifying the Class Members: notification by mail, publication by wire service, publication in a national newspaper focusing on investors, and on a designated website. This manner of providing notice represents the best notice practicable under the circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process. *See Vargas*, 559 F. App'x at 26-27; *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 369 (S.D.N.Y. 1996) ("[N]otice by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort[.]'"). Accordingly, the content of the Notices and procedures for their dissemination are reasonably calculated to provide notice of the settlement to Class Members.

## III.   PROPOSED SCHEDULE

As outlined in the proposed Preliminary Approval Order submitted herewith, the parties

propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for Ideanomics to cause the Claims Administrator to be provided with a list of record owners | 7 calendar days after entry of the Preliminary Approval Order (Preliminary Approval Order ("PA") at ¶10) |
| Deadline for Claims Administrator to mail the Notice and Proof of Claim and Release to the list of record owners and publish them to the website ("Notice Date") | 21 business days after entry of the Preliminary Approval Order (PA at ¶11) |
| Deadline for publishing Summary Notice | 14 calendar days after the Notice Date (PA at ¶12) |
| Deadline for submitting Proofs of Claim and Release | 90 calendar days after the Notice Date (PA at ¶18) |
| Deadline for filing the motion in support of final approval of the Settlement and the application for attorneys' fees and expenses; | 35 calendar days before the Final Approval Hearing (PA at ¶25) |
| Deadline for filing the proof of mailing of the Settlement Notice, Proof of Claim and Release forms, and Summary Notice | 7 calendar days before the Final Approval Hearing (PA at ¶17) |
| Deadline for objections and exclusions | 21 calendar days before the Final Approval Hearing (PA at ¶¶19, 23) |
| Deadline for filing reply memoranda in response to any objections | 7 calendar days before the Final Approval Hearing  (PA at ¶25) |
| Final Approval Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience (PA at ¶5) |

## CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will: (a) preliminarily approve the proposed Settlement; (b) approve the proposed form and manner of providing notice; (c) certify the Class for settlement purposes; (d) appoint Lead Plaintiff as Class Representative and the Faruqi Firm as Class Counsel for settlement purposes; and (e) set a hearing date for the Final Approval Hearing.

Dated:  July 30, 2021                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  */s/ Katherine M. Lenahan*

25

Katherine M. Lenahan

Katherine M. Lenahan
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: klenahan@faruqilaw.com

*Attorneys for Lead Plaintiff Jaysukh Rudani*

26