**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAYSUKH RUDANI, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., ZHENG WU a/k/a BRUNO WU, BING YANG, and ROBERT BENYA<br><br>Defendants. | No: 1:19-cv-06741-GBD |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND....................................................... 3

ARGUMENT ................................................................................................................... 3

I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................................ 3

    A.    The Class Has Been Adequately Represented ........................................ 5

    B.    The Proposed Settlement Was Negotiated at Arm's Length ................................. 5

    C.    The Relief Provided for the Class Is Adequate........................................ 6

        1.    The Costs, Risks, and Delay of Trial and Appeal...................................... 7

            a.    The Complexity, Expense, and Likely Duration of the Litigation . 7

            b.    The Risks of Establishing Liability at Trial and Damages ............. 8

        2.    The Proposed Method for Distributing Relief Is Effective......................... 9

        3.    Terms of Attorneys' Fees and Timing of Payment.................................. 10

        4.    Related Agreements .................................................................. 11

    D.    The Settlement Treats Class Members Equitably.................................... 11

    E.    The Stage of the Proceedings and the Extent of Discovery Completed .............. 12

    F.    The Risks of Maintaining the Class Action Through Trial................................. 13

    G.    The Reaction of the Class ................................................................... 14

    H.    The Ability of Defendants to Withstand a Greater Judgment.............................. 15

    I.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation ................................................... 16

II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE.......... 18

III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS ................................................................................................. 20

IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................. 21

CONCLUSION.............................................................................................................. 22

i

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                                    **Page(s)**

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................................................16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................3, 14, 15, 18

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1775(JG)(VVP), 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ...........................18

*In re American Bank Note Holographics, Inc., Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................................................9

*In re AOL Time Warner, Inc. Sec. and ERISA Litig.*,
   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................................17

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)......................................................................................21

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015) ...............................................................................................14

*In re China MediaExpress Holdings, Inc. Shareholder Litig.*,
   No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ...............................10

*In re China Sunergy Sec. Litig.*,
   No. 07 Civ. 7895(DAB), 2011 WL 1899715 (S.D.N.Y. May 13, 2011)..................................17

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA),
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................. *passim*

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab.
   Litig.*,
   No. 17-md-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019) ....................................5

*In re Citigroup Sec. Litig.*,
   No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ..................................17

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................................15

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)......................................................................................................16

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...................................................................................................18, 19

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)....................................8

*In re FLAG Telecom Holdings Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........................8

*Frank v. Eastman Kodak, Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................................14

*In re Global Crossing Sec. and ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019)....................................................................................7

*In re GSE Bonds Antitrust Litig.*,
    No. 19-CV-1704 (JSR), 2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...................................5

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...............................10

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ..................................10

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)................................7

*In re iDreamsky Tech. Ltd. Sec. Litig. Sec. Litig.*,
    No. 1:15-cv-2514(JPO), 2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018)...................................10

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................................................17

*In re LivingSocial Marketing and Sales Practice Litig.*,
    298 F.R.D. 1 (D.D.C. 2013)................................................................................................11

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................3, 15, 16, 18

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020)..................................................................................11

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................................10

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)..................................................................................17

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ...............................................................6, 9, 16

*Patel v. Axesstel*,
    No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ......................20

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................4

*Rieckborn v. Velti PLC*,
    No. 13-cv-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ....................................13

*Rosenfeld v. Lenich*,
    No. 18-CV-6720 (NGG)(PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ..........................11

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................11

*Slomovics v. All For A Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) ............................................................................8

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................7

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
    No. 3:09CV1293 (VLB), 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ...............................17

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ..............................................................................8

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ................................................................................5

*In re Veeco Instruments, Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...................14, 18, 19

*In re Virtus Investment Partners, Inc. Sec. Litig.*,
    No. 15CV1249, 2018 WL 6333657 (S.D.N.Y. Dec. 4, 2018).................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................3

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................................18

iv

*Yang v. Focus Media Holding Ltd.*,
No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)....................6, 13

**Other Authorities**

Fed. R. Civ. P. 23 ..................................................................................................... *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Jaysukh Rudani ("Lead Plaintiff"), on behalf of himself and the putative Class, respectfully submits this memorandum of law in support of his motion for final approval of the $5,000,000 Settlement (the "Settlement Amount") reached in the above-captioned securities class action (the "Action") and approval of the Plan of Allocation (the "Plan").[1]  The Settlement's terms are set forth in the Stipulation.

