**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAYSUKH RUDANI, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., ZHENG WU a/k/a BRUNO WU, BING YANG, and ROBERT BENYA, <br><br> Defendants. | No: 1:19-cv-06741-GBD |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

I.   LEAD COUNSEL'S ATTORNEYS' FEES REQUEST IS FAIR
     AND REASONABLE ....................................................................................... 3

     A.   Lead Counsel Seeks An Award Of Attorneys' Fees From
          The Common Fund .................................................................................. 3

     B.   The Percentage-Of-The-Fund Method Of Determining Fees Is Appropriate
          And Preferable ........................................................................................ 3

     C.   Attorneys' Fees Of 33.33% Of The Settlement Fund Are Fair, Reasonable,
          And Comparable To Fees Awarded In This District In Similar Cases................... 4

     D.   The *Goldberger* Factors Strongly Support The Requested Fees ............................ 5

          1.   The Time and Labor Expended by Lead Counsel ..................................... 5

          2.   The Magnitude and Complexity of the Litigation ..................................... 7

          3.   The Risks of the Litigation ........................................................................ 7

          4.   The Quality of Representation.................................................................... 9

          5.   The Requested Fees in Relation to the Settlement.................................... 10

          6.   Public Policy Considerations .................................................................... 10

     E.   The Settlement Class's Reaction to the Fees Request ......................................... 11

     F.   The Requested Attorneys' Fees Are Also Reasonable Under A
          Lodestar Cross-Check............................................................................. 12

II.  LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN
     CONNECTION WITH THIS ACTION .......................................................... 14

CONCLUSION............................................................................................................ 15

**TABLE OF AUTHORITIES**

| Cases | Page(s) |
|---|---|

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................14

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) .........................................................................2

*In re Am. Int'l Group, Inc. Sec. Litig.*,
    No. 04 Civ. 8141 (DAB), 2012 WL 345509 (S.D.N.Y. Feb. 2, 2012) ....................................11

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10 Civ. 4825 (JLC), 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013)....................................7

*In re Beacon Assocs. Litig.*,
    No. 09 Civ. 777 (CM), 2013 WL 2450960 (S.D.N.Y. May 9, 2013)..................................4, 12

*In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................7

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).........................................................................................3

*Catagna v. Madison Square Garden, L.P.*,
    No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)...............................9

*Christine Asia Co., Ltd. v. Yun Ma*,
    No. 1:15-md-02631 (CM) (SDA),
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...............................................9, 13, 14

*City of Providence v. Aeropostale, Inc.*,
    No. 11 Civ. 7132 (CM), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)....................................3

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)..............8, 10, 12

*Fogarazzo v. Lehman Bros.*,
    No. 03 Civ. 5194 (SAS), 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ........................7, 10, 15

*In re Giant Interactive Group, Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................7

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................7, 14, 15

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000).................................................................3, 4, 5, 12

*Guevoura Fund Ltd. v. Sillerman*,
    No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ........................10, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-Civ-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................... *passim*

*Hicks v. Morgan Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)......................4, 10, 11

*In re iDreamsky Tech. Ltd. Sec. Litig.*,
    No. 1:15-cv-2514(JPO), 2018 WL 8950640 (S.D.N.Y. Apr. 6, 2018)...................................10

*In re IMAX Sec. Litig.*,
    No. 06 Civ. 6128 (NRB), 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ............................4, 14

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................................................14

*Maley v. Del. Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002).............................................................................. *passim*

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................................10

*In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................................4, 7

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) .........................................8

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) .........................................................................................13

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008).......................................................................4, 5, 7, 13

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) .......................................................................................11

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695(CM), 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ...............................12

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods.*
    *Liability Litig.*,
    MDL No. 2672 CRB (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)..........................13

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a)(6) ...........................................................................................................4

Lead Counsel, Faruqi & Faruqi, LLP, respectfully submits this memorandum of law in support of its motion for an award of attorneys' fees and expenses.[1]

