**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAYSUKH RUDANI, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>IDEANOMICS, INC. f/k/a SEVEN STARS CLOUD GROUP, INC. f/k/a WECAST NETWORK, INC., ZHENG WU a/k/a BRUNO WU, BING YANG, and ROBERT BENYA,<br><br>Defendants. | No: 1:19-cv-06741-GBD |

**DECLARATION OF KATHERINE M. LENAHAN IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, Katherine M. Lenahan, declare as follows:

1.      I am a member in good standing of the bar of the State of New York and am admitted to this Court.  I am a partner in the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Lead Counsel"), which represents Lead Plaintiff Jaysukh Rudani ("Lead Plaintiff") and the proposed Class in the above-captioned securities class action pending in this Court (the "Action").[1]  I have been actively involved in the prosecution of this Action and have personal

---

[1]      Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all internal citations and quotations are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement dated July 30, 2021 ("Stipulation"), ECF No. 107; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; (e) all references to the "RG/2 Declaration" or "RG/2 Decl." are to the Declaration of Tina Chiango Regarding: (A) Dissemination of Notice to the Class; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections; and (f) all page references are to a

1

knowledge of the matters set forth herein based upon my close supervision and participation in the Action. If called upon, I could and would competently testify that the following facts are true and correct.

## I.    PRELIMINARY STATEMENT

2.    I respectfully submit this Declaration in support of Lead Plaintiff's Motion for Final Approval of the Class Action Settlement ("Final Approval Motion"), as well as Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Fee Motion"). Both motions are filed concurrently herewith.

3.    Lead Plaintiff, on behalf of himself and the putative Class, and defendants Ideanomics, Inc. ("Ideanomics" or the "Company"), Zheng Wu a/k/a Bruno Wu ("Wu"), Bing Yang ("Yang"), and Robert Benya ("Benya") (collectively, "Defendants") have reached a proposed settlement of this Action for $5,000,000 in cash that, if approved, will resolve all claims in the Action.

4.    The terms of the Settlement are set forth in the Stipulation. The Court preliminarily approved the Stipulation by its Order Preliminarily Approving Settlement and Providing for Notice, dated September 21, 2021 (ECF No. 115) ("Preliminary Approval Order"), a true and correct copy of which is attached hereto as ***Exhibit 1***.

5.    This declaration sets forth the nature of the claims asserted, the procedural history of the Action, and the methods by which the Class was notified of the Settlement. It also demonstrates the reasons why the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and why Lead Counsel's application for attorneys' fees and reimbursement of expenses should be approved.

---

document's native pagination unless unavailable, in which case the ECF-stamped pagination is used.

6.      While Lead Counsel believes that the allegations in the Action have substantial merit, Lead Counsel respectfully submits that the Settlement represents a favorable result for the Class.

7.      The Settlement is the result of extensive arm's-length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  With the assistance of an esteemed mediator, counsel met for a mediation session to vigorously debate the strengths and weaknesses of the claims and defenses in the Action.  The parties came to an agreement in principle during the mediation session and thereafter engaged in negotiations over the following months to finalize the terms of the Stipulation.  Lead Counsel's ability to come to a compromise in light of the many complex issues present in this Action evidenced the skill of representation and the quality of the results.

8.      Pursuant to the Preliminary Approval Order, beginning on October 21, 2021, the Notice and Proof of Claim and Release form were mailed to 24,642 potential Class Members and nominees, and were made available on the designated settlement website, www.rg2claims.com/ideanomics.html along with the Stipulation and Preliminary Approval Order.  *See* RG/2 Decl., ¶¶5-9, 11.  The Summary Notice was timely posted by *PR Newswire* on October 29, 2021 and published in *Investor's Business Daily* on November 1, 2021.  *See id.* at ¶10.

9.      For more than two years, Lead Counsel has successfully overcome the significant obstacles that this Action has presented and adeptly navigated the complicated issues of law and fact inherent to a securities class action.  The Settlement provides an immediate and certain benefit to the Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which

could prolong the Action for years and incur significant additional expenses.  For these reasons, and those set forth more fully below, Lead Counsel respectfully submits that the Settlement is in the best interests of the Class and should be approved as fair, reasonable, and adequate.