**INTRODUCTION**

Lead Plaintiff, on behalf of himself and the putative Class, and defendants Ideanomics, Inc. ("Ideanomics" or the "Company"), Zheng Wu a/k/a Bruno Wu, Bing Yang, and Robert Benya (collectively, "Defendants") have reached a proposed Settlement of all claims asserted in the Action in exchange for $5,000,000 in cash.  In light of the significant risk that a smaller recovery—or no recovery at all—might be achieved if the Action were to proceed to trial, and the likely appeals that would follow, the Settlement represents a favorable result for the Class.

As discussed below and in the Lenahan Declaration, the Settlement resulted from arm's length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  Prior to reaching the Settlement, Lead Counsel, *inter alia*, thoroughly investigated the facts alleged in the Action, and researched the applicable law with respect to the Class's claims against Defendants and the potential defenses thereto.  *See,*

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated July 30, 2021 ("Stipulation"), ECF No. 107; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; (e) all references to the "Lenahan Declaration" or "Lenahan Decl." are to the Declaration of Katherine M. Lenahan filed herewith; (f) all references to the "RG/2 Declaration" or "RG/2 Decl." are to the Declaration of Tina Chiango Regarding: (A) Dissemination of Notice to the Class; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections, filed herewith; and (g) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

*e.g.,* Lenahan Decl. ¶¶21-24.

The Class's reaction to the Settlement and Plan of Allocation to date has been positive. Pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") (ECF No. 115), the Court-approved Claims Administrator, RG/2 Claims Administration LLC ("RG/2"), has, *inter alia*, mailed over 24,642 copies of the Notice and Proof of Claim and Release form to potential Class Members and nominees, posted the requisite documents to the Action's settlement website, and caused the Summary Notice to be published in *Investor's Business Daily* and posted to *PR Newswire*. RG/2 Decl. ¶¶5-11; Lenahan Decl. ¶¶42-46. While the December 13, 2021 deadline for Class Members to object to the Settlement or request exclusion from the Class has not yet passed, as of November 29, 2021, no objections or requests for exclusion have been received. RG/2 Decl. ¶¶12-13; Lenahan Decl. ¶¶47-48.

In light of the considerations discussed herein, Lead Plaintiff and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, and due process; and is in the best interests of the Class. Lead Plaintiff accordingly requests that the Court: (i) grant final approval of the Settlement; (ii) find that the notice program fully satisfied the requirements of Federal Rule of Civil Procedure 23(e), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and the requirements of due process; (iii) find the Plan of Allocation to be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to Authorized Claimants; (iv) grant final certification of the proposed Class for settlement purposes; and (v) grant final appointment of Lead Plaintiff as Class Representative and Faruqi & Faruqi, LLP (the "Faruqi Firm") as Class Counsel.

**FACTUAL AND PROCEDURAL BACKGROUND**

To avoid undue repetition, Lead Plaintiff respectfully refers the Court to the accompanying Lenahan Declaration for a detailed discussion of the factual background and procedural history of the Action, the efforts undertaken by Lead Plaintiff and his counsel during the course of the Action, the risks of continued litigation, and a discussion of the negotiations leading to the Settlement. *See, e.g.,* Lenahan Decl. ¶¶11-39.

**ARGUMENT**

**I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL**

Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court approval. A court should approve a class action settlement if it determines that the settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014). Consequently, when exercising discretion to approve a settlement, courts are "mindful of the strong judicial policy" in favor of class action settlements. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005). As the Second Circuit has explained, while a court should not give "rubber stamp approval" to a proposed settlement, "it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002) (quoting *Detroit v. Grinnell*, 495 F.2d 448, 462 (2d Cir. 1974)).

At the final approval stage, courts consider the factors in recently amended Rule 23(e)(2), which provides that a court may grant final approval of a proposed settlement:

. . . only after a hearing and only on finding that it is fair, reasonable, and

3

adequate after considering whether:

(A)    the class representatives and class counsel have adequately represented the class;
(B)    the proposal was negotiated at arm's length;
(C)    the relief provided for the class is adequate, taking into account:
(i)    the costs, risks, and delay of trial and appeal;
(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

As explained in the Preliminary Approval Motion,[2] amended Rule 23(e)(2)'s factors do not displace the factors that the Second Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate"—the so-called "*Grinnell* factors." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (applying the Rule 23(e)(2) factors along with the *Grinnell* factors at the final approval stage) (citing *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019), for the proposition that "the new Rule 23(e) factors [] add to, rather than displace, the *Grinne[ll]* factors[]")).  The *Grinnell* factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class [action] through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Payment Card*, 330 F.R.D. at 29 (citing, *inter alia*, *Grinnell*, 495 F.2d at 463).  To find that a

---

[2]    "Preliminary Approval Motion" or "PA Motion" refers to Lead Plaintiff's Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement.  ECF No. 109.

settlement is substantively fair, reasonable, and adequate, not every factor needs to be satisfied, but "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003).