## INTRODUCTION

As discussed in Lead Plaintiff's Motion for Final Approval of the Class Action Settlement ("Final Approval Motion") filed concurrently herewith, Lead Plaintiff Jaysukh Rudani ("Lead Plaintiff"), on behalf of himself and the Class, has reached a proposed Settlement of this putative class action lawsuit (the "Action") pursuant to which defendants Ideanomics, Inc. ("Ideanomics" or the "Company"), Zheng Wu a/k/a Bruno Wu, Bing Yang, and Robert Benya (collectively, "Defendants") have agreed to cause to be paid a total of $5,000,000 in cash that, if finally approved, will result in the dismissal of all claims asserted in this Action and the release all Released Claims against the Released Parties.  The Settlement is the result of zealous prosecution of Lead Counsel throughout this Action and is a favorable result for the Class considering the significant risks that a smaller recovery—or ***no recovery***—might be achieved after a lengthy trial and likely appeals.

In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of attorneys' fees in the amount of 33.33% of the Settlement Fund, or $1,666,500 plus accrued interest,[2] and reimbursement of $34,469.01 in expenses reasonably incurred during the course of

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated July 30, 2021 ("Stipulation"), ECF No. 107; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; (e) all references to the "Lenahan Declaration" or "Lenahan Decl." are to the Declaration of Katherine M. Lenahan filed herewith; (f) all references to the "RG/2 Declaration" or "RG/2 Decl." are to the Declaration of Tina Chiango Regarding: (A) Dissemination of Notice to the Class; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections; and (g) all page references are to a document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.
[2]    The Settlement Fund is defined as "the Settlement Amount [$5,000,000] plus any accrued interest or income earned thereon."  Stipulation ¶1.30.

the Action.

The requested fee is fair and reasonable in light of the significant obstacles Lead Counsel has faced during prosecution of this Action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class.  In recognition of the risks undertaken and the effort expended by counsel in contingency fee cases, courts in this Circuit and throughout the United States routinely award fees of this size in complex securities cases with comparable recoveries.  The fairness of the requested fees also becomes evident when it is compared to Lead Counsel's lodestar of $943,092.50.  *See* Lenahan Decl. ¶64.  This results in a "lodestar multiplier" of approximately 1.77, which is reasonable as greater multipliers are often approved.  This litigation was prosecuted under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* ("PSLRA"), which was intended to make litigation of securities class action lawsuits significantly more challenging and burdensome on investors.  In recognizing the significant difficulty investors face under the PSLRA, retired Supreme Court Justice Sandra Day O'Connor recognized: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

Furthermore, the Class's reaction to date supports the request for fees and litigation expenses.  The deadline set by the Court for objections to the Settlement and requests for exclusion is December 13, 2021.  Lenahan Decl. ¶47.  Since notice was distributed to potential Class Members and nominees beginning on October 21, 2021, which informed potential Class Members that Lead Counsel would seek fees of up to 33.33% of the Settlement Fund plus expenses up to $40,000, no objections have been received.  *See* Lenahan Decl. ¶¶43, 48, 57.

2

As detailed below, the requested fees are fair and reasonable under the applicable standards in this Circuit.  Accordingly, Lead Counsel respectfully submits that the requested attorneys' fees, and reimbursement of expenses should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Lenahan Declaration for a detailed description of Lead Plaintiff's claims and the prosecution of this Action.

## ARGUMENT

### I.    LEAD COUNSEL'S ATTORNEYS' FEES REQUEST IS FAIR AND REASONABLE

#### A.    Lead Counsel Seeks An Award Of Attorneys' Fees From The Common Fund

Attorneys who recover a common fund for class members are entitled to receive reasonable attorneys' fees from that fund.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).  "The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf."  *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM)(GWG), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014); *see also Goldberger*, 209 F.3d at 47.  In addition to providing just compensation, an award of fair and reasonable attorneys' fees from a common fund serves to encourage skilled counsel to represent those who seek redress for injuries inflicted on a class and to discourage similar misconduct in the future.  *See Maley v. Del. Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).