10.     Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, the award of attorneys' fees in the amount of $1,666,500, plus accrued interest, and reimbursement of expenses in the amount of $34,469.01, plus accrued interest.  The fee award constitutes 33.33% of the Settlement Fund, which is in line with the amount of attorneys' fees awarded by courts in this Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the risks of representing the Class in this Action.  The expenses incurred by Lead Counsel were reasonable and necessary to prosecute this Action and to reach this favorable result for the Class.

## II.     SUMMARY OF LEAD PLAINTIFF'S CLAIMS

11.     This Action arises out of Defendants' allegedly false and/or misleading statements that are alleged to violate §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. *See, e.g.,* Amended Securities Class Action Complaint ("AC"), ECF No. 41, ¶¶1, 16.

12.     Briefly, the AC alleges that, during the Class Period, Defendants made three categories of false and/or misleading statements about the Company's businesses.  AC ¶3.  First, certain defendants touted Ideanomics' acquisitions of Sun Video Group HK Limited ("SVG") and Wide Angle Group Limited ("WAG") (collectively, the "Acquisitions")—from a private equity fund controlled by Wu ("BT Capital").  *Id.* at ¶¶3, 41-50, 54.  Specifically, they hyped the fact that the Acquisitions came with guarantees of $250 million in revenue and $15 million in

gross profit, which Ideanomics used to support its 2017 revenue guidance of $280 million (later raised to $300 million). *Id.* at ¶¶3, 41, 43, 45, 47, 49, 54. Meanwhile, Defendants failed to disclose that (1) in the quarter preceding the Acquisitions, SVG and WAG only generated $30 million in revenue and incurred a $0.4 million loss; and (2) the Acquisitions were primarily being run for experimental purposes and ***not*** to maximize revenues and profits. *Id.* at ¶¶3, 42, 44, 46, 48, 50. Second, on January 16, 2018, Ideanomics stated that it had generated oil revenues in Q4 2017 of $170 million, when revenues were in fact only $19 million at most. *Id.* at ¶¶3, 57-58. Third, after disappointing investors in 2017, Ideanomics, Wu, and Benya began touting the Company's successful integration of blockchain and artificial intelligence technology into its consumer electronics and crude oil businesses when no such integration had occurred. *Id.* at ¶¶3, 66-71.

13. The true facts came out gradually over time in disclosures on February 23, 2018, August 28, 2018, and November 14, 2018, each of which led to a decline in the price of Ideanomics's common stock. *See* ¶¶7-10, 13-14, 113-23.

14. Defendants have denied, and continue to deny, each and every claim and contention alleged by Lead Plaintiff in the Action. Defendants have expressly denied, and continue to deny, all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Defendants believe that Lead Plaintiff's allegations of fraud have no merit and that a class could not be certified under Rule 23. Defendants have also denied, and continue to deny, *inter alia*, the allegation that Lead Plaintiff or the Class have suffered damage, that the price of Ideanomics common stock was artificially inflated by reasons of alleged misrepresentations, non-disclosures

or otherwise, or that Lead Plaintiff or the Class was harmed by the conduct alleged in the Action. *See, e.g.*, Stipulation at 3-4.

## III.   PROCEDURAL HISTORY

15.     This Action began on July 19, 2019 when plaintiff Maria José Pinto Claro da Fonseca Miranda filed the initial class action complaint against Ideanomics and certain of its officers and directors in the United States District Court for the Southern District of New York, asserting claims against Defendants for violations of the federal securities laws under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  ECF No. 1.

16.     On October 7, 2019, District Judge George B. Daniels appointed Rudani as Lead Plaintiff and Faruqi & Faruqi, LLP as Lead Counsel, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3).  *See* ECF No. 36.

17.     Rudani filed the AC on December 4, 2019, naming as defendants Ideanomics; founder, Chairman, and CEO Wu; former CEO and director Yang; former Chief Financial Officer Federico Tovar ("Tovar"); and former President, Chief Revenue Officer, and director Benya.  ECF No. 41.  The AC alleged that defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder.  AC at ¶1.

18.     On January 17, 2020, defendants Ideanomics, Wu, Yang, and Benya filed a motion to dismiss the AC, ECF Nos. 51-53, and defendant Tovar filed a separate motion to dismiss, ECF Nos. 48-50.  Lead Plaintiff opposed both motions separately on March 2, 2020 (ECF Nos. 57, 61), and moved to strike the extrinsic evidence and related arguments submitted with each motion, *see* ECF Nos. 54-56, 58-60.