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant *Grinnell* factors have been met. Courts that have analyzed the amended Rule 23(e)(2) factors have found that the factors are usually satisfied where, as here, little has changed between preliminary and final approval. *See In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue "already explained in detail why the Rule 23 and *Grinnell* factors support approval[,]" readopting that analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis); *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting preliminary approval "stand and counsel equally in favor of final approval now"). Nevertheless, the factors are further discussed below.

### A.   The Class Has Been Adequately Represented

Rule 23(e)(2)(A) is satisfied because Lead Plaintiff and Lead Counsel have adequately represented the Class throughout the litigation, and will continue to do so through the Settlement administration process. *See* PA Motion at 5-6 (explaining Lead Plaintiff's and Lead Counsel's adequacy); *see generally* Lenahan Decl.

### B.   The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's-length negotiations between Lead Counsel and Defendants' counsel. Prior to engaging in

negotiations with Defendants, Lead Counsel conducted considerable investigation and analysis of the hurdles facing this litigation, the facts and law supporting the claims against Defendants, and the defenses available to them.  *See* Lenahan Decl. ¶¶16-21.  Thereafter, Counsel engaged in a mediation session with Jed S. Melnick, Esq, a "highly qualified mediator," *Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014), after submitting mediation statements and exhibits, and then worked over the subsequent months to finalize the terms of the Settlement Stipulation.  Lenahan Decl. ¶¶23-24.  The mediation process provides compelling evidence that the Settlement is not the product of collusion.  *See Christine Asia*, 2019 WL 5257534, at *9 ("[T]he participation of a neutral and respected mediator is an indicator of a settlement's procedural fairness.") (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure")).

In this Circuit, a strong presumption of fairness attaches to a class action settlement, like this one, that is reached through arm's length negotiations among able and experienced counsel. *See, e.g., Yang*, 2014 WL 4401280, at *5 (citing *Wal-Mart*, 396 F.3d at 116); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Accordingly, the Settlement is entitled to the presumption of procedural fairness under Second Circuit caselaw, and satisfies Rule 23(e)(2)(B).

### C.    The Relief Provided for the Class Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Class is adequate, taking four specific considerations into account.  Each of these considerations is addressed below, along with the *Grinnell* factors that overlap with them.

**1.      The Costs, Risks, and Delay of Trial and Appeal**

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is

adequate when taking into account the costs, risks, and delay of trial and appeal.  Fed R. Civ. P.

23(e)(2)(C)(i).  This inquiry overlaps with *Grinnell* factors one, four, and five: the "complexity,

expense and likely duration of the litigation," the "risks of establishing liability" and "the risks of

establishing damages."  *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693-94

(S.D.N.Y. 2019) (noting the overlap).  These factors are addressed below.

**a.      The Complexity, Expense, and Likely Duration of the Litigation**

This Action would likely be complex, costly, and lengthy.  *See Strougo v. Bassini*, 258 F.

Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a shareholder or class member was willing to

assume all the risks of pursuing the actions through further litigation and trial, the passage of

time would introduce yet more risks . . . and would, in light of the time value of money, make

future recoveries less valuable than this current recovery."); *Hicks v. Morgan Stanley*, No. 01

Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would

necessarily involve further costs [and] justice may be best served with a fair settlement today as

opposed to an uncertain future settlement or trial of the action.").

Without this Settlement, the Action would have proceeded to the fact discovery process

which would undoubtedly be time-consuming and expensive, particularly in light of the fact that

Defendants have represented that much of the relevant discovery in located in China.  *See*

Lenahan Decl. ¶¶27-28; PA Motion at 8-9 (explaining the obstacles to obtaining discovery in

China).

In addition to the complicated discovery process, the parties would also have to brief

motions for class certification and summary judgment, and prepare for trial, which would likely

"be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court[.]" *Christine Asia*, 2019 WL 5257534, at \*10.  Even a favorable judgment could be the subject of post-trial motions and appeals, delaying any payment to Class Members even if Lead Plaintiff were to prevail at trial.  *See Slomovics v. All For A Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class.").  Thus, the complexity, expense, and likely duration of the Action weigh in favor of final approval of the Settlement.

> **b.    The Risks of Establishing Liability at Trial and Damages**

Securities class action cases are particularly "difficult and notoriously uncertain" with respect to both liability and damages issues.  *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999); *see also In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400 (CM)(PED), 2010 WL 4537550, at \*15 (S.D.N.Y. Nov. 8, 2010) (similar).  This Action would be no exception, and the fact discovery process would require, among other things, discovery into the different areas of Ideanomics' then-businesses (*i.e.*, supply chain monitoring, consumer electronics, and crude oil trading) at issue; producing and reviewing at least hundreds of thousands of pages of documents; taking numerous depositions; and retaining blockchain and financial expert witnesses.  Lenahan Decl. ¶28.  Furthermore, Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step.  *Id.* at ¶29.  Thus, even after the considerable time and expense of discovery, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment.