#### B.    The Percentage-Of-The-Fund Method Of Determining Fees Is Appropriate And Preferable

The two methods used in the Second Circuit for calculating reasonable fees in class

3

actions are the percentage-of-the-fund method ("percentage method") and the lodestar method. *See Goldberger*, 209 F.3d at 47.  The Second Circuit favors the percentage method in common fund cases.  *See id.* at 48-49; *see also In re Merrill Lynch & Co. Inc. Research Reports Sec. Litig.* ("*Merrill Lynch Research*"), 246 F.R.D. 156, 171 (S.D.N.Y. 2007) ("The trend in the Second Circuit . . . has been to express attorneys' fees as a percentage of the total settlement . . . ").

District courts in this Circuit frequently use the percentage method to calculate lead counsel's awards in common fund cases and reserve the lodestar calculation to test the proposed award's fairness.  *See, e.g., In re Beacon Assocs. Litig.*, No. 09 Civ. 777 (CM), 2013 WL 2450960, at *5 (S.D.N.Y. May 9, 2013); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 WL 3133476, at *5 (S.D.N.Y. Aug. 1, 2012); *Hicks v. Morgan Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005).  Moreover, the percentage method is consistent with the PSLRA's provision that attorneys' fees in securities class actions should represent a "reasonable percentage" of the amount recovered for the class.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); 15 U.S.C. § 78u-4(a)(6).

The foregoing authority suggests that the Court should use the percentage method to calculate reasonable attorneys' fees in this Action.

### C.       Attorneys' Fees Of 33.33% Of The Settlement Fund Are Fair, Reasonable, And Comparable To Fees Awarded In This District In Similar Cases

The amount of attorneys' fees requested, 33.33% of the Settlement Fund, falls within the range of attorneys' fees often awarded by courts within the Second Circuit.  *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 WL 7323417, at *12-13 (S.D.N.Y. Dec. 19, 2014) (finding that 33⅓% attorneys' fee award was fair and reasonable and collecting cases awarding this amount); *Beacon*, 2013 WL 2450960, at *5 ("In this Circuit, courts routinely award attorneys' fees that run to 30% and even a little more of the amount of the common

4

fund."); *Telik*, 576 F. Supp. 2d at 587 & n.8 (finding that the requested 25% fee was "less than the attorneys' fees awards made by courts in this District and other courts within the Second Circuit," and collecting Second Circuit securities class action cases which granted attorneys' fees of 30-33.33%). Accordingly, substantial authority within this Circuit supports the attorney's fees requested in this complex securities Action.

**D.    The *Goldberger* Factors Strongly Support The Requested Fees**

In *Goldberger*, the Second Circuit set forth the factors that district courts should use to evaluate the reasonableness of the requested attorneys' fees. *Goldberger*, 209 F.3d at 50. The factors include the following: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id.* As discussed below, these factors as applied to this Action demonstrate that Lead Counsel's requested fee is fair and reasonable.

**1.    The Time and Labor Expended by Lead Counsel**

The requested fee is supported by the substantial time and diligent effort expended by Lead Counsel to achieve the Settlement in this Action. *See* Lenahan Decl. ¶¶56-66. As set forth in more detail in the Lenahan Declaration, Lead Counsel conducted a thorough investigation into Defendants' alleged fraud and committed extensive resources to developing the challenging, technical aspects of Lead Plaintiff's claims and overcoming the obstacles impeding the Class Members' recovery over two years of litigation. Over the course of 1,692.10 hours resulting in a lodestar of $943,092.50, Lead Counsel, *inter alia*:

- Conducted a lengthy investigation into the facts alleged in the Action, including reviewing and analyzing press releases, SEC filings, conference call transcripts, and stock price movements;

- Conferred with an investigator who conducted an investigation including by contacting individuals likely to possess relevant information;

- Prepared a detailed amended complaint containing more than 50 pages of factual and legal allegations;

- Conducted complex legal research in opposition to defendants' motions to dismiss;

- Drafted briefs in opposition to defendants' motions to dismiss and drafted motions to strike the extrinsic evidence submitted in support of the motions to dismiss;

- Prepared for, attended, and argued at the hearing on the motions to dismiss and the motions to strike;

- Consulted with a damages expert to determine the damages suffered by the Class and to better understand the issues facing recovery for the Class;

- Participated in settlement negotiations with opposing counsel and Jed D. Melnick, Esq., a well-respected and highly experienced mediator, and engaged in negotiations over the following months with opposing counsel to finalize the terms of the Stipulation;

- Drafted the Settlement Stipulation and attendant notice documents; and

- Prepared motions and briefs in support of preliminary approval of the settlement.