19.     After a hearing, on September 25, 2020 the Court granted Tovar's motion to dismiss and granted in part and denied in part the motion to dismiss by Ideanomics, Wu, Yang, and Benya. *See generally* ECF No. 88. The Court sustained Lead Plaintiff's Section 10(b) claims against Ideanomics, Wu, and Yang, but dismissed them as to Benya. *See id.* The Court sustained Plaintiff's control person claims under Section 20(a) against Wu, Yang, and Benya. *See id.* at 17. The Court denied Plaintiff's motions to strike. *See id.*

20.     On April 21, 2021, the parties engaged in a mediation session before Jed Melnick, Esq., a highly experienced securities litigation mediator at JAMS. Stipulation at 3. The mediation was preceded by submission of mediation statements and exhibits. *Id.* The parties came to an agreement in principle during the mediation session and thereafter engaged in negotiations regarding the complete terms of the settlement. *Id.*

## IV.    THE SETTLEMENT

### A.    Settlement Negotiations

21.     From the outset, Lead Counsel has tirelessly navigated the complicated issues present in the Action. Prior to engaging in settlement negotiations, Lead Counsel spent considerable time evaluating the facts and argument available in this Action through the following: (1) conducting an extensive investigation into the facts alleged in the Action, including retaining an investigator to conduct an investigation, as well as reviewing press releases, online and newspaper articles, SEC filings, conference call transcripts, and stock price movements; (2) preparing a detailed amended complaint containing more than fifty pages of factual and legal allegations; (3) conducting complex legal research in connection with drafting the detailed amended complaint, motion to dismiss opposition briefs, and motions to strike; (4) drafting briefs in opposition to the motions to dismiss; (5) drafting motions to strike the extrinsic

evidence submitted in support of the motions to dismiss; (6) preparing for and arguing in opposition to the motions to dismiss and in support of Lead Plaintiff's motions to strike at the hearing on the motions; (7) consulting with a damages expert; and (8) preparing for the settlement negotiations, including drafting a detailed mediation statement.

22.    With the benefit of this extensive investigation and comprehensive analysis of the factual and legal issues in this Action, all Settling Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

23.    On April 21, 2021, the parties engaged in a mediation session before Jed Melnick, Esq., a highly experienced securities litigation mediator, for an arm's-length mediation session. *See* Stipulation at 3.  The mediation was part of an effort to explore possibilities for settlement. In advance of the mediation session, both sides submitted and exchanged mediation statements and exhibits.

24.    The parties came to an agreement in principle during the mediation session and then engaged in negotiations over the following months to finalize the terms of the Stipulation.

**B.    Reasons for the Settlement**

25.    Although Lead Plaintiff and Lead Counsel strongly believe that the claims asserted in this Action are meritorious and that the evidence developed to date supports them, they recognize and acknowledge the substantial expense and duration of continued proceedings that would be necessary to prosecute the Action.  Lead Plaintiff and Lead Counsel are also mindful of the inherent difficulty of proving claims under the federal securities laws and the possible defenses to the claims asserted in this Action, as well as the uncertainties presented by complex litigation.

26.     Lead Plaintiff acknowledges that, notwithstanding his ability to further develop factual support for his claims, there is a significant risk that the Court would rule in Defendants' favor on these issues at the summary judgment stage.  Defendants have denied, and continue to deny, Lead Plaintiff's allegations, and would undoubtedly continue to vigorously oppose the Action and mount strong defenses were the Action to continue.  Even if Lead Plaintiff's claims were to survive summary judgment, there is also a risk that the jury might be swayed by Defendants' theory of the case at trial, leaving the Class with very little recovery, or no recovery at all.

27.     Without the Settlement, Lead Plaintiff would have faced difficulty obtaining the necessary documents and depositions had the case proceeded to the formal discovery phase. Considering that the events alleged in the Action took place over the course of several years, beginning in 2016, the relevant documents may have been misplaced or inaccessible due to Chinese secrecy and privacy laws, former employees may be difficult to locate, and the memories of the parties involved in the actions alleged in the complaints may have faded.  In addition to these challenges, the process of obtaining the needed discovery from Defendants would have been time consuming and costly given that the majority of the evidence is allegedly located in China, and would have further delayed recovery for the Class.  The complexity of the allegations would have required the retention of additional experts, Chinese counsel, travel to and from China to oversee discovery efforts and ensure compliance with Chinese laws, and countless depositions, inconveniencing not only the Settling Parties, but third parties as well.