Additionally, the damages issues present in this case would boil down to a "battle of the experts" at trial, creating the risk that the jury may believe Defendants' expert over Lead Plaintiff's and find in Defendants' favor.  Lenahan Decl. ¶31; *In re EVCI Career Colleges*

8

*Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *8 (S.D.N.Y. July 27, 2007). Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See In re American Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) (stating that "[i]n such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also PaineWebber*, 171 F.R.D. at 129.

Thus, although Lead Plaintiff and Lead Counsel believe that the claims asserted in the Action are meritorious and would be borne out by the evidence, continuing the Action poses significant risks and additional costs that could result in the Class recovering nothing, let alone the certainty of the proposed $5,000,000 Settlement here.

### 2.     The Proposed Method for Distributing Relief Is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The method used in this Action is that traditionally used in securities class actions. Pursuant to the Preliminary Approval Order, beginning on October 21, 2021, 24,642 copies of the Notice and Proof of Claim were mailed to potential Class Members and nominees, and the Summary Notice was posted over *PR Newswire* on October 29, 2021 and published in *Investor's Business Daily* on November 1, 2021. RG/2 Decl. ¶¶5-10. Class Members have until December 13, 2021 to object to the Settlement or request exclusion from the Class. Although that date has not yet passed, to date, no objections to or requests for exclusion from the Settlement have been received. *Id.* ¶¶12-13; Lenahan Decl. ¶¶47-48. Additionally, the Settlement's claims process is similar to the process commonly used in securities class action settlements, and provides for cash payments to eligible class members based on their *pro rata* share of the recovery as established

9

by the trading information eligible class members provide. *See* Lenahan Decl. ¶¶52-55. This factor supports final approval for the same reason that it supported preliminary approval. *See* PA Motion at 10-11.

### 3. Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment." Consistent with the Notice, and as discussed in the Fee Motion, Lead Counsel seeks an award of attorneys' fees in an amount of 33.33% of the Settlement Fund, which is in line with recent fee awards in this District. *See, e.g., Guevoura Fund Ltd. v. Sillerman,* No. 1:15-CV-07192-CM, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of 33.3%); *In re iDreamsky Tech. Ltd. Sec. Litig. Sec. Litig.*, No. 1:15-cv-2514(JPO), 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (awarding attorney's fees of 33.3%); *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12 (S.D.N.Y. Dec. 19, 2014) (approving requested fee of 33 ⅓% of the $3.8 million settlement amount and collecting cases awarding that percentage).

Pursuant to the Stipulation, attorneys' fees are to be paid to Lead Counsel "immediately after the Court executes an order awarding such fees[,]" Stipulation ¶6.2, subject to Lead Counsel's obligation to repay in the event that such award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, Stipulation ¶6.3. The timing of payment is standard in class action cases and typically approved. *See, e.g., In re China MediaExpress Holdings, Inc. Shareholder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18, 2015) (awarding fees to class counsel to be paid "from the Settlement Fund within ten calendar days" of the entry of the final judgment or the fee order, if later, subject to an obligation to repay if the fee award does not become final or the settlement is voided, terminated, cancelled, reversed or modified); *In re NASDAQ Market-Makers Antitrust Litig.*, 187

F.R.D. 465, 479-80 (S.D.N.Y. 1998) (overruling objection regarding timing of fee award, stating, "[n]umerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter[,]" and collecting cases); *In re LivingSocial Marketing and Sales Practice Litig.*, 298 F.R.D. 1, 22 n.25 (D.D.C. 2013) (overruling objection to the "'quick pay' provision that allows class counsel to be paid in short order, even if an appeal is taken," as there is "ample authority" for it, and collecting cases).

### 4.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  The only agreement is the escrow agreement between Lead Counsel and the proposed Escrow Agent, with governs the deposit, investment, and disbursement of the Settlement Fund in terms consistent with the Stipulation. Therefore, this factor weighs in support of final approval.  *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG)(PK), 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021) (absence of supplemental agreement "poses no obstacle to" approval of settlement).