*See, e.g.*, Lenahan Decl. ¶¶63-66.

Lead Counsel will devote additional hours and resources to assisting potential Class Members with the completion and submission of their Proof of Claim and Release forms, monitoring the claims process, corresponding with the Claims Administrator, and responding to

6

Class Member inquiries. *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at \*7 (S.D.N.Y. Apr. 2, 2013). The significant amount of time and effort that Lead Counsel devoted to this case to obtain a $5,000,000 recovery, work that will continue even if the Settlement is approved, confirms the reasonableness of the 33.33% fee request.

### 2.     The Magnitude and Complexity of the Litigation

Securities class actions are notoriously complex and difficult to prosecute. *See, e.g., In re Bear Stearns Cos. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012); *Fogarazzo v. Lehman Bros.*, No. 03 Civ. 5194 (SAS), 2011 WL 671745, at \*3 (S.D.N.Y. Feb. 23, 2011); *Merrill Lynch Research*, 246 F.R.D. at 172. This litigation proved no exception, presenting substantial challenges from its inception.

As discussed in greater detail below and in the Lenahan Declaration, the magnitude and complexity of this Action support the award of Lead Counsel's requested fees.

### 3.     The Risks of the Litigation

Courts in this Circuit consider the risks of the litigation critical to determining the reasonableness of the requested fees. *See Telik*, 576 F. Supp. 2d at 592 (describing the risks of the litigation as "pivotal" to assessing the appropriateness of the requested fee award); *see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004). Among the types of litigation risks considered, "[t]he most salient is the attorneys' risk in accepting a case on a contingency fee. . . ." *In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011).

Lead Counsel prosecuted this Action on a contingent fee basis and did not receive any compensation for its services or reimbursement for litigation expenses for over two years. Lenahan Decl. ¶56. As described below, in the Lenahan Declaration, and the Final Approval

Motion, there were significant risks that Lead Counsel might not obtain any recovery for the Class and would not be compensated for its efforts. *See id.* ¶¶25-34. Indeed, losses in contingent-fee cases, particularly those brought under the PSLRA, are exceedingly expensive. There are numerous instances in which plaintiff's counsel expended a significant amount of money on litigation expenses and thousands of hours in contingency fee cases without receiving any recovery. *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment for defendants after eight years of litigation).

Lead Plaintiff and Lead Counsel continue to believe that the claims asserted in the Action are meritorious and that the evidence developed to date supports those claims. However, without the Settlement, the Litigation would have continued, posing significant risks and additional costs. For example, the Action would have proceeded to the fact discovery process which would undoubtedly be time-consuming and expensive, particularly because Defendants have represented that much of the relevant discovery in located in China. *See* Lenahan Decl. ¶¶27-28. Even if Lead Plaintiff could obtain the necessary discovery, Defendants would undoubtedly continue to aggressively pursue dismissal of Lead Plaintiff's claims at the summary judgment stage. *See id.* ¶¶30-33. Thus, while the AC did survive the Defendants' motion to dismiss, there is a material risk that Lead Plaintiff's claims might be dismissed after class certification, summary judgment, trial, or appeals. *See id*.

As a result, there was a significant chance that the Class would recover nothing at all, and that Lead Counsel would receive no reimbursement of expenses or fees for its work. Thus, Lead Counsel's assumption of the contingency fee risk in light of the risks posed by this complex securities class action strongly weighs in favor of the requested award. *See In re FLAG Telecom*

8

*Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *see also Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) (contingency fee risk supported the requested award).