28.     For example, in order to develop the claims in the Action, the fact discovery process would require, among other things: navigating the Hague Convention; discovery into the different areas of Ideanomics' business (*i.e.*, supply chain monitoring, consumer electronics, and

crude oil trading) at issue; drafting discovery requests; engaging in protracted discovery motion practice; producing and reviewing at least hundreds of thousands of pages of documents; taking numerous depositions; and retaining blockchain and financial expert witnesses.

29.     Furthermore, Defendants have denied any wrongdoing and would undoubtedly aggressively litigate this Action at each step.  Thus, even after the considerable time and expense of discovery, there is a chance Lead Plaintiff's claims could be dismissed at summary judgment.

30.     Even if Lead Plaintiff were able to obtain the necessary discovery, the road to trial would involve numerous motions, including summary judgment, and require the preparation of expert reports and debate over witnesses, all of which would be time consuming and would monopolize valuable court resources.

31.     Assuming that Lead Plaintiff filed a successful class certification motion and the claims in the Action were able to survive Defendants' motion for summary judgment, and the case proceeded to trial, Lead Plaintiff might not recover anything for the Class.  While Lead Plaintiff is prepared to prove the complex factual and legal issues in this Action at trial, there is a substantial risk that the jury would not have agreed with his theory of the case.  For example, the parties fundamentally disagree about the amount of damages in this case should Plaintiff prove his claims. Often this essential element is reduced to a "battle of the experts."  A jury's reaction to conflicting expert testimony is unpredictable and Lead Plaintiff recognized the possibility that a jury could have been swayed by Defendants' experts and awarded little to no damages.  Even if Lead Plaintiff were to prevail at trial, Defendants might have appealed the decision.  The appeals process can go on for months or even years, significantly prolonging the Action and jeopardizing any recovery awarded to the Class at trial should Defendants be victorious.

32.    Notwithstanding the risks to recovery posed by a trial in this Action, the trial process is lengthy, complicated, and would be taxing on the Court and the attorneys involved.

33.    As well, further litigation of the Action would be costly, and would have significantly depleted the source of funding for the Settlement.  At the time of the settlement negotiations, the available funds were being depleted by, *inter alia*, costs related to operating Ideanomics's business as well as costs related to an ongoing SEC investigation of Ideanomics, several derivative actions, and another securities class action litigation.  If the additional litigation were to deplete all of the available funds at a later stage of the proceedings after significant time and energy had been invested to reach a resolution, the Class might be left with little or no recovery.  It is Lead Plaintiff and Lead Counsel's understanding that greater recovery from the Company is unlikely because the Company's cash on hand is earmarked to fund operations and certain business plans, which were disclosed to Lead Counsel subject to a mediation confidentiality agreement.  *See* PA Motion at 14-15.  Additionally, Ideanomics has a large self-insured retention on its relevant insurance policy that requires the Company to spend a substantial sum on litigation before insurance covers any costs, and it is "obligated to indemnify and advance expenses to certain individuals involved in certain of these proceedings[,]" Ideanomics, SEC Form 10-K at 19 (filed Mar. 31, 2021).  Although recovery from the Individual Defendants is possible, it would depend on establishing their individual roles in the alleged fraud, including their respective scienter.  Lead Counsel believes this would be an uphill battle.

34.    In contrast to the foregoing, the Settlement represents an immediate and certain benefit for the Class.  Lead Counsel, having evaluated the substantial risk, time, and expense required to prosecute this Action through trial and appeals, strongly believes that the Settlement is a favorable result for the Class.

11

## C.       The Settlement Terms

35.       The Settlement, which the Court preliminarily approved, provides for the gross payment of $5,000,000 to secure a settlement of the claims asserted in the Action against Defendants.  If approved, the Settlement will finally resolve Lead Plaintiff's allegations against Defendants and release all Released Claims against them in the Action.

36.       Defendants have denied liability and any wrongdoing as part of the Settlement, and they vigorously maintain that they are not liable to the Class.