### D.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  That is exactly what the Settlement is designed to do.

As discussed in Section II, *infra*, the Plan of Allocation treats Class members equitably relative to each other, based on the timing of their purchases and acquisitions of Ideanomics common stock, and by providing that each Authorized Claimant shall receive their *pro rata* share of the Net Settlement Fund based on their recognized losses.  *See* RG/2 Decl., Ex. A at 9-13. "[C]ourts uniformly approve [a plan of allocation] as equitable" when it "allocates funds among Class members on a *pro rata* basis[.]"  *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-

11

CM-SDA, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020) (determining that the settlement treats class members equitably when "eligible claimants approved for payment by the Court will receive their *pro rata* share of the recovery[.]").  Thus, the Settlement treats class members fairly.

**E.      The Stage of the Proceedings and the Extent of Discovery Completed**

The Settlement was achieved after Lead Counsel, *inter alia*: (a) conducted a lengthy investigation by reviewing and analyzing publicly available information regarding Defendants, including SEC filings, online and newspaper articles, press releases, stock price movements, and earnings conference calls; (b) thoroughly researched the law relevant to Lead Plaintiff's claims; (c) consulted with investigators who conducted a background investigation including by contacting individuals likely to possess relevant information (d) prepared a detailed amended complaint with more than fifty pages of factual and legal allegations; (f) researched and drafted briefs in opposition to the motions to dismiss; (g) researched and drafted motions to strike the extrinsic evidence submitted in support of the motions to dismiss; (h) consulted with a damages expert to evaluate the Class's damages; and (i) participated in a mediation session.  *See* Lenahan Decl. ¶¶15-34, 63.

The Settlement was reached only after the parties had a comprehensive understanding of the potential risks and hurdles in continued litigation of this Action.  For example, as part of Lead Counsel's investigation into the relevant facts and law, Lead Counsel contemplated the strengths and weaknesses of each element that Lead Plaintiff would need to plead and prove to prevail on his claims.  If the litigation continued, Lead Plaintiff would have to plead and prove, *inter alia*, that Defendants' alleged misrepresentations and omissions were made with scienter. *See Christine Asia*, 2019 WL 5257534, at *12.  Scienter "is often the most difficult and controversial aspect of a securities fraud claim," *id.*, and Lead Counsel believes that this element

would be vigorously contested in this Action.  Lenahan Decl. ¶33.  Defendants would no doubt raise numerous challenges with respect to the Action's scienter allegations, posing a material risk that the Action would be dismissed at a later stage of the litigation, or at least require the parties to engage in an expensive, lengthy battle on this issue that would prolong the litigation and further deplete the Company's available funds.  *See* Section I.H, *infra*.  Although Lead Plaintiff and Lead Counsel strongly believe that the claims in the Action are meritorious, they acknowledge that the Court—or a jury—could disagree, leaving the Class with a lesser recovery than that provided by the Settlement, or none at all.

Thus, although the Settlement was achieved early in the litigation, Lead Plaintiff and Lead Counsel had gathered sufficient information regarding the strengths and weaknesses of the claims to meaningfully evaluate the decision to settle.  *See Yang*, 2014 WL 4401280, at *7 (finding that this factor supported settlement where "Plaintiff and Lead Counsel have some knowledge of the strengths and weaknesses of Plaintiff's claims and considerable knowledge about the limits on their ability to recover anything for the Class if they win . . ."); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) (explaining that *Grinnell* factor number three, "the stage of the proceedings and the amount of discovery completed[,] is intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them"); *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (finding that "[d]espite reaching settlement relatively early in the life span of this case, the Settling Parties have shown that their decision to settle was made on the basis of a thorough understanding of the relevant facts and law[,]" even though settlement was reached prior to even the filing of a motion to dismiss).

**F.      The Risks of Maintaining the Class Action Through Trial**

While Lead Plaintiff and Lead Counsel are confident that the class meets the

13

requirements for certification, *see* Section IV, *infra*, the Class has not yet been certified and Lead

Plaintiff is aware that there is a risk the Court could disagree.

For example, to prevail on a motion for class certification, Lead Plaintiff must show that

common issues predominate over individual ones. *See* Rule 23(b)(3); *Carpenters Pension Trust*

*Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 73-74 (S.D.N.Y. 2015). To meet this burden,

Lead Plaintiff would need to establish that the putative Class can invoke the fraud-on-the-market

presumption of reliance, which would require him to show, *inter alia*, that the market for

Ideanomics common stock was efficient during the Class Period. *See id.* at 77. At the class

certification stage, Defendants might argue that the market for Ideanomics common stock was

not efficient because institutional investors held relatively low amounts of its stock, and it was

not followed by any analysts during the Class Period. *See id.* at 91-92 (finding high institutional

holdings of the company's stock and the fact that a significant number of analysts followed the

company supported market efficiency).