### 4.    The Quality of Representation

The quality of the representation that Lead Counsel provided supports the reasonableness of the requested fee.  Lead Counsel is a national law firm with extensive experience representing investors in large, complex securities class actions.  *See* Lenahan Decl. ¶61, Ex. 3.  The favorable outcome in this case is attributable to Lead Counsel's experience, hard work, diligence, and determination.

Lead Counsel's efficient prosecution of the Class's claims also speaks to the quality of representation.  *See Maley*, 186 F. Supp. 2d at 373 ("A prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice."). Here, Lead Counsel achieved a favorable settlement for the Class early in the litigation, saving hundreds if not thousands of hours of legal time that may have increased its fees and expenses. *See Catagna v. Madison Square Garden, L.P.*, No. 09-cv-10211 (LTS)(HP), 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011).  Additionally, by settling early with Defendants whose available funds were being depleted due to, *inter alia*, costs related to operating Ideanomics's business, an SEC investigation, several derivative actions, and another securities class action, Lead Counsel helped maximize the Class' recovery by averting further litigation expenses which would have even further eroded the funds available.  *See* Lenahan Decl. ¶33.  Lead Counsel's early settlement of a complex securities class action also has "far reaching benefits in the judicial

9

system." *Maley*, 186 F. Supp. 2d at 373.

### 5.    The Requested Fees in Relation to the Settlement

To determine whether the requested fee is reasonable in relation to the settlement, Courts in this District compare the requested fee to those "awarded in similar securities class-action settlements of comparable value." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009).  The 33.33% fee requested here is on par with the range of fees awarded in comparable cases within the Second Circuit. *See, e.g., Guevoura Fund Ltd. v. Sillerman,* No. 1:15-CV-07192-CM, 2019 WL 6889901, at *15 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of 33.1/3% of a $7.5 million settlement); *In re iDreamsky Tech. Ltd. Sec. Litig.*, No. 1:15-cv-2514(JPO), 2018 WL 8950640, at *4 (S.D.N.Y. Apr. 6, 2018) (awarding attorneys' fees of 33.3% on a $4.15 million settlement);[3] *Hi-Crush*, 2014 WL 7323417, at *12 (awarding attorneys' fees of 33.3% on a $3.8 million settlement and noting that fees in the amount of 33.3% are "reasonable"); *Fogarazzo*, 2011 WL 671745, at *4 (awarding attorneys' fees of one third of the $6.75 million settlement); *cf. Hicks*, 2005 WL 2757792, at *9 (awarding fees of 30% on a $10 million settlement, and noting that such a fee award produced no windfall from a settlement that size).

Accordingly, this factor further supports Lead Counsel's requested fee award.

### 6.    Public Policy Considerations

Courts in this District have held that "[p]ublic policy concerns favor the award of reasonable attorneys' fees in class action securities litigation." *FLAG Telecom*, 2010 WL 4537550, at *29.  "[T]o attract well-qualified plaintiffs' counsel who are able to take a case to

---

[3]    The memorandum of law filed in *iDreamsky* in support of the fee award makes clear that the amount of attorneys' fees awarded, $1,383,333.33, represented one-third of the $4.15 million settlement amount. *See In re iDreamsky Tech. Ltd. Sec. Litig.*, No. 1:15-cv-02514(JPO), ECF No. 105 at 1 (Feb. 27, 2018).

trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005).

Moreover, attorneys' fees must be sufficient "to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC." *In re Am. Int'l Group, Inc. Sec. Litig.*, No. 04 Civ. 8141 (DAB), 2012 WL 345509, at *5 (S.D.N.Y. Feb. 2, 2012). As one court explained:

> Private actions to redress real injuries further the objectives of the federal securities laws by protecting investors and consumers against fraud and other deceptive practices. . . . To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding. The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts.

*Hicks,* 2005 WL 2757792, at *9.

As a practical matter, securities class action lawsuits, such as this one, can only be maintained if counsel can receive reasonable compensation for its successful representation of plaintiffs injured by violations of the federal securities laws. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 169 (S.D.N.Y. 1989) ("A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken."). Lead Counsel was willing to assume the considerable risks of this litigation and achieved a successful result for the Class through its efforts. Accordingly, public policy supports an award of the reasonable attorneys' fees and expenses requested herein.