37.       All eligible Class Members who timely submit valid Proof of Claim and Release forms will receive a distribution from the Net Settlement Fund, which is the Settlement Fund minus administration expenses, Lead Counsel's fees and expenses, and any Taxes and Tax Expenses.  The Court will be asked to approve the distribution of the Net Settlement Fund at a future date, once the administration is completed.

38.       The Settlement provides an immediate and substantial recovery to the Class, who faced a significant risk of a much smaller recovery or no recovery at all.  Given the complexities of the issues involved in the Action, Lead Plaintiff's entitlement to recovery would be correspondingly uncertain.  Moreover, there is still a considerable dispute between the Settling Parties over whether Defendants violated the securities laws at all.  This dispute could have resulted in further proceedings before the Court and would have required the expenditure of substantial additional judicial resources, time, and expenses.  Given these and other difficulties facing the Class at this point in the litigation, the Settlement provides a favorable guaranteed recovery.

39.     Based on this declaration and for the reasons set forth in the accompanying memoranda, Lead Plaintiff respectfully submits that the terms of the Settlement and the Plan of Allocation are fair, reasonable, and adequate.

## V.     THE COURT'S PRELIMINARY APPROVAL ORDER AND LEAD PLAINTIFF'S DISSEMINATION OF NOTICE

### A.     Preliminary Approval Order

40.     On July 30, 2021, Lead Plaintiff filed the Preliminary Approval Motion, seeking preliminary approval of the Settlement, preliminary certification of the Class, approval of the manner and content of the proposed notice, and scheduling of the Final Approval Hearing. *See* ECF Nos. 107-111.

41.     On September 21, 2021, the Court issued the Preliminary Approval Order, which:

a) Granted preliminary approval of the Stipulation and the Settlement set forth therein, subject to further consideration at the Final Approval Hearing;

b) Scheduled a Final Approval Hearing for January 25, 2022 at 10:00 a.m. to determine whether (1) the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate and should be approved; (2) the proposed final Judgment as provided in the Stipulation should be entered; (3) the proposed Plan of Allocation for the proceeds of the Settlement is fair, reasonable, and adequate and should be approved; and (4) Lead Counsel's application for attorneys' fees, and reimbursement of expenses should be granted;

c) Authorized Lead Counsel to retain RG/2 Claims Administration LLC ("RG/2") to supervise and administer the notice procedure as well as the processing of the claims;

d)   Approved the form, substance, and requirements of the Notice, Summary

Notice, and Proof of Claim and Release form, and approved the plan for

mailing, distribution, and/or publication of these documents;

e)   Directed RG/2 to cause a copy of the Notice and Proof of Claim and Release

form to be mailed by first class mail to the list of record holders of Ideanomics

common stock provided by the Company no later than October 21, 2021;

f)   Directed RG/2 to cause copies of the Stipulation and its exhibits, the

Preliminary Approval Order, the Notice, and the Proof of Claim and Release

form, to be posted on the Settlement's website,

www.rg2claims.com/ideanomics.html no later than October 21, 2021;

g)   Directed RG/2 to cause the Summary Notice to be posted by *PR Newswire*

and published in *Investor's Business Daily* no later than November 4, 2021;

h)   Directed Lead Counsel to serve on Defendants' Counsel and file with the

Court proof of such mailing and publication no later than January 18, 2022;

i)   Established procedures and deadlines for Class Member to object to the

Settlement, Plan of Allocation, or award of attorneys' fees, expenses, and to

appear at the Final Approval Hearing; and

j)   Established procedures and deadlines for Class Members to submit Proof of

Claim and Release forms or seek exclusion.

**B.    Notice**

42.    Pursuant to the Preliminary Approval Order, Lead Counsel served on Defendants'

Counsel and filed with the Court the RG/2 Declaration, filed concurrently herewith.  The RG/2

Declaration sets forth the efforts undertaken by RG/2 to mail the Notice and Proof of Claim and

14

Release form to Class Members, to publish the Summary Notice, and to establish the website

www.rg2claims.com/ideanomics.html and toll-free telephone line.

43.    As detailed in the RG/2 Declaration, beginning on October 21, 2021, RG/2 mailed

or caused to be mailed a total of 24,642 Notices and Proof of Claim and Release forms to

potential Class Members and nominees.  *See* RG/2 Decl. ¶¶5-9.  The Summary Notice was

posted by *PR Newswire* on October 29, 2021 and published in *Investor's Business Daily* on

November 1, 2021.  *See id.* at ¶10.