Even if the Court were to certify the Class, there is always a risk that the Class could be

decertified at a later stage in the proceedings. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D.

174, 186 (W.D.N.Y. 2005) (acknowledging that while plaintiffs might ultimately prevail on class

certification were the settlement disapproved, "the risk that the case might be not certified is not

illusory and weighs in favor of the Class Settlement[]"). Thus, the risks and uncertainty

surrounding Class certification also supports approval of the Settlement. *See Advanced Battery*,

298 F.R.D. at 176 (stating that "[c]lass certification would have presented additional

complexities and obstacles[]" that weighed in favor of final approval of the settlement).

G.     **The Reaction of the Class**

The Class's reaction to the Settlement "is considered perhaps the most significant factor

to be weighed in considering its adequacy." *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05

14

MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007). In fact, the "absence of objections may itself be taken as evidencing the fairness of a settlement." *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014).

To date, a total of 24,642 copies of the Notice have been mailed to potential Class members and nominees. *See* RG/2 Decl. ¶9. Despite this large number of potential Class Members, no objections or requests for exclusion have been received. Lenahan Decl. ¶¶47-48.

Although the deadline to submit objections and exclusions (December 13, 2021) has not yet passed, the reaction of the Class so far has been positive, which supports final approval of the Settlement. *See Christine Asia*, 2019 WL 5257534, at *11 (finding that the class's reaction to the settlement supported approval where only a "few" class members opted out).

### H.    The Ability of Defendants to Withstand a Greater Judgment

Lead Counsel believes that the possibility of achieving a greater recovery than that provided by the Settlement is unlikely. The Settlement Amount will be funded by Defendants and/or their insurer. *See* Stipulation ¶2.1. It is Lead Plaintiff and Lead Counsel's understanding that greater recovery is unlikely because the Company's cash on hand is earmarked to fund operations and certain business plans. Additionally, Ideanomics has a large self-insured retention on its relevant insurance policy that requires the Company to spend a substantial sum on litigation before insurance covers any costs, and is required to indemnify the other defendants. As well, at the time of the settlement negotiations, the potential funds were being depleted by costs related to operating Ideanomics's business as well as costs related to an ongoing SEC investigation and several additional derivative and securities actions. *See* Lenahan Decl. ¶33; *see Maley*, 186 F. Supp. 2d at 365 (noting the depletion of the defendants' insurance policies as a factor in evaluating whether a greater recovery could have been obtained); *Advanced Battery*,

15

298 F.R.D. at 178 (noting that the defendants' "minimal insurance coverage" supported approval of the settlement).

If the additional litigation of this Action were to deplete all of the available funds at a later stage of the proceedings after significant time and energy had been invested to reach a resolution, the Class might be left with only the Individual Defendants as sources of recovery. Lenahan Decl. ¶33. Additional recovery from the Individual Defendants would require establishing their individual roles in the alleged fraud, including their respective scienter. *See id; see also Maley*, 186 F. Supp. 2d at 365 (finding that greater recovery was unlikely given the company's financial condition and the difficulty of establishing the individual defendants' liability under the securities laws).

In any event, even if Defendants could withstand a greater judgment, this factor is generally not determinative where, as here, "other *Grinnell* factors weigh heavily in favor of settlement." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (affirming district court's decision to approve the proposed settlement even though the "defendants' ability to withstand a higher judgment weighed against the settlement").

## I. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the Settlement Amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the settlement falls within a "range of reasonableness." *See PaineWebber*, 171 F.R.D. at 130. This "range" has been described by the Second Circuit as one that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in

16

taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Here, the $5,000,000 Settlement Amount represents approximately 6.08% of the Class'

maximum potential damages (assuming all claims and damages were proven) that Lead

Plaintiff's expert estimated the Class sustained as a result of Defendants' alleged fraudulent

activity. *See* Lenahan Decl. ¶60. This is materially higher than the median ratio of settlement

amounts to investor losses for 2020, which NERA Economic Consulting determined was 1.7%.

*See id.*, Ex. 2 (NERA Report) at 20. This result is well within the range of typical recoveries in

complex securities litigation approved in this Circuit. *See, e.g.*, *In re Citigroup Sec. Litig.*, No.

09 MD 2070 (SHS), 2014 WL 2112136, at *5 (S.D.N.Y. May 20, 2014) (determining settlement

amount equal to 2% of the class's estimated losses "falls squarely within this range of

reasonableness"); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 3:09CV1293 (VLB), 2012 WL

3589610, at *7 (D. Conn. Aug. 20, 2012) (settlement amount equal to 3.5% of the estimated

damages "is well within the range of reasonableness"); *In re China Sunergy Sec. Litig.,* No. 07

Civ. 7895(DAB), 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that "average

settlement amounts in securities fraud class actions where investors sustained losses over the past

decade . . . have ranged from 3% to 7% of the class members' estimated losses"); *In re Initial

Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 483-85 (S.D.N.Y. 2009) (finding settlement equal

to 2% of aggregate expected recovery to be reasonable).