### E.    The Settlement Class's Reaction to the Fees Request

Although not included among the *Goldberger* factors, the Settlement Class's reaction to the requested attorneys' fees "is entitled to great weight by the Court." *Maley*, 186 F. Supp. 2d

at 374.  Pursuant to this Court's Preliminary Approval Order, 24,642 copies of the Notice and

Proof of Claim and Release form were sent to potential Class Members beginning on October 21,

2021.  RG/2 Decl. ¶¶5-9.  Those documents were also made available on the Settlement's

website, www.rg2claims.com/ideanomics.html.  *Id.* ¶11.  Summary Notice was posted over *PR

Newswire* on October 29, 2021 and published in *Investor's Business Daily* on November 1, 2021.

*Id.* ¶10.  The Notice and Summary Notice (the "Notices") included all of the information

required by Federal Rule of Civil Procedure 23, due process, and the PSLRA, informing the

Class that Lead Counsel would apply for an award of up to 33.33% of the Settlement Fund plus

expenses not to exceed $40,000.  *See* RG/2 Decl., Ex. A.  The deadline for objection to the fee

request is December 13, 2021, as published in the Notices.  *Id.*  To date, no Settlement Class

Member has objected to the amount of attorneys' fees requested.  *In re Veeco Instruments Inc.

Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007)

(finding lack of any objections "suggests that the fee request is fair and reasonable").

    **F.    The Requested Attorneys' Fees Are Also Reasonable Under A Lodestar Cross-Check**

This Circuit encourages a lodestar cross-check on a requested fee award to evaluate its

reasonableness.  *See Goldberger*, 209 F.3d at 50; *Beacon*, 2013 WL 2450960, at *5.  To

determine the lodestar, the court multiplies the number of hours an attorney devoted to the

litigation by that attorney's hourly rate.  Then, by applying a multiplier, the court adjusts the

lodestar amount to reflect factors including the risks of litigation, the result obtained, and the

quality of representation.  *See, e.g., Hi-Crush*, 2014 WL 7323417, at *18; *FLAG Telecom*, 2010

WL 4537550, at *25-26.

Lead Counsel spent a total of 1,692.10 hours litigating this Action, resulting in a lodestar

of $943,092.50.  Lenahan Decl. ¶66.  The Faruqi Firm's hourly billing rates range from $595-

12

950 for partners, $475-550 for associates, and $275-400 for paralegals.  Lenahan Decl. ¶66.  To determine "the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have continually held that the standard is the rate charged in the community where the services were performed for the type of service performed by counsel," *i.e.*, the "market rate."  *Telik*, 576 F. Supp. 2d at 589.  Courts have found comparable rates charged by plaintiffs' counsel to be reasonable.  *See Christine Asia*, 2019 WL 5257534, at *20 (citing *In re Credit Default Swaps Antitrust Litig.*, No. 13 md 2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016), as approving fees based on a lodestar generated from 2016 partner rates of $834-$1,125 and associate rates of $411-$714));  *Hi-Crush*, 2014 WL 7323417, at *14 ("The rates billed by Lead Counsel (ranging from $425 to $825 per hour) for attorneys, are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude"); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 221 (S.D.N.Y. 2015) (finding typical hourly rates of $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals to be appropriate); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding lodestar cross-check supported the reasonableness of the requested fee award where "[t]he blended average hourly billing rate is $529 per hour for all work performed and projected, with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals[]").  Accordingly, the market rate supports the reasonableness of the hourly rate used by Lead Counsel in the calculation of its lodestar.

The hours worked by Lead Counsel are also reasonable.  While the Settlement was achieved early in the litigation, Lead Counsel performed a great deal of work on behalf of the Class in the years leading up to the Settlement.  *See* Section I.D.1, *supra*; Lenahan Decl. ¶¶56,

61.  Lead Counsel respectfully submits that the 1,692.10 hours worked in connection with this Action were necessary to achieve this favorable Settlement for the benefit of the Class and are therefore reasonable.  *See* Lenahan Decl. ¶¶56, 61-66.