44.    Additionally, RG/2 established a telephone helpline to accommodate potential

Class Members who have questions about the Settlement.  *See id.* at ¶11.

45.    RG/2 also set up the website, www.rg2claims.com/ideanomics.html, to provide

information about the proposed Settlement to Class Members and others.  *See id.* at ¶11.  The

website makes available for viewing and downloading important documents, including the

Notice, Proof of Claim and Release form, and the Stipulation.  *See id*.  The website also lists the

exclusion, objection, and claim deadlines as well as the date and time of the Final Approval

Hearing.  *See id.*

46.    As required by Rule 23 of the Federal Rules of Civil Procedure, due process, and

the PSLRA, the Notice (a) described the nature of the claims asserted in the Action; (b) included

the case caption; (c) included a definition of the Settlement Class; (d) summarized the Settling

Parties' reasons for entering into the Settlement; (e) listed the name, telephone number, and

address for Lead Counsel; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to

33.33% of the Settlement Fund, plus reimbursement of expenses not to exceed $40,000; (g)

provided the date, time, and location of the Final Approval Hearing; (h) advised Settlement Class

Members of their right to appear at the Final Approval Hearing and instructed them that the date

may change; (i) advised Class Members of their right to exclude themselves from the Class and the binding effect of doing so; (j) provided the deadline and procedure for opting out of or opposing the Settlement, Plan of Allocation, or award of attorneys' fees and expenses; (k) explained the consequences of remaining in the Settlement Class; (l) provided the manner in which to obtain more information, including the address for the designated website; and (m) explained how to access the case docket at the courthouse or on PACER. *See* RG/2 Decl., Ex. A at 1-13.

### C.    Reaction of the Class

47.    The Notice provides that objections to the Settlement, Plan of Allocation, and/or the application for attorneys' fees and payment of expenses must be received no later than December 13, 2021. *See* RG/2 Decl., Ex. A at 1, 7-8.

48.    Although 24,642 Notices have been mailed to potential Class Members and nominees (*see* RG/2 Decl. ¶9), as of November 29, 2021, no objections to the Settlement, the Plan of Allocation, the attorneys' fee award, or the requested reimbursement of expenses have yet been received. *Id.* at ¶13.

49.    If any objections or requests for exclusion are received, they will be addressed in Lead Plaintiff's reply papers.

### D.    Plan of Allocation

50.    Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Class Members who wish to participate in the Settlement must submit a Proof of Claim and Release form with supporting documentation to RG/2 so that it is postmarked or submitted electronically no later than January 19, 2022. *See* RG/2 Decl., Ex. A at 1, 5.

16

51.     As set forth in the Notice, all Class Members who timely file a valid Proof of Claim and Release form and whose *pro rata* share of the Net Settlement Fund amounts to $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of, *inter alia*, attorneys' fees and expenses, and taxes incurred on the Settlement Fund.  *See, e.g.,* RG/2 Decl., Ex. A at 5, 12.  The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.  *See* RG/2 Decl., Ex. A at 9-13

52.     The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged misconduct as opposed to losses caused by market or industry factors not related to the alleged fraud.  *See, e.g.,* RG/2 Decl., Ex. A at 9.

53.     Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss, as explained in the Notice.  *See* RG/2 Decl., Ex. A at 9-13.  The calculation of a Recognized Loss will depend upon several factors, including when and for how much Class Members purchased or otherwise acquired their Ideanomics common stock during the Class Period, and whether those shares were sold, and if sold, when and for how much they were sold.  *See id.*  In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have held through at least one of the corrective disclosures set forth in the Plan.  *See id.* The Claims Administrator will use the Recognized Loss formula to determine each Authorized Claimant's *pro rata* share to proportionately allocate the Net Settlement Fund to the Authorized Claimants.  *See id.*

54.     The Plan of Allocation was formulated with the assistance of Lead Plaintiff's damages consultant, and it tracks the theory of damages alleged in the AC.  It was also reviewed

and approved by RG/2, a claims administrator with substantial experience in claims administration.