Given the great risk and expense of continued litigation, the proposed Settlement offers

the opportunity to provide immediate relief to the Class, rather than a speculative payment years

in the future. *See In re AOL Time Warner, Inc. Sec. and ERISA Litig.*, No. MDL 1500, 2006 WL

903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where the settlement fund is in escrow and earning

interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a

17

hypothetical post-trial recovery"); *Maley*, 186 F. Supp. 2d at 366-67.

Accordingly, Lead Plaintiff respectfully submits that the Settlement's immediate cash benefit is well "within the range of reasonableness" in light of the best possible recovery and all the attendant risks of litigation.

## II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The standard for approval of the Plan of Allocation is the same as that for approving the settlement: "it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). Generally, "the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable under the particular circumstances of the case." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775(JG)(VVP), 2015 WL 5918273, at *4 (E.D.N.Y. Oct. 9, 2015). "Allocation formulas, including certain discounts for certain securities, are recognized as an appropriate means to reflect the comparative strengths and values of different categories of the claim[,]" and "[t]here is no rule that settlements benefit all class members equally[.]" *Veeco*, 2007 WL 4115809, at *13. "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *Advanced Battery*, 298 F.R.D. at 180.

In developing the Plan of Allocation, which is set forth in the Notice, Lead Plaintiff enlisted the help of a damages consultant, Stanford Consulting Group, Inc., who was familiar with the various damages issues in this Action, as well as the Claims Administrator which has many years of experience implementing plans of allocation in securities class actions. *See* Lenahan Decl. ¶54. The Plan of Allocation's objective is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their respective losses attributable to the alleged fraud, consistent with the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). In *Dura*, the Supreme Court stated that securities fraud plaintiffs

18

must prove that "defendant's misrepresentations caused the loss for which the plaintiff seeks to recover." *Id.* at 345-56.  Consistent with *Dura*, the Plan of Allocation does not compensate Class Members for losses resulting from "in and out transactions"—*i.e.,* losses suffered on sales made before any corrective disclosures—but only for those losses attributable to the alleged fraud and stock drops alleged.  *See Dura*, 544 U.S. at 342 (explaining that if "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss[]").

Specifically, after Authorized Claimants submit their Proof of Claim forms and supporting documents, the Claims Administrator will calculate each Authorized Claimants' Recognized Loss according to a formula that will take into account when and at what price they purchased or otherwise acquired Ideanomics common stock and when such stock was sold.  *See* Lenahan Decl. ¶53.  In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased or otherwise acquired Ideanomics common stock during the Class Period and held their shares through at least one of the corrective disclosures set forth in the Plan of Allocation as derived from the complaint.  *See id*.  The amount recovered will vary depending upon when in relation to the corrective disclosures each share was sold.  *See id*.

The terms of the Plan of Allocation were fully disclosed in the Notice that was mailed to thousands of potential Class Members and nominees and posted on the Action's website.  *See* Lenahan Decl. ¶55.  To date, no objections to the Plan have been received.  *See id*.  Thus, for the reasons set forth herein and in the Lenahan Declaration, Lead Plaintiff respectfully requests that the Court approve the Plan of Allocation as fair, reasonable, and adequate.  *See Veeco*, 2007 WL 4115809, at *13-14 (approving plan of allocation where no class members objected to it and it was consistent with *Dura* because "it provides for the distribution of the Net Settlement Fund on

19

a proportionate basis, using a formula based on the decline in the price of Veeco stock following the disclosure[]”); *Christine Asia*, 2019 WL 5257534, at *15 (finding a plan of allocation “fair and adequate” where it “has a clear rational basis, equitably treats the class members, and was devised by experienced and estimable class counsel[]”); *Patel v. Axesstel*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015) (finding Plan of Allocation to be “fair, reasonable, and adequate[,]” where it “allocates the settlement fund proportional to the actual injury of each class member[]”).

### III.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class action settlement must meet the requirements of Rule 23, the PSLRA, and the due process clause of the United States Constitution.  Rules 23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members “the best notice that is practicable under the circumstances” and “in a reasonable manner.”  The PSLRA and the due process clause impose similar requirements.