The requested attorneys' fees, 33.33% of the Settlement Fund, or $1,666,500 plus accrued interest, represents a multiplier of approximately 1.77 of Lead Counsel's lodestar.  *See* Lenahan Decl. ¶64.  This multiplier is similar to those typically awarded in securities class actions in this District and confirms the reasonableness of the requested fees.  *See Christine Asia*, 2019 WL 5257534, at *19 (approving requested fees with a 2.15 multiplier); *Global Crossing*, 225 F.R.D. at 468 (approving requested attorneys' fees with a 2.16 multiplier, which "falls comfortably within the range of lodestar multipliers . . . used for cross-check purposes in common fund cases in the Southern District of New York"); *Maley*, 186 F. Supp. 2d at 368 ("[A] multiplier of 4.65 [is] well within the range awarded by courts in this Circuit and courts throughout the country.").

## II.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN CONNECTION WITH THIS ACTION

Pursuant to the Notices, Lead Counsel also respectfully requests reimbursement of $34,469.01 reasonably incurred in connection with prosecuting this Action.  *See* Lenahan Decl. ¶¶67-74.  It is well-established that "[c]ounsel is entitled to reimbursement from the common fund for reasonable litigation expenses."  *In re IMAX*, 2012 WL 3133476, at *6.  Courts in this Circuit frequently grant reasonable reimbursement requests from plaintiffs' counsel in common fund cases.  *See, e.g., In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (granting lead counsel's request for reimbursement of "out-of-pocket expenses reasonably and necessarily incurred" in prosecuting the action); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated

14

for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."). The expenses sought by Lead Counsel here are far lower than the expense awards courts have deemed reasonable for other settlements of comparable size. *See, e.g.*, *Guevoura Fund Ltd.*, 2019 WL 6889901, at *22 (awarding expenses in the amount of $248,213.01 for $7.5 million settlement); *Hi-Crush*, 2014 WL 7323417, at *18 (awarding $106,451.20 in expenses for a $3.8 million settlement); *Fogarazzo*, 2011 WL 671745, at *4 (S.D.N.Y. Feb. 23, 2011) (awarding expenses in the amount of $211,596.69 for a $6.75 million settlement).

Lead Counsel has itemized the categories of expenses it incurred and attests to its accuracy in the Lenahan Declaration. Lenahan Decl. ¶¶67-74, Ex. 5. Lead Counsel's expenses include fees paid to a fact investigator and damages consultant, mediation fees, court reporter fees, electronic research, photocopying, postage, and travel. Lenahan Decl. ¶¶69-73, Ex. 5. These expenses are those for which "the paying, arms' length market" routinely reimburses attorneys. *Global Crossing*, 225 F.R.D. at 468 (granting the requested reimbursement and categorizing the expenses—witnesses, filing fees, service of process, travel, legal research, document review—as those for which attorneys are often reimbursed). Furthermore, the requested reimbursement is less than the $40,000 in potential expenses that the Notices informed the Class about. *See* RG/2 Decl., Ex. A at 1.

Moreover, no objections to the expense request have been received. Lenahan Decl. ¶48. As such, the requested reimbursement should be awarded from the Settlement Fund.

## CONCLUSION

For the reasons stated above, Lead Counsel respectfully requests that the Court award attorneys' fees of 33.33% of the Settlement Fund and reimbursement of litigation expenses in the amount of $34,469.01, plus accrued interest.

15

Dated: November 29, 2021                    Respectfully submitted,


                                            By: */s/ Katherine M. Lenahan*
                                                    Katherine M. Lenahan

                                            Katherine M. Lenahan
                                            Megan M. Remmel
                                            **FARUQI & FARUQI, LLP**
                                            685 Third Avenue, 26th Floor
                                            New York, NY 10017
                                            Telephone: 212-983-9330
                                            Facsimile: 212-983-9331
                                            Email: klenahan@faruqilaw.com
                                                    mremmel@faruqilaw.com

                                            *Attorneys for Lead Plaintiff Jaysukh Rudani*

16