55.     The terms of the Plan of Allocation were fully disclosed in the Notice which was mailed to 24,642 potential Class Members and nominees and made available on the Action's designated website beginning on October 21, 2021.  *See* RG/2 Decl. ¶¶5-11.  To date, there have been no objections to the Plan of Allocation; and thus, Lead Plaintiff respectfully submits that it is fair, reasonable, and adequate and should be approved by the Court.

## VI.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### A.    Attorneys' Fees

56.     Lead Counsel has represented the Class on a wholly contingent basis for more than two years, not receiving any payment for its service or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.  Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Class has been expensive and challenging.

57.     The Notice informed Class Members that Lead Counsel will apply for an award of attorneys' fees up to 33.33% of the Settlement Fund and reimbursement of expenses not to exceed $40,000.  *See* RG/2 Decl., Ex. A at 2, 7.

58.     Lead Counsel requests that the Court award a fee of 33.33% of the Settlement Fund, or $1,666,500 plus accrued interest.[2]

---

[2]     Lead Counsel's request for interest accrued on the fee and expense amounts is limited to the interest or income earned on those amounts between the time the Settlement Amount was deposited into the Escrow Account to the time the fees and expenses are permitted to be disbursed.

59.     As discussed in the Fee Motion, filed concurrently herewith, the requested fee is fair, adequate, and reasonable in this Action.  In addition, in light of the factors including the favorable result achieved for the Class, the skill required, the quality of work performed, and the risk of pursuing claims on a contingency basis, Lead Counsel respectfully submits that a fee of 33.33% of the Settlement Fund is justified and should be approved.

60.     According to Lead Plaintiff's damages consultant, if Class Members submit claims for 100% of the shares eligible for distribution, the average distribution per share of common stock will be approximately $0.16 before deduction of Court-approved fees and expenses.  Based on the Class's maximum losses arising from Defendants' alleged fraud, the damages per share of common stock would be approximately $2.69.  Thus, the $5,000,000 Settlement Amount will recover approximately 6.08% of the maximum potential damages available in this Action (assuming the proposed Class is certified and all claims and damages were proven), which is well above the median ratio of 1.7% for typical recoveries in securities class actions in 2020, as reported in the study compiled by NERA Economic Consulting, a true and correct copy of which is attached as *Exhibit 2* hereto.  Based on Defendants' adamant denial of any liability, as well as the substantial time and expense of continued litigation, this Settlement Amount represents a favorable recovery for the Class.

61.     Lead Counsel's expertise and persistence have been vital to obtaining such a favorable result for the Class.  As set forth in its firm resume, attached as *Exhibit 3* hereto, the Faruqi Firm is a nationally-recognized class action firm with extensive experience litigating and negotiating settlements as lead or co-lead counsel in complex securities class actions.

62.     In order to reach a successful resolution of this Action, Lead Counsel was required to litigate at a high skill level because Defendants were represented by Venable LLP, which fought vigorously for its clients throughout the Action and were formidable opponents.

63.     As set forth in the Faruqi Lodestar Report, a true and correct copy of which is attached hereto as ***Exhibit 4***, Lead Counsel has committed thousands of hours to litigating this Action for more than two years, from the initial investigations to this final resolution. Specifically, from September 2019 through November 2021, Lead Counsel has devoted 1,692.10 hours to this Action, which includes time spent, *inter alia*: (1) conducting an extensive investigation into the facts alleged in the Action, including conferring with an investigator and reviewing and analyzing press releases, SEC filings, conference call transcripts, and stock price movements; (2) conducting research for and briefing the lead plaintiff motion; (3) conducting complex legal research for and drafting the detailed AC with more than fifty pages of factual and legal allegations; (4) conducting complex legal research for and drafting briefs in opposition to the motions to dismiss; (5) conducting complex legal research for and drafting motions to strike the extrinsic evidence submitted in support of the motions to dismiss; (6) preparing for and arguing in opposition to the motions to dismiss and in support of the motions to strike at the hearing on the motions; (7) consulting with a damages consultant to better understand the issues facing recovery for the Class; (8) conducting research for and drafting a mediation statement; (9) communicating with Lead Plaintiff throughout the Action; (10) engaging in a mediation session and corresponding with the mediator and Defendants' counsel after the session to reach a resolution of the claims; (11) drafting the settlement Stipulation, Notice, and related materials; and (12) drafting the preliminary approval and final approval motion papers.