The Court preliminarily approved the form, content, and method of dissemination of the Notices provided to potential Class Members.  *See* Lenahan Decl. ¶4, Ex. 1.  Pursuant to the Preliminary Approval Order, the Notice and Proof of Claim and Release form have been mailed to 24,642 potential Class Members and nominees beginning on October 21, 2021.  *See* RG/2 Decl. ¶¶5-9; Lenahan Decl. ¶8.  The Notice and Proof of Claim form were also made available on the settlement website, along with the Stipulation and its exhibits, and the Preliminary Approval Order.  *See* RG/2 Decl. ¶11; Lenahan Decl. ¶¶8, 43.  The Summary Notice was posted by *PR Newswire* on October 29, 2021 and published in *Investor’s Business Daily* on November 1, 2021.  *See* RG/2 Decl. ¶10; Lenahan Decl. ¶¶8, 43.  Additionally, RG/2 has set up a toll-free telephone helpline to accommodate potential Class Members who have questions regarding the

20

Settlement.  *See* RG/2 Decl. ¶11; Lenahan Decl. ¶44.

Pursuant to the requirements of Rule 23, the due process clause, and the PSLRA, the Settlement Notice included: (i) the case caption; (ii) a description of the Action's claims; (iii) a description of the settlement Class; (iv) the names of counsel for the settlement Class; (v) the maximum amount of attorneys' fees and expense reimbursement that will be sought; (vi) the Final Approval Hearing date; (vii) a description of the Class Members' opportunity to appear at the Final Approval Hearing; (viii) a statement of the deadline for filing objections to and exclusions from the Settlement; (ix) the consequences of exclusion; (x) the consequences of remaining in the Settlement Class; and (xi) the manner in which to obtain more information.  *See* RG/2 Decl., Ex. A; Lenahan Decl. ¶46.

Courts in this Circuit have routinely found that this method of mailing, publication, and internet notice satisfies the applicable notice standards in similar class actions.  *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *16; *In re Virtus Investment Partners, Inc. Sec. Litig.*, No. 15CV1249, 2018 WL 6333657, at *4 (S.D.N.Y. Dec. 4, 2018).  Thus, Lead Plaintiff respectfully requests that the Court find the notice program satisfies the requirements of Rule 23, the PSLRA, and due process.

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for Settlement Purposes.  *See* PA Order ¶¶2-4.  Since the entry of that Order, no circumstances have changed to alter the propriety of the Court's certification and appointments.  *See In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally certifying a settlement class where there had been no material changes since the court preliminarily certified the class).  Thus, pursuant to Rules 23(a) and (b)(3), and for reasons set forth below and in further detail on pages 16-23 of the Preliminary Approval Motion, Lead

21

Plaintiff respectfully requests that the Court finally certify the following Class for purposes of

Settlement:

> All Persons who purchased or otherwise acquired the publicly traded common stock of Ideanomics listed on the NASDAQ or domestically in the United States between February 1, 2017 and November 13, 2018, inclusive, and were damaged thereby. Excluded from the Class are: (a) Defendants; (b) the officers and directors of the Company at all relevant times; (c) members of any Defendant's immediate families; (d) any entity in which Defendants have or had a controlling interest or which is related to or affiliated with any of the Defendants; (e) the legal representatives, heirs, successors, and assigns of such excluded Persons; (f) those who purchased or otherwise acquired Ideanomics common stock on foreign exchanges, in accordance with the United States Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) ("It is in our view only transactions in securities listed on domestic exchanges, and domestic transactions in other securities, to which §10(b) applies."); and (g) any Persons who exclude themselves by submitting a request for exclusion that is accepted by the Court.

Stipulation ¶1.4.  Lead Plaintiff also respectfully requests that the Court appoint Jaysukh Rudani

as Class Representative and the Faruqi Firm as Class Counsel as they have adequately

represented the Class throughout the Action and will continue to do so.

## CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court: (a) grant

final approval of the Settlement; (b) find that the notice program fully satisfied the requirements

of Federal Rule of Civil Procedure 23(e), the Private Securities Litigation Reform Act of 1995,

15 U.S.C. § 78u-4(a)(7), and the requirements of due process; (c) find the Plan of Allocation to

be a fair, reasonable, and adequate method for distributing the Net Settlement Fund to

Authorized Claimants; (d) grant final certification of the proposed Class for settlement purposes;

and (e) grant final appointment of Lead Plaintiff as Class Representative and the Faruqi Firm as

Class Counsel for settlement purposes..

Dated: November 29, 2021        Respectfully submitted,


By: */s/ Katherine M. Lenahan*
      Katherine M. Lenahan

Katherine M. Lenahan
Megan M. Remmel
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: klenahan@faruqilaw.com
      mremmel@faruqilaw.com

*Attorneys for Lead Plaintiff Jaysukh Rudani*

23