64.     Based upon the hours expended by Lead Counsel and the current billing rates for Lead Counsel's professionals, the total lodestar is $943,092.50.  The lodestar results in a multiplier of 1.77 where the fee requested by Lead Counsel in the amount of $1,666,500 (plus accrued interest) is approximately 1.77 times Lead Counsel's lodestar of $943,092.50.

65.     Lead Counsel's time is taken from daily time records regularly prepared and maintained by the firm in the ordinary course of business.  The hours expended in preparing the application for fees and reimbursement of expenses have been excluded from Lead Counsel's total time.

66.     The total number of hours reasonably and necessarily spent by Lead Counsel in this Action is 1,692.10 hours.  Lead Counsel's hourly billing rates range from $595 to $950 for partners, $475 to $550 for associates, and $275 to $400 for paralegals.  The total lodestar amount for attorney and support staff time, based on the Faruqi Firm's current rates, is $943,092.50.  The hourly rates for attorneys and support staff in the Faruqi Firm, included in *Exhibit 4*, are reasonable for the region and the expertise of the attorneys.

## B.     Costs and Expenses

67.     The expenses incurred by Lead Counsel in the prosecution of this Action are set forth in the accompanying Expense Report from the Faruqi Firm, a true and correct copy of which is attached hereto as *Exhibit 5*.  In total, Lead Counsel has incurred $34,469.01 in expenses.

68.     The expenses in the Expense Report are taken from the books and records of the Faruqi Firm maintained in the ordinary course of business.  The books and records are prepared from expense vouchers, check records, and other such documents.  The expenses were

reasonable and necessary for the effective and efficient prosecution of this Action and are the type that would normally be charged to a fee-paying client in the private legal marketplace.

69. The majority of this amount, $23,322.00, represents expenses primarily incurred by the private fact investigator and the damages consultant retained by Lead Counsel.

70. Lead Counsel hired L.R. Hodges & Associates, Ltd. to conduct a background fact investigation and to reach out to potential confidential witnesses who may be able to provide more insight into what was happening at Ideanomics during the Class Period.

71. Lead Counsel also retained an economic consulting firm, Stanford Consulting Group, Inc., to consult on the damages and loss causation issues present in this Action, and to assist with the preparation of the Plan of Allocation.

72. Lead Counsel respectfully submits that fees paid to the fact investigator and the damages consultant were reasonable and necessary to prosecute this Action to the point at which it settled.

73. The remainder of Lead Counsel's expenses, $11,147.01, reflect routine and typical expenditures incurred during the course of litigation, including mediation fees, court reporting fees, electronic research, photocopying, postage, and transportation. All of these expenditures are the types of expenses incurred in similar class actions of this size and would be billed to a fee-paying client.

74. The total expenses, $34,469.01, are approximately 86% of the $40,000 in potential expenses that the Notice informed the Class may be incurred. Lead Counsel respectfully submits that these expenses are reasonable in light of the pace and duration of the Action and were necessarily incurred for its successful resolution. Lead Counsel understood that

it might not recover any expenses in the event the Action was dismissed, and thus took steps to minimize costs wherever possible without jeopardizing its duty to zealously represent the Class.

## VII.    LIST OF EXHIBITS

75.    Attached hereto Attached hereto as *Exhibit 1* is a true and correct copy of the Court's Preliminary Approval Order dated September 21, 2021.

76.    Attached hereto as *Exhibit 2* is a true and correct copy of the NERA Economic Consulting report by Janeen McIntosh and Svetlana Starykh titled *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*.

77.    Attached hereto as *Exhibit 3* is a true and correct copy of the Faruqi Firm's resume.

78.    Attached hereto as *Exhibit 4* is a true and correct copy of the Faruqi Firm's Lodestar Report.

79.    Attached hereto as *Exhibit 5* is a true and correct copy of the Faruqi Firm's Expense Report.

## CONCLUSION

Lead Counsel respectfully submits that the Settlement should be granted as fair, reasonable, and adequate; that the Plan of Allocation should be approved as fair, reasonable, and adequate; that attorneys' fees in the amount of 33.33% of the Settlement Fund, or $1,666,500 plus accrued interest, should be approved as fair and reasonable; and that the expenses in the amount of $34,469.01, plus accrued interest, should be reimbursed in full.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Dated: November 29, 2021                    /s/ Katherine M. Lenahan
                                             Katherine M. Lenahan

23